IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION INTERNATIONAL ASSOCIATES, INC., | ) | |
| | ) | No. 04-1489C |
| Plaintiff, | ) | |
| v. | ) | Judge Braden |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

PETER D. KEISLER
Associate Attorney General

DAVID M. COHEN
Director

BRYANT G. SNEE
Assistant Director

MARLA T. CONNEELY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel. (202) 305-3689
Fax. (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

JEFFREY BRANSTETTER, Major, USAF
Commercial Litigation Division
Air Force Legal Services Agency
1501 Wilson Blvd, Suite 604
Arlington, VA 22209

March 22, 2006

TABLE OF CONTENTS

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 1

I. Nature Of The Case . . . . . 1

II. Statement Of Facts . . . . . 3

SUMMARY OF ARGUMENT . . . . . 3

ARGUMENT . . . . . 5

I. Legal Standards . . . . . 5

II. The Government Is Entitled To Judgment As A Matter Of Law Because There Is No Genuine Dispute As To Any Material Fact And IIA Cannot Establish That The Government Had Constructive Notice Of IIA's Mistake In Its Bid . . . . . 6

A. In This Case, There Are No Factors Which Reasonably Should Have Raised A Presumption Of Error In The Mind Of The Contracting Officer . . . . . 7

B. IIA Was An Experienced, Sophisticated Government Contractor Whose Mistake In Bid Was Only Reflected In Underlying, Back-Up Spreadsheets That Were Not Requested As Part Of Its Best And Final Proposal . . . . . 14

III. IIA Cannot Establish By Clear And Convincing Evidence What It Would Have Bid But For The Mistake . . . . . 17

CONCLUSION . . . . . 21

# TABLE OF AUTHORITIES

## CASES

Allied Contractors, Inc. v. United States,
310 F.2d 945 (Ct. Cl. 1962) . . . . . 10

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . 5

Aydin Corp. v. United States,
669 F.2d 681 (Ct. Cl. 1982) . . . . . *passim*

Bromley Contracting Co. v. United States,
596 F.2d 448 (Ct. Cl. 1979) . . . . . 6, 17, 18

Bromley Contracting Co. v. United States,
794 F.2d 669 (Fed. Cir. 1986) . . . . . 6, 9

C&L Construction Co. v. United States,
6 Cl. Ct. 791 (1984) . . . . . 7

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . 5

Chernick v. United States,
372 F.2d 492 (Ct. Cl. 1967) . . . . . 6

Connelly Containers, Inc. v. United States,
7 Ct. Cl. 423 (1985) . . . . . 8

Ruggiero v. United States,
420 F.2d 709 (Ct. Cl. 1970) . . . . . 7, 14

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . 5

United States v. Hamilton,
711 F.2d 1038 (Fed. Cir. 1983) . . . . . 5

Wender Presses, Inc. v. United States,
343 F.2d 961 (Ct. Cl. 1965) . . . . . 6

REGULATION

FAR 14.407-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION INTERNATIONAL ASSOCIATES, INC., | ) | |
| Plaintiff, | ) | No. 04-1489C |
| v. | ) | Judge Braden |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, the United States, respectfully requests that the Court enter an order pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"), granting summary judgment to defendant and denying plaintiff's motion for judgment on the record or, in the alternative, for summary judgment. In support of this motion and opposition, we rely upon the following brief, the attached exhibits, our proposed statement of uncontroverted facts, our response to plaintiff's proposed findings of fact, and the complaint.

