Submitted May 28, 2004
Contract No. FO5603-99-C0001
General Library Management Services
Library Multi-Wing Effort
Air Force Space Command

2004 JUN -1 PM 2: 5

# CERTIFIED CLAIM

for a

## Unilateral Mistake in Bid Discovered After Award

PROTECTED MATERIAL
TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS
PROTECTIVE ORDER

Submitted by
Information International Associates, Inc.

EXHIBIT
Deft's 3
12/21/05 TD

DAF 02913

INFORMATION INTERNATIONAL ASSOCIATES, INC. (IIA)
1009 COMMERCE PARK DRIVE · SUITE 150 · P.O. BOX 4219 · OAK RIDGE, TN 37831-4219
PH: 865.481.0388 · FX: 865.481.0390 · EMAIL: INQUIRY@INFOINTL.COM

May 28, 2004

Mr. Steven R. West
Contracting Officer
21 CONS/LGCB
700 Suffolk Street/Bldg 982
Peterson AFB, CO 80914-4420

Subject: **Contract No. F05603-99-C0001**
**Certified Claim for a Unilateral Mistake in Bid Discovered After Award**

Dear Mr. West:

In a meeting on Monday, February 3rd, 2003, a contract cost matter was brought to Ms. Yasmin Brown's (CO) attention for consideration regarding the contract between Information International Associates, Inc. (IIa) and the Air Force Space Command (AFSPC). Specifically, this matter was the result of the procurement process that preceded the subject contract award. In that meeting, Ms. Brown expressed both a willingness and openness to address the matter if it were presented in written form.

This letter, having now established a dispute thirteen (13) months from when the first written request for equitable adjustment (REA) was presented, serves to present for written decision, a *certified claim,* as authorized and defined at FAR 52.233-1, *Disputes*.

From this *certified claim*, IIa expects a written decision on its demand of the sum certain amount of one hundred and seventy-four thousand, eight hundred and eighty-two dollars ($174,882) within the sixty (60) day period specified by the Contract Disputes Act of 1978 (CDA) at 41 U.S.C. § et. Seq.

Sincerely,

Bruce P. Bowland
Chief Operating Officer

Enclosure
Cc: J. Hatcher Graham, JD (McManus & Graham, L.L.P.)

DAF 02914

INFORMATION INTERNATIONAL ASSOCIATES, INC. (IIA)
1009 COMMERCE PARK DRIVE · SUITE 150 · P.O. BOX 4219 · OAK RIDGE, TN 37831-4219
PH: 865.481.0388 · FX: 865.481.0390 · EMAIL: INQUIRY@INFOINTL.COM

# Table of Contents


**Page**

1. Cover Letter ........ i
2. Table of Contents ........ ii
3. Summary (I) ........ 1
4. Statutory Authority (II) ........ 3
5. Basis of Entitlement (Criteria for Relief) (III) ........ 4
6. Chronology (IV) ........ 7
7. Analysis (V) ........ 11
8. Claim of Sum Certain Amount ........ 13

<u>Exhibits</u>

1) Original Proposal Schedule B ........ 16
2) Supporting Spreadsheets of Original Proposal Schedule B ........ 17
3) BAFO Schedule B ........ 18
4) Supporting Spreadsheets to BAFO Schedule B ........ 19
5) Cost Comparison Form (CCF) ........ 20
6) "Corrected" BAFO Spreadsheets ........ 21
7) Certification of Claim ........ 22

**CONTRACT NO. F05603-99-C0001**
**GENERAL LIBRARY MANAGEMENT SERVICES**
**LIBRARY MULTI-WING EFFORT**
**CERTIFIED CLAIM**

## I. SUMMARY

This C*ertified Claim* is for a matter in dispute regarding a discovery after contract award of a mistake in bid that occurred during the preparation of Information International Associates, Inc.'s (IIa) best and final offer (BAFO) (RFP No. SOL F05603-98-R-0002). All reasonable attempts at resolving the matter at the Contracting Officer level have been exhausted. The most recent vigorous attempts by IIa over the last 13 months, but for the protraction of the process by the AFSPC, has resulted in establishing as fact that the parties are in Dispute.

