IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION INTERNATIONAL ASSOCIATES, INC., | ) | |
| Plaintiff, | ) | No. 04-1489C |
| v. | ) | Judge Braden |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF FACT

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully responds to plaintiff's proposed findings of fact submitted with Plaintiff's Motion For Judgment On The Record And Plaintiff's Brief In Support Of Its Motion Or In The Alternative Plaintiff's Motion For Summary Judgment ("IIA's motion") on March 1, 2006.

Proposed Finding:

1. The Defendant issued Solicitation No. F05603-98-R0002 on or about August 7, 1998.

Response:

Undisputed.

Proposed Finding:

2. The solicitation called for proposals to furnish labor and supplies to man and manage libraries at five (5) identified Air Force Bases, one of which was Malmstrom Air Force Base.

Response:

Undisputed.

Proposed Finding:

3. The solicitation called for a two part proposal. Part "A" was the offerors' Technical Proposal and Part "B" was the offerors' cost proposal.

Response:

Undisputed.

Proposed Finding:

4. The cost proposal was to be provided utilizing formats provided by the Defendant. Each of the five Air Force Bases was to be bid separately although the award was to be made on all of the Air Force Bases as a whole. (JE #1, Baker Depo., p. 17, II., 17-25; p. 18, ll. 1-14; Plaintiff's Exhibit #1).

Response:

Undisputed.

Proposed Finding:

5. The bid sheets for each Air Force Base called for a Base bid for the first year and four (4) option years. It also contained a set price for furnishing materials and supplies which was furnished by the Defendant. (JE#1, Baker Depo., p. 17, ll. 18-23; p. 19, ll. 6-25; Plaintiff's Exhibit #1, pp. 008-0019: For example, please refer to Line Items 0002AA and 0002AB on p. 0008).

Response:

Undisputed.

Proposed Finding:

6. The largest portion of the price proposals was composed of the labor costs for the personnel assigned to staff the libraries, comprising approximately Eighty Percent (80%) of the total bid for each Base. (Plaintiff's Exhibit #1, pp. 008-0019).

Response:

Undisputed.

Proposed Finding:

7. Plaintiff prepared and submitted a proposal in response to the Defendant's solicitation. The cost portion of Plaintiff's proposal was prepared by Patricia Powell, Plaintiff's Director of Finance and Administration. (Exhibit JE#2, Powell Depo., p. 18, ll. 23-25).

Response:

Undisputed.

Proposed Finding:

8. Mrs. Powell testified that she did all of the staffing for this effort including the number of staff at each location, type of staff and working hours. (JE#2, Powell Depo., p. 19, ll. 1-19).

Response:

Undisputed.

Proposed Finding:

9. Mrs. Powell wrote the entire technical proposal and oversaw the oral presentation. (JE#2, Powell Depo., p. 20, ll. 4-6)

Response:

Undisputed.

Proposed Finding:

10. Mary Woods and Jim Covey assisted Mrs. Powell in the development of the original spreadsheets and the actual price proposal. (JE#2, Powell Depo., p. 20, ll.8-11).

Response:

Undisputed.

Proposed Finding:

11. Mrs. Powell was the source for the salaries, overhead and G&A. (JE#2, Powell Depo., p. 20, ll. 22-24).

Response:

Undisputed.

Proposed Finding:

12. Mrs. Powell testified that she determined how the bases would be staffed by starting with the Statement of Work ("SOW") that was provided by the Defendant. She identified all of the activities required to fulfill the SOW and did a systematic review of what types of people it would take. She then projected the necessary hours to do the job. (JE#2, Powell Depo., p. 22, ll. 13-20).

Response:

Undisputed.

Proposed Finding:

13. Mrs. Powell also testified that she was the one who reviewed the original proposal

for completeness and accuracy. (JE#2, Powell Depo., p. 24, ll. 10-14).

Response:

Undisputed.

Proposed Finding:

14. Mrs. Powell did not go through the spreadsheets and recalculate the numbers because that was the job of the accounting staff. She did some double checking and simply checked the bottom line on the spreadsheets. (JE#2, Powell Depo., p. 25, ll. 4-19; p. 26, ll. 1-21).

