IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION INTERNATIONAL ASSOCIATES, INC., | ) | No. 04-1489C |
| Plaintiff, | ) | |
| v. | ) | Judge Braden |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h) of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its motion for summary judgment.

1. On August 7, 1998, the Department of the Air Force ("Air Force" or “agency”) issued Request for Proposals ("RFP") F05603-98-R0002. Pl. Mot. 2.

2. The RFP sought nonpersonnel library services for five Air Force bases within Air Force Space Command under a fixed-price, performance-based contract. JE 1 at 12, ll. 21-25, at 13, ll. 1-7, at 30, l. 22, at 29, l. 25.

3. The five Air Force bases included in the RFP were Warren Air Force Base, Malmstrom Air Force Base, Patrick Air Force Base, Peterson Air Force Base and Vandenberg Air Force Base. Pl. Mot. Ex. 4. One contract would be issued to provide library services to all five bases.

4. Five offerors responded to the solicitation. JE 1 at 15, ll. 8-9.

5. Two proposals, that of Information International Associates, Inc. (“IIA”) and Margon, Inc. (“Margon”) were found to be technically acceptable and selected for the competitive range. JE 1 at 21, ll. 11-15.

6. On November 2, 1998, the contracting officer, Rosalind M. Baker, requested final proposals from IIA and Margon with the lowest priced offeror to compete against the Government's Most Efficient Organization ("MEO"). Pl. Mot. Exh. 3.

7. Ms. Baker's request specifically stated that "discussions have concluded and a request for final offers is being made from those offerors evaluated to be technically acceptable." Id. The request further stated that, "offerors are advised not to modify what was presented in their oral proposals in their final price proposal either directly, by inference, or effect. Example: manning levels and employee classifications should not be modified in order to reduce price at time of final proposal." Id.

8. Margon and IIA could, however, reduce their bottom line prices in their final price proposals by transferring responsibilities from hourly employees to salary employees and by reducing the number of man-hours to provide the required services. JE 1 at 29, l. 11 to 31, l. 3; JE 2 at 23, ll. 18-25; at 32, l. 6 to 32, l. 19.

9. The request for final proposals also specifically requested that a form 1447 and schedule B from the solicitation be completed and submitted as the final proposal. Id. The request for final proposals did not request any backup documentation or spreadsheets from the offerors in the competitive range. Id.

10. IIA submitted its final price proposal on or around November 6, 1998. Pl. Mot. Exh. 4.

11. Patricia Powell, IIA's vice-president responsible for managing contracts, did not compare each line item of IIA's initial proposal with each line item of IIA's final proposal before IIA's final proposal was submitted. JE 2 at 37, l. 11 to 38, l. 20.

12. Upon receipt of IIA's final price proposal, the contracting officer checked the math of the final proposal and compared IIA's total price with the total price of the other offeror in the competitive range, Margon. JE 1 at 25, ll. 12-18.

13. The total price in IIA's final proposal was only 2.1 percent less than the total price in IIA's initial proposal. Pl. Mot. Exhs. 1 & 4. Moreover, IIA's final proposal was only $181,872, or 3.7 percent, less than Margon's final proposal. Pl. Mot. Exh. 6.

14. The relatively small difference in price between IIA's initial and final proposals did not alert the contracting officer to any possible mistake. JE 1, at 27, ll. 10-12.

15. In reviewing the final proposals, the contracting officer used a comparative price analysis. JE 1, at 28, ll. 10-16. She compared IIA's final proposal to Margon's final proposal for any drastic variations. JE 1 at 33, ll. 2-6.

16. The contracting officer used the initial proposals during determination of the competitive range, but did not go back and compare the initial proposal prices to the final proposal prices. At the final proposal stage, the final prices were only compared against the other competitor's bottom line price to determine which offeror would compete against the Government MEO for the contract. JE 1 at 25, ll. 14-18, 25, at 26, ll. 1-16.

17. After receiving the final proposals and determining that IIA had the lower price, IIA was awarded the right to compete against the Government MEO for the contract. JE 1 at 37, ll. 9-12, at 26, ll. 14-16.

18. IIA beat the Government MEO, and was awarded, and subsequently performed, the contract. JE 2 at 48, ll. 19-23, at 40, l. 9, at 62, ll.19-24.

19. After the contract was awarded, the Government MEO was made available to IIA

for review and inspection, and a representative of IIA reviewed the MEO. JE 2 at 45, l. 21 to 46, l. 6.

20. Shortly after contract award, Mary Wood, an IIA employee, noticed that the final bid price for Malmstrom Air Force Base decreased from the base year to the first and second option years before increasing again for the third option year. JE 4 at 19, l. 22 to 20, l. 13. This led Ms. Wood to believe a mistake may have been made. Id. After looking through the backup spreadsheets for the final price proposal, Ms. Wood noticed that, other than for the first two months of the base year, the salary for a Library Assistant/Computer Operator III for Malmstrom Air Force Base had been omitted, and the incorrect figures were mistakenly used to prepare IIA's final price proposal. Id. at 23, l. 24 to 25, l. 2.

21. There were no mistakes in IIA's initial price proposal, and there were no mistakes in IIA's bids for the four Air Force bases other than Malmstrom Air Force Base.

22. However, the pattern of a decrease in price in the first and second option years, which caused Ms. Wood to examine the backup spreadsheets and discover the mistake, was also reflected in IIA's bid for the other four Air Force Bases, none of which contained a mistake in bid. Pl. Mot. Exh. 4.

23. IIA's mistake in bid was only apparent in its backup spreadsheets used to prepare the final price proposal. JE 2 at 56, ll. 16-22; at 57, l. 12 to 58, l. 20. The contracting officer did not request these backup spreadsheets as part of the final price proposal. Pl. Mot. Exh. 3.

24. On May 28, 2004, IIA submitted a certified claim to the contracting officer alleging a mistake in its bid and seeking reformation of the contract. Def. Mot. Att. 1. However, prior to receiving a decision from the contracting officer on the claim, IIA filed the current action

before the Court on September 24, 2004.

25. In its certified claim and complaint, IIA claimed it would have bid $174,882 more but for its mistake. Def. Mot. Att. 1. In response to the Government's discovery request, IIA claimed it would have bid $95,558 but for its mistake. Def. Mot. Att. 2.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
tel: (202) 307-1011
fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

JEFFREY BRANSTETTER, Major, USAF
Commercial Litigation Division
Air Force Legal Services Agency
1501 Wilson Blvd, Suite 604
Arlington, VA 22209

March 22, 2006