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUES

1. Whether the Government is entitled to judgment as a matter of law.

2. Whether the contracting officer knew or should have known of plaintiff's alleged mistake in submitting its bid.

## STATEMENT OF THE CASE

### I. Nature Of The Case

On August 7, 1998, the Department of the Air Force ("Air Force" or "agency") issued

Request for Proposals ("RFP") F05603-98-R0002. Pl. Mot. 2.[1] The RFP sought proposals for nonpersonnel library services at five Air Force bases, including Malmstrom Air Force Base, within Air Force Space Command under a fixed-price, performance-based contract. JE 1 at 12, ll. 21-25, at 13, ll. 1-7, at 30, l. 22, at 29, l. 25.[2] Five offerors responded to the RFP. JE 1 at 15, ll. 8-9. Two offerors, plaintiff Information International Associates, Inc. ("IIA") and Margon, Inc. ("Margon") were found to be technically acceptable and placed in the competitive range. JE 1 at 21, ll. 11-15. The contracting officer requested final proposals from both of these offerors, with the lowest priced offeror to compete against the Government's Most Efficient Organization ("MEO"). Pl. Mot. Ex. 3. Specifically, the contracting officer requested that the final proposals consist of the Section B forms without any supporting documentation. JE 1 at 31, ll. 10.

IIA's final proposal totaled $4,913,359 and was only 2.1 percent lower than the total price in its initial proposal. JE 2 at 61, l. 22. Margon's final proposal totaled $5,095,231. Pl. Ex. 6. Because IIA had the lower price, IIA was awarded the right to compete against the Government MEO for the contract. JE 1 at 37, ll. 9-12, at 26, ll. 14-16.

IIA successfully competed against the Government MEO, and was awarded and subsequently performed the contract. JE 2 at 48, ll. 19-23, at 40, l. 9, at 62, ll.19-24. Shortly

---

[1] IIA's motion for judgment on the record, or in the alternative, for summary judgment, filed on March 1, 2006, will be cited as "Pl. Mot." followed by the specific page reference or exhibit.

[2] The original transcripts of the depositions of Rosalind Baker, Patricia Powell, Bruce Bowland and Mary Wood will be filed with the Court as joint exhibits. The deposition of Ms. Baker will be cited as "JE 1" followed by the specific page and line reference; the deposition of Ms. Powell will be cited as "JE 2" followed by the specific page and line reference; the deposition of Mr. Bowland will be cited as "JE 3" followed by the specific page and line reference; and the deposition of Ms. Wood will be cited as "JE 4" followed by the specific page and line reference.

after contract award, IIA noticed that, except for the first two months of the base year of the contract, it had left out the salary for one employee at the Malmstrom Air Force Base. JE 4 at 14, ll. 1-6.

On May 28, 2004, IIA submitted a certified claim to the contracting officer alleging a mistake in its bid and seeking reformation of the contract in the amount of $174,882. Att. 1, attached hereto. IIA argues that the contracting officer should have known of the mistake in its bid and should have requested a bid verification. Pl. Mot. 19. Prior to receiving a final decision from the contracting officer on the claim, IIA filed the current action before the Court on September 24, 2004.

II. Statement Of Facts

For our statement of facts, we rely upon our proposed statement of uncontroverted facts filed simultaneously with this motion.

## SUMMARY OF ARGUMENT

IIA contends that it made a mistake in its bid and seeks reformation of its fixed-price contract. Pl. Mot. 6. IIA's claim, however, fails because IIA cannot demonstrate that the contracting officer knew or should have known that there was a mistake in IIA's final price proposal. Upon receipt of IIA's final price proposal, the contracting officer checked the math of the proposal's line items and compared IIA's total price with the total price of the other offeror in the competitive range, Margon. JE 1 at 25, ll. 12-18. The total price in IIA's final proposal was only 2.1 percent less than the total price in IIA's initial proposal, which IIA admits contained no mistakes. Pl. Mot. Exhs. 1 & 4. Moreover, IIA's final proposal was only $181,872, or 3.7 percent, less than Margon's final proposal. Pl. Mot. Exh. 6. Accordingly, the contracting officer

had no duty to verify IIA's bid because none of the facts and circumstances suggested that it was reasonable to believe a mistake had been made in IIA's final proposal.