This single-point-of-entry mistake in bid occurred in the electronic spreadsheet used in the preparation of the BAFO that manifested itself in one Labor Category for one of the five library price estimates. The mistake was for CLIN 0004, Non-personal Library Services at Malmstrom, AFB, MT, in SubCLINs 0004AB, 0004AC, 0004AD, and 0004AE of Schedule B of the referenced RFP.

In particular, the mistake in bid was the inadvertent omission of a wage value for the labor category position of *Library Assistant/Computer Operator III* for all but the first two months of the basic contract, all the option periods, and now the unilateral six-month extension, for a total of 64 months. This inadvertent data-entry omission prevented the pre-designed spreadsheet algorithm used for the BAFO from auto-computing final, extended prices for this labor category for all but the first two months of the contract.

IIa's BAFO consisted primarily of updating labor category wage rates based on updated Department of Labor (DOL) Wage Determination data and minor changes in indirect rates for the purpose of providing *current, accurate*, and *complete* pricing data. These pricing adjustments resulted in overall total price changes for each base, from the original proposal, of between -2.1% and +1.8%, with the exception of Malmstrom, which experienced a *-24.9%* change. IIa made no changes to the level-of-effort in its BAFO nor did it propose "*to absorb a portion of the costs or provide other benefits to the Government which (affected) price*" (ref. Solicitation No F05603-98-R0002, Section L, Page 8 of 11 (2) (c). De facto, the un-priced position of *Library Assistant/Computer Operator III* has been continuously staffed at Malmstrom AFB, for which the Government has and continues to receive the benefit on the basis of undue *enrichment*.

As prescribed by statutory authority, IIa herewith provides all pertinent, clear, and convincing evidence in the form of this *Certified Claim* in support of its position that an inadvertent, clerical, and unilateral mistake in bid was made by IIa. IIa purports that the mistake in bid was so apparent that the Air Force should have questioned the change in price as being *Cardinal* in magnitude. This is especially the case since no explanation or substantiation was provided to support the large price change. It is this readily apparent and *Cardinal* magnitude price change for a single base, when the scope and staffing are essentially the same for all the bases that warrants charging the Air Force with notice of the probability of the mistake in bid.

IIa herewith further provides for the Air Force's consideration:

- The statutory authority for this action;
- The basis of entitlement;
- The chronology of the events that took place;
- An analysis of the clear and convincing evidence purporting the notice of the probability that a mistake occurred;
- The claim in a sum certain amount; and
- The claim certification.

In summary, IIa herewith demands reformation of contract F05603-99-C0001 in the additional sum certain amount of $174,882.

## II. STATUTORY AUTHORITY

The statutory authority for bringing this matter before you is first provided at FAR Part 15, *Contracting by Negotiation,* as this was a procurement action other than a sealed bid procedure. In particular, as this was an OMB Circular A-76 procurement action, this proposal was authorized under FAR 15.203(b) which states, *"An RFP may be issued for OMB Circular A-76 studies."*

The discovery of a mistake after award when *Contracting by Negotiation* (FAR Part 15) is addressed at FAR 15.508, *Discovery of Mistakes,* which states, *"Mistakes in a contractor's proposal that are disclosed after award shall be processed substantially in accordance with the procedures for mistakes in bids at FAR 14.407-4".*

FAR 15,508, FAR 14.407-4, *Mistakes after Award* states, *"If a contractor's discovery and request for correction of a mistake in bid is not made until after the award, it shall be processed under the procedures of Subpart FAR 33.2 and the following:*
*(a)* [Omitted]
*(b) In addition to the cases contemplated in paragraph (a) of this section or as otherwise authorized by law, agencies are authorized to make a determination --*
*(1)* [Omitted]
*(2) To reform a contract;*
*(i)* [Omitted]
*(ii) To increase the price if the contract price, as corrected, does not exceed that of the next lowest acceptable bid under the original invitation for bids; or*
*(3) That no change shall be made in the contract as awarded, if the evidence does not warrant a determination under subparagraphs (1) or (2) of this section.*
*(c) Determinations under subparagraphs (b) (1)* [omitted] *and (2) above may be made only on the basis of clear and convincing evidence that a mistake in bid was made. In addition, it must be clear that the mistake was*
*(1) Mutual, or*
*(2) If unilaterally made by the contractor, so apparent as to have charged the contracting officer with notice of the probability of the mistake."*

The prescribing of concurrent use of FAR 33.2, *Disputes and Appeals,* in conjunction with FAR 14.407-4, allows for addressing resolution at the Contracting Officer level of authority and is the prescribed procedures and forum for addressing this form of action.