Response:

Undisputed.

Proposed Finding:

15. The Defendant's contracting officer, Rosalind Baker, gathered a technical panel to evaluate the Technical Proposals. (JE#1, Baker Depo., p. 20, ll. 19-21). However, the Price Proposals were evaluated only by the contracting officer, Rosalind Baker. (JE#1, Baker Depo., p. 14, ll 6-21).

Response:

Undisputed.

Proposed Finding:

16. The technical panel not only evaluated the offerors' written proposal but also conducted oral presentations. (JE#1, Baker Depo., p. 21, ll 18-23). The technical panel was to determine who was technical acceptable. (JE#1, Baker Depo., p. 20, ll. 19-22).

Response:

Undisputed.

Proposed Finding:

17. After evaluations, the Plaintiff and one other offeror, Margon, were identified as being within the competitive range. (JE#1, Baker Depo., p. 21, ll. 14-15; Plaintiff's Exhibit #2).

Response:

Undisputed.

Proposed Finding:

18. According to the contracting officer, she did not remember if she had conducted discussions with the offerors. (JE#1, p. 21, ll. 14-19).

Response:

Undisputed that the contracting officer, Rosalind Baker, testified at her deposition that she could not recall whether she had conducted discussions with Margon and plaintiff.

Proposed Finding:

19. The contracting officer directed the Plaintiff and the other offeror to present Best And Final Offers. (Plaintiff's Exhibit #3).

Response:

Undisputed that the contracting officer directed plaintiff and Margon to present Best and Final Offers.

Proposed Finding:

20. The contracting officer's notice to the two qualified offerors contained a direction that required the offerors to maintain the same staffing numbers that they had proposed in their

initial proposal. The letter stated: "offerors are advised not to modify what was presented in their oral proposals in their final price proposal either directly, by inference, or effect. Example: manning levels and employee classifications should not be modified in order to reduce price at time of final proposal." (Plaintiff's Exhibit #3).

Response:

Undisputed, however, defendant notes that the cited portion of the letter states in its entirety as follows:

> In accordance with Section L-507, Sequence of Events During Proposal Evaluation, this memo serves as notice that discussions have concluded and a request for final offers is being made from those offerors evaluated to be technically acceptable. As stated in the solicitation, "offerors are advised not to modify what was presented in their oral proposals in their final price proposal either directly, by inference, or effect. Example: manning levels and employee classifications should not be modified in order to reduce price at time of final proposal. Any changes in manning levels should have been resolved as a result of responses to discussions."

Proposed Finding:

21. Ms. Baker testified that, in her opinion, this language was just an advisement and for the offerors to proceed at their own risk. (JE#1, Baker Depo., pp.22-23).

Response:

Undisputed. Specifically, Ms. Baker testified,

> Well, I would say proceed at your own risk if you are going to change your proposal. The technical team found it technically acceptable. That is why we are asking for final proposals from them. And they were just, you know, advised - it is just an advisement. If they proceeded, it was at their own risk if they did else-wise.

Proposed Finding:

22. When asked if the technical panel had determined that the Plaintiff's proposal had been acceptable from a manning level as to how many personnel were acceptable for each library, Ms. Baker replied that she could not recall. (JE#1, Baker Depo., 23, ll. 4-13; p. 24, ll. 2-7).

Response:

Undisputed.

Proposed Finding:

23. The Request For Final Proposals also contained a copy of an SF1447 and a copy of Section B from the solicitation for the offerors to complete for their Final Price Proposal. (Plaintiff's Exhibit #3).

Response:

Undisputed that the Request for Final Proposals states that "Attached to this memo is a SF1447 and Section B from the solicitation . . . ." Defendant assumes those documents were attached to the Request for Final Proposal sent to plaintiff, but is not certain.

Proposed Finding:

24. Ms. Baker did not recall if the technical panel had reviewed the manning levels and found them acceptable. (JE#1, Baker Depo., p. 23, ll. 4-13; p. 24, ll. 2-14).