IIA argues that the contracting officer should have compared IIA's initial proposal and its final proposal line by line, and if she had done so, she would have noticed an approximately 25 percent reduction in the one line item for Malmstrom Air Force Base. Pl. Mot. 16. However, even IIA's experienced personnel in charge of IIA's bids did not compare the initial and final proposals and testified that the mistake was only apparent on backup spreadsheets that were not to be submitted with the final proposals. JE 2 at 37, l. 10 to 38, l.20; 57, l. 12 to 58, l. 20. Moreover, even if the contracting officer had compared the initial and final proposals line by line, as IIA suggests, IIA personnel admit that there could be a reasonable explanation behind the reduction because IIA was allowed to reduce hours and rearrange assignments between hourly and salary employees to cut costs in the final proposal. Id. at 31, l. 13 to 33, l. 19.

IIA also claims that the mistake is apparent by examining IIA's final proposal and the individual line items for Malmstrom Air Force Base because the total price for Malmstrom goes down for the first and second option year before increasing again for the third option year. JE 2 at 57, l. 12 to 58, l. 20; JE 4 at 19, l. 22 to 20, l. 13. However, this same pattern is also followed in the line items for the other four bases for which IIA claims there were no mistakes. Pl. Mot. Exh. 4.

Finally, IIA fails to establish by clear and convincing evidence what it would have bid absent its mistake in bid. In its certified claim and complaint, IIA argued that it would have bid $174,882 more, and, thus, is entitled to that amount in damages. Att. 1. However, in its response to a Government's discovery request, IIA claims it would have only bid $95,558 more

and is entitled to that amount in damages, approximately half of its original claim for $174,882. Att. 2, attached hereto.

ARGUMENT

I. Legal Standards

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); RCFC 56(c). Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). "[T]he burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." Id. at 1563 (emphasis in original). Rather, "'the burden on the moving party may be discharged by "showing" — that is, pointing out to the [Court of Federal Claims] — that there is an absence of evidence to support the non-moving party's case.'" Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"A contract will not be reformed because of a unilateral mistake in bid unless the contractor establishes that the error resulted from a 'clear cut clerical or arithmetical error, or misreading of the specifications.'" United States v. Hamilton, 711 F.2d 1038, 1046 (Fed. Cir. 1983) (quoting Aydin Corp. v. United States, 669 F.2d 681 (Ct. Cl. 1982)). A contractor may not

recover for mistakes in judgment. Bromley Contracting Co. v. United States, 794 F.2d 669, 672 (Fed. Cir. 1986). Moreover, to recover, the contractor must establish by clear and convincing evidence what it would have bid but for the mistake. Bromley Contracting Co. v. United States, 596 F.2d 448, 458 (Ct. Cl. 1979).

In a case such as this, where a mistake in bid is not alleged until after the contract is awarded, this Court has held that "the plaintiff may recover only if defendant's responsible officials knew or should have known of the mistake at the time the bid was accepted." Aydin, 669 F.2d at 686 (quoting Wender Presses, Inc. v. United States, 343 F.2d 961, 962 (Ct. Cl. 1965)). "The test for constructive notice in cases dealing with mistake in bids is whether under all the facts and circumstances of the case 'there were any factors which reasonably should have raised the presumption of error in the mind of the contracting officer.'" Aydin, 669 F.2d at 686 (quoting Chernick v. United States, 372 F.2d 492, 496 (Ct. Cl. 1967); see also Wender Presses, 343 F.2d at 963 ("[T]he test here, as in so many areas, must be that of reasonableness . . . .").

Moreover, a mere disparity in bids does not automatically satisfy the test for constructive notice, nor does a variance in bids lead to a finding that knowledge of the mistake should be imputed upon the Government. Aydin, 669 F.2d at 687. It has been the law for quite some time that "price disparity alone does not constitute constructive notice where there are other factors that would negate the inference of error when it would otherwise be reasonable to infer one." Id.