And finally, the Contract Disputes Act of 1978 (CDA) at U.S.C. § 601 et seq. authorizes the use of FAR 52.233-1, *Disputes* as it is incorporated by reference in Section I of contract no. F05603-99-C0001.

DAF 02918

## III. BASIS OF ENTITLEMENT (Criteria for Relief)

The five (5) criteria for obtaining relief under the theory of *unilateral mistake* are based in case law (*Worldwide Parts, Inc., ASBCA 38896, 91-2 BCA ¶ 23,717; Chemtronics, Inc., ASBCA 30883, 88-2 BCA ¶ 20,534; Triax-Pacific, Inc., ASBCA 41891, 94-1 BCA ¶ 26,380, recons. Denied, 94-1 BCA ¶26,529.*

These five (5) "***elements of proof***" are delineated below combined with IIa's ensuing arguments:

1. ***A mistake in fact occurred prior to contract award*** – IIa demonstrates by clear and convincing evidence that ***a mistake in fact occurred prior to award***. The mistake occurred in the preparation of the BAFO and is discussed in detail in the first paragraph of the *Analysis* section herein (Section V), supported by Exhibits 2 and 4.

2. ***The mistake was clear-cut, clerical or mathematical error or a misreading of the specifications and not a judgmental error*** – IIa can demonstrate by clear and convincing evidence that an ***inadvertent clerical mistake*** caused a ***mathematical error***. There was neither a misreading of the specifications or a judgmental error. An inadvertent data entry omission in one input cell of a spreadsheet, which was first created and used for the original proposal and later used for the BAFO, prevented the pre-designed spreadsheet formula from auto-computing final extended prices for a single labor category for all but the first two months of the period of performance. For the purpose of making the proposed costs current, accurate, and complete, this event occurred when data was being changed in order to update wage rates based on the latest Wage Determination Revision. The mistake was discussed in the second paragraph of the *Analysis* section (Section V) herein, supported by *Exhibits 2* and *4*.

3. ***Prior to award the Government knew, or should have known, that a mistake had been made and, therefore, should have requested bid verification*** – Cost information in the BAFO was provided as revised ***Schedule Bs***. Provided were ***separate Schedule Bs*** for ***each*** base, and for each base there were ***separately itemized Contract Line Item Numbers (CLINs) for each year***. This form of data submission was sufficient in detail to make it ***known to the Government*** that there was an apparent ***mistake***. It was clearly evident that the price proposed in ***Schedule B*** for the Malmstrom AFB library was ***materially inconsistent*** with the prices proposed in the ***Schedule Bs*** for the remaining four (4) base libraries as well as being ***materially different*** for just Malmstrom between the original and BAFO proposals. ***Sufficient information and granularity of detail was present throughout the procurement process that the Government should have known a mistake had been made.***

   The fact that there was no technical justification for the difference in cost (see response to "***element of proof***", item no. 5 following) was further indication that a mistake was apparent. This is discussed in the *Analysis* section (Section V) herein, which includes a table of comparison of ***Schedule Bs*** by base for the total contract, supported by *Exhibits 1* and *3*.

DAF 02919



7

In this A-76 procurement action, the AFSPC was purchasing similar services at five (5) different bases where each of the five (5) bases had unique and specific staffing and performance metrics. IIa did not revise its technical, management, or staffing approach in its BAFO. If, as the AFSPC contends, it did not know a mistake had been made because it based its award decision solely on a gross level comparison of the offerors' comparable percentage reduction comparing only total price, then there is clear indication of a lack of due diligence and adherence to the mandated *acquisition plan* and process that initially included cost analysis.