Response:

Undisputed that Ms. Baker could not recall, five years later, whether the technical panel had reviewed the manning levels and found them acceptable. However, the request for final proposal, signed by Ms. Baker on November 2, 1998, states that "this memo serves as notice that

discussions have concluded and a request for final offers is being made from those offerors evaluated to be technically acceptable." Pl. Ex. 3. Given that a request for a final offer was made to plaintiff, it can be assumed that plaintiff's original proposal was found to be technically acceptable.

Proposed Finding:

25. By the time the Plaintiff had the request for the Best And Final Pricing, Jim Covey was the director of finance and was responsible for finalizing the proposal. (JE#2, Powell Depo., p. 31, ll. 3-8).

Response:

Undisputed.

Proposed Finding:

26. Mrs. Powell testified that she worked on the final bid by slightly changing some of the responsibilities so that they reduced some of the hours. She also testified that she did not combine two positions into one to reduce costs. (JE#2, Powell Depo., p. 32, ll. 6-25; p. 33, ll. 1-11).

Response:

Undisputed, but avers that Mrs. Powell testified that she readjusted the assignments and took away hours from some positions to reduce hours and save money. JE 2, at 33, ll. 11-19.

Proposed Finding:

27. According to Mrs. Powell, the procedure was not the same for the final bid because she now had an accounting department and they took care of the spreadsheets. (JE#2, Powell Depo., p. 35, ll. 1-8).

Response:

Disputed. This statement is misleading because it suggests that Mrs. Powell did not readjust assignments or take away hours to save money on plaintiff's final bid. To the contrary, as suggested by plaintiff in proposed finding #26, that is exactly what Mrs. Powell did. Rather, Mrs. Powell testified, that unlike the original proposal, once she submitted the reduced hours and readjusted assignments to the accounting department, the information was put into spreadsheets and not returned to her for review. JE 2 at 32-34.

Proposed Finding:

28. The data for the Best And Final Offer was entered onto spread sheets by Mr. Covey who then also entered it onto the Bid Sheets and reviewed the final numbers. (JE#2, Powell Depo., pp. 36-37).

Response:

Undisputed.

Proposed Finding:

29. Except for the initial two (2) months, the salary for the "Library Assistant/Computer Oper III" for Malmstrom Air Force Base was entered into the spread sheets as a "0." This resulted in a small value for the total for the first year for this position and a "0" for the totals for the remaining option years. (Plaintiff's Exhibit #5).

Response:

Undisputed.

Proposed Finding:

30. These incorrect figures were mistakenly entered onto the Bid Sheets for the Best

And Final Offer. This resulted in a difference between the initial offer and the Best And Final Offers for Malmstrom Air Force Base as follows:

| | | Initial Proposal | | BAFO | |
|---|---|---|---|---|---|
| | | Monthly | Year | Monthly | Year |
| A. | Base Year: | $11,348 | $136,174 | 8,361 | 100,332 |
| B. | First Option Year: | 11,507 | 138,087 | 7,894 | 94,728 |
| C. | Second Option Year: | 11,727 | 140,724 | 7,854 | 94,248 |
| D. | Third Option Year: | 11,953 | 143,430 | 8,078 | 96,936 |
| E. | Fourth Option Year: | 12,385 | 148,617 | 8,253 | 99,036 |

Five Year Total: 890,032.43 668,280.00

(Plaintiff's Exhibit #1, pp. 0010, 0011 and Plaintiff's Exhibit #4, pp. 006, 007).

Response:

Undisputed that the above chart, which was not included in any submissions to the contracting officer, reflects the proposed prices in plaintiff's initial and final price proposals. However, defendant disputes that the proposed prices were presented to the contracting officer in the format set forth above.

Proposed Finding:

31. Plaintiff's Best And Final Offer was reviewed solely by the contracting officer, Rosalind Baker. Ms. Baker testified that although each Base had to operate on its own, she was not interested in reviewing the cost proposals for the individual Air Force Bases and was only interested in the total price. (JE#1, Baker Depo., p. 25, ll. 6-18).