## II. The Government Is Entitled To Judgment As A Matter Of Law Because There Is No Genuine Dispute As To Any Material Fact And IIA Cannot Establish That The Government Had Constructive Notice Of IIA's Mistake In Its Bid

This Court has set forth the following policy regarding reformation of Government contracts as a result of a unilateral mistake in bid:

> [W]hat we are really concerned with is the overreaching of a contractor by a contracting officer when the latter has the knowledge, actual or imputed as something he ought to know, that the bid is based on or embodies a disastrous mistake, and accepts the bid in fact of that knowledge.

Ruggiero v. United States, 420 F.2d 709, 713 (Ct. Cl. 1970). This Court has found no overreaching by the Government where the Government requests and receives adequate verification of the bid before the award of the contract. C&L Construction Co. v. United States, 6 Cl. Ct. 791, 801 (1984). Where no verification was requested, as in this case, the issue becomes whether the Government knew or should have known of the mistake. Id. Here, IIA does not argue that the contracting officer actually knew of the mistake in bid, but argues instead that the contracting officer should have known of the mistake. Pl. Mot. 19. IIA's arguments, however, are unsupported by the uncontroverted facts in the case and is contrary to well-established caselaw.

### A. In This Case, There Are No Factors Which Reasonably Should Have Raised A Presumption Of Error In The Mind Of The Contracting Officer

In its brief and complaint, IIA argues that the contracting officer had a duty to compare each line item of IIA's initial proposal with its final proposal, and that this should have raised a presumption of error in the mind of the contracting officer that the final proposal may contain an error and should be verified. Pl. Mot. 16. IIA further argues that the contracting officer had a duty to examine each line item of the final proposal, not just the total bottom line, and if she would have done so, she would have noticed that the amounts for the first option and second option year decreased from the base year before increasing again for the third option year for Malmstrom Air Force Base. Pl. Mot. 16; JE 2 at 57, l. 12 to 58, l. 20; JE 4 at 19, l. 22 to 20, l.

13. According to IIA, this "uncharacteristic" pattern should have raised a presumption of error in the mind of the contracting officer that the final proposal regarding Malmstrom Air Force Base may contain an error. Pl. Mot. 8.

IIA cites to no legal or regulatory authority that requires a contracting officer to compare each line item of a contractor's initial proposal with each line item of a contractor's final proposal as part of his or her duty to examine a bid for mistakes. Rather, Federal Acquisition Regulation ("FAR") 14.407-1 merely requires that "after the opening of bids, contracting officers shall examine all bids for mistakes." Contrary to IIA's expansive reading of the regulation, FAR 14.407-1 does not state that a contracting officer must compare each line item in a contractor's initial proposal with each line item in the contractor's subsequent proposals to satisfy his or her duty to examine bids for mistake.

The court's holding in Connelly Containers, Inc. v. United States, 7 Ct. Cl. 423 (1985), is distinguishable from this case. Although the court in Connelly Containers held that the contracting officer should have reviewed each line item of the contractor's proposal, it did not hold or even address the issue of whether a contracting officer has a duty to compare each line item of a contractor's subsequent proposals with prior proposals as IIA suggests. Indeed, to adopt IIA's suggested standard would disrupt the well-established approach of the Court of Appeals to strike a balance between the two concerns of (1) a contracting officer's overreaching of a contractor and (2) the need to avoid making it necessary for the contracting officer to act as a nursemaid for the bidders. Aydin, 669 F.2d at 687.