FAR 7.102 requires that the Government perform *acquisition planning* for all acquisitions. FAR 7.105(b) provides guidance on the elements of the *acquisition plan* that include defining how the Government will *evaluate all of the technical, business, management, price and other cost, and other significant considerations that will control the acquisition process.* Therefore, it is incumbent upon the Government to *examine all of the details, including cost/pricing data* submitted by offerors *at the same level of detail, during all phases of the procurement process, and not just upon initial offers, as the agency prescribed in the RFP/RFQ.*

To have only performed a price analysis at the total contract level in the later stages of the procurement action (i.e. BAFO), and not require a cost analysis, considering all of the unique and varied requirements of each of the five (5) different bases, does not demonstrate adherence to the statutory *acquisition planning* requirements. In particular, cost/price analysis and testing for any *imbalance* between cost types and/or between the various Air Force bases among the various offerors cannot be adequately or reasonably evaluated by only comparing the percentage change in total price. As in our response to the "*elements of proof*" items 2 and 3 above, we believe clear and sufficient information was provided and available to suggest at a minimum that the AFSPC *should have known*, and thus conclude, that a mistake in bid occurred.

4. ***The Government did not request bid verification or its request for bid verification was inadequate*** – IIa has no evidence that the AFSPC requested *bid verification*. Assuming that no *bid verification* was requested, then this mistake in bid was left undiscovered by IIa until after award. It is reasonable to assume that, had the guidelines of due diligence provided at FAR 7.105(b) been adhered to throughout the procurement process, there should have been a request for *bid verification*.

   In addition, FAR 14.407-1 states, "*After the opening of bids, contracting officers shall examine all bids for mistakes. In cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer shall request from the bidder a verification of the bid, calling attention to the suspected mistake. If the bidder alleges a mistake, the matter shall be processed in accordance with this section 14.407. Such actions shall be taken before award.*"

DAF 02920

5. ***Proof of the intended bid is established*** – ***Proof of intended bid was established*** clearly from the spreadsheets and technical proposal submitted as part of the original offer. IIa included the position and cost for the *Library Assistant/Computer Operator III* at Malmstrom AFB. Subsequent discussions and clarifications with the AFSPC in support of the preparation of the price BAFO ***did not address a reduced use or elimination of the Library Assistant/Computer Operator III position in terms of either the level of expertise or the level of effort originally proposed. IIa's technical BAFO also did not propose any change in, or absorption of, either the level of effort or the level of expertise for the labor category position at Malmstrom AFB.*** Therefore, ***the intended bid*** remained unchanged between the original proposal and BAFO.

## IV. CHRONOLOGY (leading up to and including filing of Certified Claim)

**July 31, 1998**

Air Force Space Command (AFSPC) releases RFP FO5603-98-R-0002 for the management and operation of base libraries at F.E. Warren, Malmstrom, Patrick, Peterson, and Vandenberg Air Force Bases under OMB A-76 procedures.

**September 18, 1998**

IIa submits original proposal.

Price proposal (Schedule B) is supported by current, accurate, and complete cost and pricing data showing all hours and costs, including the category of Library Assistant/Computer Operator III for all bases except Peterson, which was priced with a Library Assistant/Computer Operator I.

**October 9, 1998**

IIa receives written notification that it is in the competitive range and is provided information for clarification.

IIa is notified of time and date for discussions.

**October 20, 1998**

AFSPC conducts discussions with IIa.

Discussions address several technical issues, but neither the level of effort nor any other pricing issues are addressed.

**November 2, 1998**

IIa receives the request for a BAFO.

The request for BAFO does not address the need for preparing any responses to interrogatories, clarifications, or other issues related to the price proposal.

**November 6, 1998**

IIa submits its BAFO.

Only Schedule B is submitted showing CLIN prices.

IIa's BAFO consisted primarily of updating labor category wage rates based on updated DOL Wage Determination data and minor changes in indirect rates for the purpose of providing *current*, *accurate*, and *complete* pricing data.

DAF 02922

**November 30, 1998**

AFSPC notifies IIa in writing that they are the conditional awardee.

**January 15, 1999**

IIa is awarded contract no. FO5603-99-C0001

**April 1, 1999**

IIa commences performance on the contract.

**SPRING, 1999**

IIa first becomes aware of the clerical mathematical mistake.

It becomes apparent when the pricing data is taken from the BAFO spreadsheets for input into the accounting system budget module.

**Spring of 1999 to Fall of 2000**

IIa makes several (no less than 3) verbal appeals to the Contracting Specialist/Officer for contract price relief and is verbally denied.