Response:

Disputed. When asked whether she reviewed all pages of the final proposals submitted

by offerors in the competitive range, Ms. Baker testified as follows:

> Q. And I guess as you have told us before, since you were the contracting officer, and there was no formal source selection board, and you were doing all the pricing work, then you would be the one who had reviewed this final proposal?
>
> A. Yes, I would have.
>
> Q. Okay. Can I assume that in your review you would have reviewed all pages of the proposal?
>
> A. I think – I mean, I would have looked at the pages. The math would have been checked across. And then it would have been – the bottom line would have been the focus for determining who was the winning offer amongst contractors to compete now against the government.
>
> Q. Would you in your review have reviewed this final proposal against the prices provided in the initial propsoal?
>
> A. No.

JE 1 at 25, ll. 6-22.

Proposed Finding:

32. Ms. Baker testified that she did not compare the Final Cost Proposal with the Plaintiff's Initial Cost Proposal and would only have looked at the bottom line. (JE#1,p. 25, ll. 11-22; p. 26, ll. 1-16).

Response:

Undisputed that Ms. Baker testified that she did not compare plaintiff’s final cost proposal with plaintiff’s initial cost proposal. Disputed that Ms. Baker testified that she would have only looked at the bottom line. JE 1 at 25, ll. 6-22, at 26, ll. 1-16.

Proposed Finding:

33. Ms Baker testified that the Two Hundred and Thirty Thousand, Two Hundred and Forty-Seven Dollar ($230,247) reduction in Plaintiff's bottom line price did not alert her because the contract was performance based and it was up to the contractor how they were going to man the bases. (JE#1, Baker Depo., p. 27, ll. 1-12).

Response:

Undisputed.

Proposed Finding:

34. Ms. Baker testified that although the contractor bid based on manning levels, (JE#1, Baker depo., p. 28, ll. 24 to p. 29, l. 12) she was not interested in reviewing the cost proposals to determine if the offerors had changed their proposal. She was just looking at the bottom line price. ( JE#1, Baker Depo., p. 30, l. 22 to p. 31, l.17).

Response:

Disputed. Ms. Baker testified as follows regarding her review of the best and final proposal of plaintiff:

> Q. Their final proposal says $668,280 for the same five-year time period. I guess what I am asking, would that not alert you to, wait a minute, have they dropped a person off? How can they staff four people? You tell me you are going to staff four people at 890,000. Now you are going to tell me you are going to maintain, because you told them in a letter than you have go to maintain the manning. That is what we accepted you on. And now they are manning it now at $220,000 less.
>
> A. Being a fixed-price contract, the contractors could be as creative as they want. I didn't focus it on Malmstrom or any of the other bases when I got the final proposal in. It

> was checking the math of this proposal. And then it was the competition as well. And it was of the two of those contractors who was the lowest. I didn't go back and, you know, compare this to this to this to this.

JE 1, at 30, ll. 13-25; at 31, ll. 1-3.

Proposed Finding:

35. Ms. Baker testified that she did not go through the proposals on a point-by-point basis to determine if the proposal had changed. (JE#1, Baker Depo., p. 33, l. 21 to p. 34, l. 4).

Response:

Disputed. Ms. Baker testified that she did not go through the final proposals on a point-by-point basis to determine how the final proposal was different from the initial proposal. Specifically, Ms. Baker testified at the time she was looking at the final proposals of the two offerors in the competitive range, plaintiff and Margon, "the price analysis [she] was doing at [that] point in time was between this contractor and this contractor . . . and . . . any drastic [] variations [she thought] would jump out at [her]." JE 1 at 33, ll. 2-6.

Proposed Finding:

36. Ms. Baker did, however, create an "Abstract of Proposal/Quotations" that carried forward all of the line item figures contained in the Plaintiff's Best And Final cost proposal. (Plaintiff's Exhibit #6).

Response:

Undisputed.

Proposed Finding:

37. Ms. Baker also typed the letter to the losing bidder that contained all of the data

concerning the individual line items from Plaintiff's Final Price Proposal. (Plaintiff's Exhibit #7).