It is undisputed that the contract was to be awarded to the lowest cost, technically acceptable offeror. JE 1 at 13, ll. 22-23. Once the initial proposals were reviewed for technical

acceptability, IIA and Margon were selected for the competitive range and asked by the contracting officer to submit their best and final price proposals. Pl. Mot. Exh. 3. The contracting officer's letter requesting best and final price proposals specifically stated that IIA and Margon should "not [] modify what was presented in their oral proposals in their final price proposal either directly, by inference, or effect." Id. IIA and Margon's initial price proposals were found to be technically acceptable and the purpose of the best and final price proposals was to determine which of the two offerors would propose the lowest total cost and be chosen to compete against the Government MEO. JE 1, at 13, l. 22 to 14, l. 3. According to Rose Baker, the contracting officer, the total price proposed in the final proposal was most relevant, because the contract to provide services for the five bases would not be split, but would be awarded as one contract to the lowest cost, technically acceptable bidder. Id. at 26, ll. 8-19.

Nevertheless, Ms. Baker still examined the final proposals for math errors as well as for the lowest total price proposed. Id. at 25, ll. 12-18. She compared the lowest total price proposed by Margon and IIA and had no reason to suspect a mistake because IIA's final price proposal was only $181,872, or 3.7 percent, less than Margon's price proposal. Pl. Mot. Exh. 6. Moreover, IIA's final price proposal was only 2.1 percent less than the total price proposed in its initial price proposal. Pl. Mot. Exhs. 1 & 4. These differences clearly were not so significant that they should have reasonably alerted the contracting officer of any mistake in IIA's final price proposal. See Bromley Contracting, 596 F.2d at 449 (holding that Government was under no duty to verify a bid where bid was 39 percent lower than the next lowest bid and 12 percent lower than the Government estimate); see also Aydin, 669 F.2d at 689 (rejecting plaintiff's argument that a 40 percent disparity between plaintiff's bid and the next lowest bidder placed

contracting officer on constructive notice of the error); Allied Contractors, Inc. v. United States, 310 F.2d 945, 946 (Ct. Cl. 1962) (holding that a contracting officer was not on constructive notice of an error in low bid because the difference between the award of the low bid and the Government estimate was not significant).

IIA admits that the 2.1 percent difference between the total price proposed in its initial bid and the total price proposed in its final proposal is not significant. JE 3 at 34, l. 9 to 35, l. 4. However, IIA argues that the difference between the total price in its initial bid and its final bid for the line item involving only Malmstrom Air Force Base was $221,752.43, or 24.92 percent, and that this should have alerted the contracting officer to IIA's mistake. Pl. Mot. 16.

Even assuming that the contracting officer had a duty to compare each line item of IIA's initial proposal with each line item of IIA's final proposal, IIA's argument still lacks merit. In Aydin, the court held that "price disparity alone does not constitute constructive notice where there are other factors that would negate the inference of error when it would otherwise be reasonable to infer one." 669 F.2d at 687. In its brief, IIA argues that the price disparity in the line item for Malmstrom Air Force Base can only be explained by a change in manning levels or a mistake. Pl. Mot. 18. Because the offerors were not permitted to change manning levels in their final proposals, IIA asserts that the only explanation for the disparity is that it contained a mistake. Id. IIA's conclusion, however, is contrary to the testimony of the contracting officer and IIA's own experienced personnel.

The contracting officer, Ms. Baker, testified that the contract was a performance based contract, meaning that the Government stated what services it needed and it was up to the contractor to determine how it was going to provide those services, including establishing

manning levels. JE 1 at 29, l. 11 to 31, l. 3. Ms. Baker testified that she would have attributed the price difference in the line item regarding Malmstrom Air Force Base to changes in the contractor's decision as to how they would man the services they were obligated to provide under the contract. Id. This explanation for the price difference was also supported by Patricia L. Powell, IIA's vice president responsible for managing contracts at the time. JE 2 at 23, ll. 18-25; at 32, l. 6 to 32, l. 19. Specifically, Ms. Powell testified as follows:

> Q. So would it be correct to say that the government's bid or the government basically put forth a job that it wanted to have completed and then it was your responsibility to determine how you were going to get that job done and for what cost?
> A. Exactly.
>
> . . . . . . .
>
> Q. You mentioned that you determined that you could reduce the pricing a little bit on some of the bases.
> A. Yes.
> Q. How?
> A. Just by readjusting some of the assignments to make a statement of work.
> Q. When you say readjusting the assignments, what do you mean?
> A. I don't remember exactly what I did on this one, but, for example, giving the director a few more of the responsibilities, taking away a few hours from a couple of positions so that we reduced some hours and saved some money.
> Q. Would that include combining two positions to be one position?
> A. No.
> Q. Why not?
> A. It's giving – it's changing responsibilities just slightly, but that's not combining positions.
> Q. So there would be the same number of employees –
> A. Yes.
> Q. – but their hours may be reduced?

A. Right.
Q. So is it correct to say that you had somehow made a determination that the same job could get – could be completed with certain individuals working on few less hours?
A. Yes.
Q. Or could it have also been the case that – let me backtrack and ask this question: Were some of the employees hourly and then others salary?
A. Correct.
Q. So could a reduction also have been made by reducing hours from hourly workers and putting those responsibilities on salary workers?
A. That could be done.

Id. As Ms. Powell and Ms. Baker pointed out, the price difference in the line item regarding Malmstrom Air Force Base could be explained by changes in IIA's manning levels, where the number of employees would not change, but the responsibilities would be rearranged to reflect a lower cost. Id.; JE 1 at 29, l. 11 to 31, l. 3. Therefore, any price difference in the line item for Malmstrom Air Force base does not automatically impute upon the contracting officer the knowledge that there was a mistake in IIA's bid because there was a reasonable explanation for the discrepancy. See Aydin, 669 F.2d at 687.

IIA also argues that the contracting officer should have examined each line item of IIA's final proposal, and that this would have alerted her to the mistake. IIA claims that the first person to discover IIA's mistake was Mary Wood, who was responsible for setting up IIA's billing for each individual Air Force base. Pl. Mot. 8. Ms. Wood testified that she discovered the mistake in the line items for Malmstrom Air Force Base after contract award as follows:

A. Yes. I noticed that the basic contract period performance from April 1 of 1999 through March of 2000, the monthly amount was [$]800 or [$]8,361, and the total [$]100,332.
Q. Okay.

A. The second option from April 2000 to 2001 was [$]7,894 and [$]94,728.
Q. So you – I'm sorry, go ahead.
A. And my question to Pat, was why was there the decrease and why is it that significant of a decrease in the first year, in the second year, in my mind, they should have gone up or gradually have gone up as they did in the third and fourth year. And I asked her if I was setting it up to be billed correctly. But that's what drew my first question to her. And then I started looking at the spreadsheet and found that particular cell.

JE 4 at 19, l. 22 to 20, l. 13. IIA argues that the contracting officer should have noticed the pattern discovered by Ms. Wood, and, therefore, should have known about IIA's mistake in its final bid for Malmstrom Air Force Base. According to IIA, the decrease in the first and second option years was "uncharacteristic." Pl. Mot. 8.

Even if the contracting officer had reviewed each line item in IIA's final proposal, the fatal flaw in IIA's argument is that IIA's final proposal reflected price decreases in the first and second option years for all five bases, four of which IIA claims there was no error in its bid. Pl. Mot. Exh. 4. For example, in its final proposal, IIA's bid for Warren Air Force Base was $130,534 for the base year, $130,344 for the first option year, $129,360 for the second option year, $132,732 for the third option year, and $132,432 for the fourth option year. Id. at 4. Similarly, in its final proposal, IIA's bid for Patrick Air Force base was $145,548 for the base year, $145,116 for the first option year, $143,700 for the second option year, $147,096 for the third option year, and $146,388 for the fourth option year. Id. at 8. This pattern was repeated in IIA's final price proposals for Peterson Air Force base, Vandenberg Air Force base, and, the base where IIA claims a mistake was apparent, Malmstrom Air Force base. Id. at 6, 10, 12. Accordingly, the fact that IIA's final bid for Malmstrom Air Force based decreased during the

first and second option year is not a factor which reasonably should have raised a presumption of error in the mind of the contracting officer because the same pattern was followed for all of the other four bases, whose line item bids contained no mistakes. For these reasons, IIA's motion for judgment on the record, or in the alternative, for summary judgment should be denied and judgment should be entered for the Government as a matter of law.