**November 28, 2000**

IIa's Sr. Vice President, Ms. Pat Powell, sends an e-mail to AFSPC Contracting Specialist, Margaret Wages, discussing the mistake made in pricing and requesting assistance in finding a solution.

**December 2000**

AFSPC Contracting Specialist verbally responds to the November 28, 2000, e-mail and denies request for assistance.

AFSPC's denial of relief is stated to be on the basis that the Government cannot be responsible for contractor mistakes.

**February 3, 2003**

IIa's new Chief Operating Officer (COO) meets with Yasmin Brown, CO, in Colorado to discuss the matter of equitable relief. CO expresses both a willingness and openness to address the matter if it is presented in writing.

**April 30, 2003**

IIa's COO sends written request for equitable relief to the CO in the form of an issue in controversy

**June 13, 2003**

IIa's COO sends e-mail to Robin Cramer, CO assigned to handle IIa's request, inquiring as to the AFSPC's status in responding to IIa's April 30th letter.

**June 16, 2003**

Robin Cramer responds via e-mail stating that, "This issue will be suspended for a 30 July decision date."

**June 16, 2003**

IIa's COO responds to Robin Cramer's e-mail thanking him for the advisory.

**August 4, 2003**

IIa's COO sends e-mail to Robin Cramer inquiring if a decision has been made.

No further communication received from AFSPC until September 4, 2003, letter.

**September 4, 2003**

IIa receives letter from Robin Cramer expressing commitment to resolve this issue at the contracting officer's level prior to the submission of a claim.

Letter provides a listing of the five (5) elements of proof for post-award contract reformation on the grounds of a unilateral mistake.

**November 3, 2003**

IIa's COO responds to AFSPC's letter of September 4, 2003, presenting arguments addressing each of the five (5) elements of proof delineated in the AFSPC's letter of September 4, 2003.

IIa requests a written response within thirty (30) days and extends a good faith offer to meet face-to-fact at the AFSPC's earliest convenience and choice of venue in an effort to resolve the matter.

**March 16, 2004**

IIa's COO sends letter to AFSPC demanding a written response to its November 3rd letter on the basis of unreasonable delay.

**March 18, 2004**

AFSPC responds to IIa's letter of March 16, 2004, by only referring to the AFSPC's response of September 4th.

**March 30, 2004**

IIa's COO talks by telephone with Steve West, CO, to discuss the AFSPC's letter of March 18th. Parties agree that they are in dispute.

**April 22, 2004**

IIa's COO sends letter to Steve West, CO, establishing in writing that the parties are in dispute.

**May 4, 2004**

Steve West, CO, responds to IIa's letter of April 22nd stating the Government's position is the same by reference to its September 4th and March 18th letters.

**May 28, 2004**

IIa files certified claim.

## V. ANALYSIS

IIa can demonstrate, using the proposal spreadsheets for the original proposal and BAFO (Exhibits 2 and 4, respectively), that the cost for the *Library Assistant/Computer Operator III* at Malmstrom AFB was always intended to be included in Schedule B. It is clearly evident from the spreadsheets submitted as part of the original offer that IIa included the costs for the *Library Assistant/Computer Operator III* at Malmstrom AFB in the price proposal. Subsequent discussions and clarifications in support of the preparation of the BAFO *did not address the reduced use or elimination of the Library Assistant/Computer Operator III in terms of either the level of expertise or the level of effort proposed.* IIa's technical BAFO proposal also did not propose any change or absorption in either the level of effort or the level of expertise for the support and maintenance of automated data processing (ADP) at Malmstrom AFB. IIa's detailed spreadsheets from which the BAFO price was derived showed no costs associated with providing the *Library Assistant/Computer Operator III* at Malmstrom AFB after the initial two-month transition period. IIa's mistake was inadvertent, clerical, and unilateral.

In particular, the mistake was the inadvertent omission of a wage value for the labor category position of *Library Assistant/Computer Operator III* for all but the first two months (i.e., 10 months un-priced) of the basic contract and all of the option periods (i.e. 48 months un-priced) for a total of 58 months. This inadvertent data omission prevented the pre-designed spreadsheet algorithm that was first created for the original proposal and later used for the BAFO, from auto-computing final extended prices for this one labor category for all but the first two months. This event most likely occurred when wage data was being entered in order to update costs based on the latest wage determination revision for the purpose of making the proposed costs current, accurate, and complete.