Response:

Undisputed that Ms. Baker signed a postaward notice, dated December 2, 1998, to Margon, and that this notice contained the items, quantities and stated unit prices in plaintiff's final price proposal. Disputed that the letter contained all of the data concerning the individual line items from plaintiff's final price proposal because many of the underlying data concerning the individual line items were never asked for, nor submitted with, plaintiff's final price proposal.

Proposed Finding:

38. Mary Woods was the first individual to discover the mistake in Plaintiff's cost proposal. She discovered it after the contract had been awarded and she was loading the data into her computer to set up salaries for the prospective employees. (JE#4, Woods Depo., p. 15, ll. 17-24; JE#2, Powell Depo. p. 40, ll. 5-24).

Response:

Undisputed.

Proposed Finding:

39. Mrs. Woods discovered that the salaries as reflected in the bid sheet did not appear correct because they went down after the first year, which is not characteristic. (JE#4, Woods Depo., p. 14. ll. 10-21; p. 20, ll. 5-13).

Response:

Disputed. Mrs. Woods testified regarding her first notice of the mistake as follows:

A. Yes. I noticed that the basic contract period performance

> from April 1 of 1999 through March of 2000, the monthly amount was 800 or 8,361, and the total 100,332.
>
> Q. Okay.
>
> A. The second option from April 2000 to 2001 was 7,894 and 94,728.
>
> Q. So you – I'm sorry, go ahead.
>
> A. And my question was to Pat, was why was there the decrease and why is it that significant of a decrease in the first year, in the second year, in my mind, they should have gone up or gradually have gone up as they did in the third and the fourth year. And I asked her if I was setting it up to be billed correctly. But that's what drew my fist question to her. And than I started looking at the spreadsheet and found that particular cell.

JE 4 at 19, l. 22 - 20, l. 13.

Defendant further disputes that it is uncharacteristic for the salaries to have decreased in the first and second option years. Defendant notes that in plaintiff's final proposal, the salaries decreased in the first and second option year for <u>all</u> <u>five</u> <u>bases</u>, not just the Malmstrom base for which plaintiff claims it made a mistake. Pl. Ex. 4. Plaintiff does not claim that any salaries were omitted or any other mistakes were made in its bid concerning the other four Air Force bases.

<u>Proposed Finding</u>:

40. Mrs. Woods then discovered that the salaries for the Library Technician had been entered as "0" on the spreadsheets for most of the first year and all of the remaining years of the contract. (JE#4, Woods, Depo., p. 14, l. 21 to p. 15, l. 15).

Response:

Disputed. Mrs. Woods discovered that the salary for the library assistant for the Malmstrom base only was entered into an underlying spreadsheet for the first two months and then remained blank for the rest of the spreadsheet including the option years of the contract. JE 4 at 24, ll. 17-22.

Proposed Finding:

41. Mrs. Woods immediately notified Pat Powell of the error and Pat Powell immediately called Rose Baker. (JE#4, p. 17, ll. 8-14).

Response:

Undisputed.

Proposed Finding:

42. Pat Powell testified that she immediately called Rosalind Baker and informed her of the error. She also testified that she discussed the matter with Ms. Baker several times and that at first Ms. Baker was receptive to changing the contract; however, later she became more negative. (JE#2, Powell Depo., p. 41, ll. 3-25).

Response:

Undisputed.

Proposed Finding:

43. Ms. Baker testified that the first time she was aware of the problem was when another government employee, Margaret Wages, notified her that the Plaintiff had called. During her testimony she did not mention any conversation with Patricia Powell. (JE#1, Baker Depo., p. 42, ll. 1-8).

Response:

Undisputed.

Proposed Finding:

44. The Plaintiff hired a person to fill the question position and paid them through the contract. (JE#2, Powell Deposition, p. 45, ll. 15-20).

Response:

Undisputed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

OF COUNSEL:

JEFFREY BRANSTETTER, Major, USAF
Commercial Litigation Division
Air Force Legal Services Agency
1501 Wilson Blvd, Suite 604
Arlington, VA 22209

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
tel: (202) 307-1011
fax: (202) 307-0972

March 22, 2006

Attorneys for Defendant