B. IIA Was An Experienced, Sophisticated Government Contractor Whose Mistake In Bid Was Only Reflected In Underlying, Back-Up Spreadsheets That Were Not Requested As Part Of Its Best And Final Proposal

The purpose behind reforming a Government contract for a mistake in bid is to prevent overreaching by the Government. Ruggiero, 420 F.2d at 713. In this case, there is no evidence that the Government overreached or took advantage of IIA's inexperience or mistake to secure an unfair advantage.

Since 1988, IIA's primary business has been to "manage contracts for the [G]overnment involved in libraries, information science, records, IT services and conferences and administrative services, education and training contracts." JE 2 at 15, ll. 9-14; at 16, ll. 4-5. On average, IIA bids on three to four Government contracts each year. Id. at 16, ll. 1-3. Last year, IIA bid on a minimum of ten Government contracts, and 99 percent of its contracts are with the Government. Id. at 17, ll. 7-8; 15, ll. 21-22.

IIA, an experienced Government contractor, argues that the contracting officer reasonably should have compared IIA's initial and final proposals line by line. Pl. Mot. 16. However, IIA's own experienced personnel failed to do this before submitting their final bid. JE 2 at 37, l. 11 to 38, l. 1. Ms. Powell, who was in charge of preparing IIA's bids in this matter and who has been involved in at least 30 major procurements for IIA, testified that she did not compare IIA's initial

and final proposals line by line before submitting the final proposal to the contracting officer. Id. In fact, according to Ms. Powell, the only place IIA's mistake was visible was in the back-up spreadsheets to its final proposal. Specifically, Ms. Powell testified as follows:

> Q. Actually, could you point us to the mistake that was made in the final price proposal and explain it to us as you understand it?
> A. Well, in this piece it's hard to explain, because --
> Q. When you say "this piece" --
> A. It came from the backup spreadsheets.
> . . .
> A. It –we didn't observe the correction, mistake from this sheet.
> Q. From [the final price proposal]?
> A. Right.
> Q. Okay.
> A. It was from the backup spreadsheets.
> Q. Okay. Were those backup spreadsheets included in your proposals that were submitted to the government.
> A. Yes.
> Q. They were?
> A. Yes, they were.
> Q. So you would have to look at the backup spreadsheets to identify the mistake, is that correct?
> A. Well, I would point out that between the first year, 12 months, this is the basic contract period, which was a year, if you note, the unit price was 8,361.
> Q. Okay.
> A. If you go to the first option year, you'll note that the amount was 7,894.
> Q. Okay. And that's a difference of about --
> A. There's quite a difference.
> Q. – $500?
> A. And then it even goes down a tiny bit on the third line, and then it starts going back up, and those are because of escalation amounts, you know, each year was like 3 percent or something like that to allow salary increases. So there's some discrepancy there in that that's a bit of a question. But it's hard to determine exactly what that means without looking at the attached spreadsheets.

JE 2 at 56, ll. 16-22; at 57, l. 12 to 58, l. 20. Therefore, even IIA's own vice-president, who was in charge of preparing and submitting IIA's initial and final proposals, contradicts IIA's argument that the mistake was apparent in the individual line items of the final proposal. According to Ms. Powell, IIA's mistake could not have been noticed simply by looking at each line item; rather, the mistake could only be noticed by examining the backup spreadsheets.

IIA, however, does not argue that the contracting officer had a duty to examine every offeror's backup spreadsheets for mistakes in bid. Indeed, it would be a huge burden to impose such an obligation upon a contracting officer given the unpredictable, voluminous amount of backup documents that could be submitted by each offeror.