Although the Air Force did not have the detailed spreadsheets to support the BAFO price proposal, a simple side-by-side comparison of the original and BAFO Schedule Bs (Exhibits 1 & 3) for each library should have alerted the Air Force to the fact that the price proposed for the Malmstrom AFB library was inconsistent with the prices proposed for the remaining four base libraries and that there was no technical or management justification for the difference in cost. This simple side-by-side comparison is shown in the table below.

**SUMMARY COMPARISON OF ORIGINAL PROPOSAL AND BAFO**
Total Contract

| BASE | ORIGINAL PROPOSAL | BAFO | DIFFERENCE | % CHANGE |
|---|---|---|---|---|
| Warren AFB | $ 840,947 | $ 833,892 | $ (7,055) | -0.84% |
| ***Malmstrom AFB*** | ***$ 890,032*** | ***$ 668,280*** | ***$ (221,752)*** | ***-24.92%*** |
| Patrick AFB | $ 994,556 | $ 973,483 | $ (21,073) | -2.12% |
| Petersen AFB | $ 1,022,050 | $ 1,014,131 | $ (7,919) | -0.77% |
| Vandenberg AFB | $ 1,397,981 | $ 1,423,573 | $ 25,592 | 1.83% |

In addition to obvious inconsistency in the pricing among the libraries, the magnitude of the price reduction for the Malmstrom AFB library alone should have caused the Air Force to question the BAFO price on the basis of a *Cardinal* change. Barring any significant change in the level of effort

proposed and the fact that no explanation or offer to absorb any costs was purported, any BAFO price reduction of over 10%, let alone **25%**, should have been highly suspect and considered *Cardinal* in magnitude.

The combination of the *extraordinary* price reduction for just one library when compared to the other four, and the fact that the same four libraries all showed modest *increases* in the first year basic contract prices, together presents additional clear and convincing evidence, even without cost or pricing data support, of the probability that a mistake in bid occurred. Such clear and convincing evidence should have caused the AFSPC to request a *bid verification*. The contract year 1 price comparison by base is shown in the table below.

| Basic Contract Period of Performance ( Year 1) | | | | |
|---|---|---|---|---|
| BASE | ORIGINAL PROPOSAL | BAFO | DIFFERENCE | % CHANGE |
| Warren AFB | $ 163,124 | $ 166,224 | $ 3,100 | 1.90% |
| ***Malmstrom AFB*** | ***$ 172,774*** | ***$ 136,932*** | ***$ (35,842)*** | ***-20.75%*** |
| Patrick AFB | $ 194,481 | $ 194,675 | $ 194 | 0.10% |
| Petersen AFB | $ 199,199 | $ 202,219 | $ 3,020 | 1.52% |
| Vandenberg AFB | $ 272,618 | $ 284,969 | $ 12,351 | 4.53% |

## VI. CLAIM OF SUM CERTAIN AMOUNT

IIa herewith demands that the Contacting Officer reform the contract by the additional sum certain amount of $174,882 to eliminate and correct the Government's *undue enrichment* and thereby provide Information International Associates, Inc. its long sought after equitable adjustment. The calculation of this claim is shown in the table below. It is based on the difference between the price of the services CLINs as awarded, which included the mistake in bid, and the price of services as it should have been, without the mistake in bid.