For the sake of argument, however, even if IIA argued that the contracting officer had a duty to examine every offeror's backup spreadsheets, and even if IIA had submitted those backup spreadsheets with its proposals, IIA's argument still fails. IIA cannot point to any legal or regulatory authority that requires a contracting officer to examine backup spreadsheets submitted with a best and final proposal. Indeed, the contracting officer's written request for best and final proposals specifically stated that only a schedule B should be submitted. Pl. Mot. Exh. 3. The contracting officer did not request any other documentation, including backup spreadsheets, and, thus, it would not have been reasonable for her to examine those documents for mistakes. See JE 1 at 32, ll. 11-20 (contracting officer's discussion with opposing counsel regarding the tendency of offerors to submit voluminous documentation that they were asked not to submit.).

Accordingly, for the reasons stated above, IIA's motion for judgment on the record, or in the alternative, for summary judgment, should be denied, and judgment should be entered for the Government as a matter of law.

## III. IIA Cannot Establish By Clear And Convincing Evidence What It Would Have Bid But For The Mistake

Even if IIA could show that the contracting officer should have known of its mistake in bid, it can only recover on its claim if it can establish by clear and convincing evidence what it would have bid but for the mistake. Bromley Contracting, 596 F.2d at 458. Although an exact number is not required, and the courts have awarded some flexibility in determining this amount, IIA fails to meet this standard.

In its certified claim, IIA's chief operating officer at the time, Bruce Bowland, certified that IIA would have bid $174,882 more but for the mistake. Att. 1. Bruce Bowland further certified that IIA's certified claim was "made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which IIA believes the Government is liable . . . ." Id.

In its complaint, IIA repeated its assertion that it was entitled to $174,882 in damages and that this was the additional amount they would have bid but for their mistake. During the course of discovery, the Government served several discovery requests upon IIA. In one request, the Government asked IIA to "[p]roduce all documents supporting your contention that you are owed $174,882 or any other amount of money . . . ." Att. 2. In response, IIA, with no explanation, cut its claim in half. Specifically, IIA responded that:

> IIA's certified claim (see Document Production Request No. 8) is based on the error in IIA's Final Offer. Based on information in IIA's Deltek-based automated accounting system, [IIA] incurred a total cost of $91,008 which, with a profit of 5%, supports a claim of $95,558. The attached spreadsheet, prepared by IIA Director of Finance based upon the automated records supports this claim.

.

When asked to explain this sudden drop in IIA's claim, Bruce Bowland testified that he was not aware that IIA's claim had been revised and did not know why the claim was reduced. JE 3 at 32, ll. 12-18. Moreover, to date, IIA has not amended their complaint to reflect this reduction in their requested damages.

Therefore, even if IIA could successfully establish that the contracting officer knew or should have known of the mistake in their bid, IIA's claim still fails because they cannot show by clear and convincing evidence what they would have bid but for the mistake. IIA has submitted separate spreadsheets containing different numbers in its certified claim and in its discovery response. Att. 1 & 2. Although, an exact, absolute damages figure may not be required to recover under the law, a range of 50 percent in claimed damages is not reasonable and does not satisfy the required standard of proof. See Bromley Contracting, 596 F.2d at 458. Accordingly, the Court should deny IIA's motion for judgment on the record, or in the alternative, for summary judgment, and should enter judgment for the Government as a matter of law.

## CONCLUSION

For these reasons, we respectfully request that our motion for summary judgment be granted, and that plaintiffs' motion for judgment on the record, or in the alternative, for summary judgment be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

OF COUNSEL:

JEFFREY BRANSTETTER, Major, USAF
Commercial Litigation Division
Air Force Legal Services Agency
1501 Wilson Blvd, Suite 604
Arlington, VA 22209

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
tel: (202) 307-1011
fax: (202) 307-0972

March 22, 2006

Attorneys for Defendant