Contract F05603-99-C0001
Claim

| CLIN Number | Description | Qty | Unit | Contract Unit Price (as awarded) | Original Contract Total | "Corrected" BAFO Unit Price | "Corrected" BAFO Total | Claim |
|---|---|---|---|---|---|---|---|---|
| 0004 | **Nonpersonal Library Services at Malmstrom AFB, FFP** | | | | | | | |
| 0004AA | Basic Contract Period of Perf<br>1 April 1999 - 31 March 2000<br>ACRN: AB | 12 | MO | 8,361 | 100,332 | 10,665 | 127,980 | 27,648 |
| 0004AB | Option Year 1<br>1 April 2000 - 31 Mar 2001<br>ACRN: BB | 12 | MO | 7,894 | 94,728 | 10,643 | 127,716 | 32,988 |
| 0004AC | Option Year 2<br>1 April 2001 - 31 March 2002<br>ACRN: CB | 12 | MO | 7,854 | 94,248 | 10,551 | 126,612 | 32,364 |
| 0004AD | Option Year 3<br>1 April 2002 - 31 March 2003<br>ACRN:DB | 12 | MO | 8,078 | 96,936 | 10,814 | 129,768 | 32,832 |
| 0004AE | Option Year 4<br>1 April 2003 - 31 March 2004<br>ACRN: AB | 12 | MO | 8,253 | 99,036 | 10,978 | 131,736 | 32,700 |
| **0004AF** | **Contract Extension<br>(@ orig opt yr 4 rates)<br>1 April 2004 - 30 Sep 2004<br>ACRN: FB** | **6** | **MO** | **8,253** | **49,518** | **10,978** | **65,868** | **16,350** |
| | **Claim Total** | | | | | | | **174,882** |
| | Current CLIN 0004A Contract Price (through Mod. P00044) | | | | 606,250 | | | |
| | **Revised CLIN 0004A Price (Reformation)** | | | | **781,132** | | | |
| | **Total Current Contract Value (All 5 Libraries thru Mod P00044 )** | | | | | **5,975,184** | | |
| | **Contract Claim Adjustment % (of total contract value)** | | | | | **2.93%** | | |

According to the AFSPC's own A-76 Cost Comparison Form (CCF) (Exhibit 5), the margin between IIa's BAFO and the AFSPC's estimate (i.e. the *next lowest offer*) was $317,848. Even with the upward adjustment of $158,532, which is the cost of correcting the mistake in bid, and excluding the unilateral six-month contract extension, IIa would still be the low bid, meeting the requirement found at FAR 14.407-4 (b) (2) (ii).

Information International Associates, Inc. expects the AFSPC's written decision within sixty (60) days of receipt of this Certified Claim.

# EXHIBITS

1) Original Proposal Schedule B
2) Supporting Spreadsheets to Original Proposal Schedule B
3) BAFO Schedule B
4) Supporting Spreadsheets to BAFO Schedule B
5) Cost Comparison Form (CCF)
6) "Corrected" BAFO Spreadsheets
7) Certification of Claim

# EXHIBIT 1

## Original Proposal Schedule B

PART I - THE SCHEDULE

SECTION B

SUPPLIES OR SERVICES AND PRICES/COSTS (BID SCHEDULE)

ITEM SUPPLIES/SERVICES
CLIN

| Number | Description | Qty. | Unit | Unit Price | Total Amount |
|---|---|---|---|---|---|
| 0004 | NOUN: Nonpersonal Library Services at Malmstrom AFB, MT. CONTRACT TYPE: Firm-Fixed Price DESCRIPTIVE DATA: The contractor shall provide the services necessary to accomplish the effort as described in Section J, Attachment 3, Performance Work Statement dated 1 July 1998. | | | | |
| 0004AA | Basic Contract Period of Performance 1 April 1999 – 31 March 2000. ACRN: AB | 12 | MO | $ 11,348 | $ 136,174 |
| 0004AB | Option Year 1: 1 April 2000 – 31 March 2001 ACRN: BB | 12 | MO | $ 11,507 | $ 138,087 |
| 0004AC | Option Year 2: 1 April 2001 – 31 March 2002 ACRN: CB | 12 | MO | $ 11,727 | $ 140,724 |
| 0004AD | Option Year 3: 1 April 2002 – 31 March 2003 ACRN: DB | 12 | MO | $ 11,953 | $ 143,430 |
| 0004AE | Option Year 4: 1 April 2003 – 31 March 2004 ACRN: EB | 12 | MO | $ 12,385 | $ 148,617 |

0005 NOUN: Travel, training and library materials purchased with local funds for Malmstrom AFB, MT. CONTRACT TYPE: Cost Reimbursement – No profit or fee allowed.

0005AA Basic Contract Period of Performance 1 April 1999 – 31 March 2000. ACRN: AB — Estimated Cost $36,600.00

0005AB Option Year 1: 1 April 2000 – 31 March 2001 ACRN: BB — Est. Cost $36,600.00

0005AC Option Year 2: 1 April 2001 – 31 March 2002 ACRN: CB — Est. Cost $36,600.00