**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INFORMATION INTERNATIONAL ASSOCIATES, INC.,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | **NO. 04-1489C** |
| **V.** | ) | **(Judge Braden)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S BRIEF IN REPLY TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**J. HATCHER GRAHAM, P.C.**
**BY: J. Hatcher Graham**
**Georgia Bar No. 304577**
**P.O. Box 7626**
**Warner Robins**
**Georgia 31095**
**(478) 953-5606**

## TABLE OF CONTENTS


STATEMENT OF THE ISSUES ........................................................................ 1.

STATEMENT OF THE CASE ........................................................................ 2.

I. Nature of The Case ........................................................................ 2.

II. Statement of Facts ........................................................................ 3.

SUMMARY OF ARGUMENT ........................................................................ 3.

ARGUMENT ........................................................................ 5.

I. Legal Standards ........................................................................ 5.

A. Summary Judgment Standard ................................................ 5.

B. Legal Standard for a Mistake In Bid After Award ................ 5.

II. The Defendant is not Entitled to Judgment As A Matter Of Law As There Are Disputes As To Material Facts.......................................... 9.

III. The Plaintiff is entitled to Judgment On The Record As It Has Established the existence of a Mistake In Bid and That The Defendant Had Constructive Notice of The Mistake............................................ 10.

A. The Plaintiff Has Established The Existence Of A Mistake In Bid ........................................................................ 10.

B. The Contracting Officer Either Knew About The Mistake In Plaintiff's Bid Or She Should Have Known Of The Mistake ... 10.

1. The Contracting Officer Should Have Been Aware Of The Mistake In Plaintiff's Bid ............................. 10.

2. The Contracting Officer Had Actual Knowledge Of The Drastic Reduction In The Plaintiff's Proposal For Malmstrom Air Force Base .................. 15.

IV. The Amount Of Plaintiff's Intended Bid is Clear For a Reading of The Bidding Documents...................................................................... 17.

CONCLUSION........................................................................................... 18.

# TABLE OF AUTHORITIES

## CASES

A. United States Supreme Court

Anderson v. Liberty Lobby, Inc.
477 U.S. 242, 91 L/ Ed. 2d 292, 106 S. Ct. 2505 (1986) ............................ 5.

Celotex Corp. v. Catrett,
477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ............................ 5.

B. Other Federal Courts

Aydin Corporation v. United States,
229 Ct. Ci. 309; 669 F. 2d 681 (1982) ........................................................ 9.

BCM Corp. v. United States,
2 Ct. Cl. 602 (1983) .......................................................................... 7., 9.

Bromley Contracting v. United States,
219 Ct. Cl. 517, 596 F. 2d 448 (Ct. Cl. 1979) .............................................6, 17

Bubble Room, Inc. v. United States,
159 F.3d 533 (Fed. Cir. 1998) .......................................................... 5.,

Michael Chernick and Belle Chernick v. United States,
178 Ct. Cl. 498; 373 F. 2d 492 (1967) ........................................................ 8.

Connelly Containers, Inc.. v. United States,
7 Ct. Cl. 423 (1985) .......................................................................... 9.

C. W. Over & Sons, Inc. v. United States,
44 Fed. Cl. 18 (1999) ........................................................................ 6.

Dakota Tribal Industries v. United States,
34 Fed. Cl. 593 (1995) ...................................................................... 6.

Geisler v. United ,
232 F. 3d 863 (Fed. Cir. 2000) .......................................................... 6, 7, 10, 13

Liebherr Crane Corp. v. United States,
810 F. 2d 1153 (Fed. Cir. 1987) ........................................................ 6.

R. J. Sanders, Inc. v. United States,
24 Ct. Cl. 288 (1991) ..........................................................................5.

Ruggiero v. United States,
190 Ct. Cl. 327, 420 F. 2d 709 (1970) ........................................................9.

Price v. Symsek,
988 F. 2d 1187 (Fed. Cir. 1993) .................................................................6, 17

Saligman v. United States,
56 F. Supp. 505 (E.D. Pa. 1944) .................................................................8, 13

Wender Presses, Inc. v. United States,
170 Ct. Cl. 483; 342 F. 2d 961 (1965) ........................................................7., 8, 13

Will H. Hall And Son, Inc. v. United States,
54 Fed. Cl. 436 (2002) ................................................................... 6., 10, 17

United States v. Hamilton,
711 F. 2d 1038 (Fed. Cir. 1983) ..................................................................6.

C. Administrative Decisions

Kato Corporation, 97-2 BCA, §29,130 (1997) ........................................................5.

D. Regulations

48 C.F.R. §14.406-1 ............................................................................... 7.

48 C.F.R. §14.407-1 ............................................................................... 7., 16., 18.

48 C.F.R. §14.407-3(a) ..........................................................................6., 7.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INFORMATION INTERNATIONAL ASSOCIATES, INC.,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO. 04-1489C (Judge Braden)** |
| **V.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S BRIEF IN REPLY TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

The Plaintiff has filed its Motion For Judgment On The Record, Or, In The Alternative, Motion For Summary Judgment and Defendant has responded with its Cross-Motion For Summary Judgment and Opposition to Plaintiff's Motions. It is the position of the Plaintiff that there is a dispute as to material facts preventing a Summary Judgment decision but that, as this matter has been submitted on the record, Plaintiff should be granted a judgment it its favor based on the record presented.

**STATEMENT OF THE ISSUES**

1. Whether there is a dispute as to material facts preventing a Summary Judgment.
2. Has the Plaintiff established that the contracting officer either knew or should have known of the mistake in Plaintiff's bid.
3. If Plaintiff has established that the contracting officer either knew or should have know of the Plaintiff's mistake in bid, has Plaintiff established the amount of the intended bid by the bid documents.

**STATEMENT OF THE CASE**

**I. Nature Of The Case**

The nature of the case is not complicated. As is evidenced by both the Plaintiff and the Defendant's Proposed Findings of Fact, the Defendant, through the United States Air Force, issued Solicitation No. F05603-98-R0002 for the furnishing of library services for five (5) different Air Force Bases. (*PPFF ##1, 2*) The bid schedule contained bid sheets for each Air Force Base and the total bids for a base year and four (4) option years. (*PPFF #5*). The proposals were to be submitted in two parts with Part "A" the Technical proposal and Part "B" the Cost Proposal. (*PPFF # 3*) The Plaintiff submitted its proposal and, along with one other bidder, was found to be technically within the competitive range. (*PPFF #17*) The Technical Panel and the contracting officer asked certain questions during the oral presentations and the Plaintiff altered its technical and cost proposal in response to those comments. (*Attachment "A", Affidavit of Patricia Powell, Para. 1*)

After the determination of the competitive range and the elimination of three (3) other proposers, the Plaintiff and the other qualified proposer were directed by the contracting officer to submit Best and Final cost proposals. (*PPFF #19*) They were specifically directed that they were not to modify manning levels or employee classifications from what was presented in their Technical Proposal as modified by the oral discussions. (*PPFF #20, PL. Ex. 3)*

In preparing its Best and Final proposal, the Plaintiff accidentally failed to transpose salary figures for the position of "Library Assistant/Computer Oper III" for Malmstrom Air Force Base for other than the first two months of the base year. (*PPFF 29, 30; Pl. Ex. 5)* This resulted in a reduction of Plaintiff's bid of Thirty-five Thousand, Eight Hundred and Forty-two

Dollars ($35,842) for the base year of performance and Two Hundred and Twenty-one, Seven Hundred and Fifty-two Dollars and Forty-three Cents ($221,752.43) for the entire five (5) year period of the contract. (*PPFF 30)* This mistaken reduction in the bid amount for Malmstrom AFB was reflected on the bid schedule submitted for Malmstrom in Plaintiff's Best and Final proposal.

Even though the Best and Final proposal directed by the contracting was price only with no technical information provided, the contracting officer testified that she only reviewed the total prices for both proposers in their Best and Final proposals. She did not review the bid schedules for the individual bases or compare them with the initial cost proposals to determine if the proposers had complied with her direction to maintain manning levels or to determine cost realism. (*PPFF 31, 32, 34, 35*) Although the contracting officer testified that she was not aware of the cost schedules for the individual Air Force Bases, she prepared a letter to the losing proposer with the individual cost line items contained therein. (*PPFF 38*) She also created an "Abstract of Proposal/Quotation" that contained all of the individual line items, including the incorrect bid items for Malmstrom AFB. (*PPFF 37)*

**II. <u>Statement Of Facts:</u>**

The Plaintiff will rely on its Proposed Findings of Facts and the Defendants Proposed Statement of Uncontroverted Facts as modified by Plaintiff's dispute remarks.

**<u>SUMMARY OF ARGUMENT</u>**

It is the Plaintiff's contention that it made a mistake in its bid for the subject solicitation in its Best and Final Proposal. For some reason, the salary figures for one of four (4) projected employees was not entered into the spreadsheet for Malmstrom Air Fore Base. This resulted in

that salary amount not being entered into the Plaintiff's final proposal. While the reduction in the price on a total price basis was only about five percent (5%), the reduction in the Malmstrom Bid Schedule was approximately twenty-five percent (25%) and reflected a major reduction in the manning level for Malmstrom. On a total price basis, the Plaintiff's Best and Final Proposal was only approximately Two and one/half percent (2.5%) below the other qualifying proposer

The Defendant argues that the contracting officer only had a duty to review the bids on a total price basis and, based on that contention, there was nothing to alert her that a mistake had occurred. It is the Plaintiff's contention that based on the nature of the competition and the directions given by the contracting officer, she had a duty to examine the bids more closely and to compare the Best and Final bid schedules the initial proposals to ensure that the proposers maintained their manning and staffing levels. In fact, the contracting officer was completely aware of the amounts that the Plaintiff had bid for the staffing for Malmstrom Air Force Base as she prepared a "Abstract of Bids/Proposals" and a letter to the losing proposer detailing the bid schedule items for each Air Force Base as well as the total bids. As she was the only person who reviewed the cost proposals, it should have been perfectly clear to her that an error had occurred and she should have requested a verification of the bids.

The Plaintiff also contends that the intended bid was evident on the face of the bid. When you review the erroneous spreadsheets prepared for the Best and Final Proposal, it is obvious that the Plaintiff did not intend to alter the bid for the subject staffing position. The salary figures for the first two months in the spreadsheet for the Beast and Final for this position are the same as the first two months on the spreadsheet for the initial cost proposal, Therefore, the cost figures for this position were on the spreadsheets submitted to the government in the initial cost

proposal.

**ARGUMENT**

**I. Legal Standards**

**A. Summary Judgment Standard**

Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (*Rule 56(c) of the Rules of the Unites States Court of Federal Claims; Bubble Room, Inc. v. United States, 159 F.3d 533, 561 (Fed Cir. 1998*) A material fact is one which will affect the outcome of the case. (*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L. Ed. 2d 292, 106 S, Ct. 2505 (1986*)) The moving party need only establish that there is an absence of evidence to support the nonmoving party's case. (*Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed 2d 265, 106 S. Ct. 2548 (1986*) To survive a motion of summary judgment, the nonmoving party must provide evidence to show the existence of a genuine issue of material fact. (*R.J. Sanders, Inc. v. United States, 24 Ct.Cl. 288, 291 (1991*)). The same burden requirements apply to a cross-motion for summary judgment. (*Bubble Room, Inc., 159 F. 3d at 561*)

**B. Legal Standard For a Mistake In Bid After Award**

"In order to merit application of the equitable remedy of contract reformation for a unilateral mistake, clear and convincing evidence must show, as appropriate, that : (1) the mistake in fact occurred prior to contract award; (2) the mistake was a clear-cut clerical or mathematical error or misreading of the specification and not a judgmental error; (3) prior to the award the Government knew or should have known that a mistake had been made; (4) the Government's request for bid verification was inadequate; and (5) proof of the intended proposal

was established." *Appeal of The Kato Corporation, 97-2 BCA, p29,130 (1997*); See also *FAR 14.407-4*.

"A government contract may be reformed or rescinded if the contracting officer accepts a bid with actual or constructive knowledge that the bid contains an error. (*Dakota Tribal Industries v. United States, 34 Fed. Cl. 593 (1995); BCM Corp. v. United States, 2 Ct Cl. 602 (1983); Will H. Hall And Son, Inc. v. United States, 54 Fed. Cl. 436 (2002*).

"Generally. a contractor may obtain reformation or rescission of the contract only if the contractor established that its bid error resulted from a 'clear cut clerical or arithmetical error, or a misreading of the specifications." (*Hall at 440; Geisler v. United States, 232 F. 3d 863, 869 (Fed. Cir 2000); Liebherr Crane Corp. v. United States, 810 F. 2d 1153, 1157 (Fed. Cir. 1987); C. W. Over & Sons, Inc. v. United States, 44 Fed. Cl. 18, 29 (1999*)) "If the contractor's error does not constitute one of these kinds of mistakes, then the contractor is not eligible for reformation of the contract." *Geisler, 232 F. 2d at 869; see also Liebherr Crane Corp., 810 F. 2d at 1157; United States v. Hamilton, 711 F. 2d 1038, 1046 (Fed. Cir. 1983*).

A bidder's request for an upward correction of its bid must be supported by clear and convincing evidence of both the existence of a mistake and the intended bid. (*48 C.F.R. §14.407-3(a)*) The intended bid does not need to be an exact figure, as long as the bidder provided clear and convincing evidence to establish that the bid would fall within a narrow range of uncertainty and would remain the low bid if corrected. (*Bromley Contracting v. United States, 219 Ct. Cl. 517, 596 F. 2d 448, 459 (Ct. Cl. 1979); Hall at 440*) Clear and convincing evidence "produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'"(*Price v. Symsek 988 F. 2d 1187, 1191 (Fed. Cir. 1993); Hall at 442*)

"It is plain that plaintiff may recover only if defendant's responsible knew or should have known of the mistake at the time the bid was accepted. (*Wender Presses, Inc. v. United States, 170 Ct. Cl. 483; 342 F. 2d 961, 1965 and cases cited therein*) A contracting officer has a duty to examine all bids for mistakes and " in cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer shall request from the bidder a verification of the bid, calling attention to the suspected mistake." *48 C.F.R. §14.406-1; BCM Corp., 2 Ct. Cl. at 609.* "The contracting officer has a duty to verify a bid if all of the facts and circumstances suggest that it was reasonable to believe a mistake had been made.

As stated in *Geisler, 232 F. 3d at 872*:

> "It is undisputed that the government has a general duty to examine bids for mistakes. *48 C.F.R. §14.407-1*. Under this duty, the government must examine bids for "obvious" clerical errors, see *48 C.F.R. §14.407-2*, and must examine bids for other errors, such as discrepancies between the contractor's bid and the bids of other contractors or the government estimate, see *48 C.F.R. §14.407-3.* As set forth in the Federal Acquisition Regulations ("FAR"), however, the government's duty to examine contractors' submissions for mistakes only pertains to errors contained in contractors' bids..."

The difficulties of determining what the contracting officer should have done was stated in *Wender, supra. at 486* where the Court stated:

> "The task of ascertaining what an official in charge of accepting bids "should" have known or suspected is, of course, not always an easy one. Mistake-making contractors will naturally seek to impose upon such officials a rather high level of brilliance for the purpose of detecting the error. If, for instance, the knowledge of the Government's "staff of experts" available to the contracting officer is imputed to such officer then what the contracting officer "should" have known would cover a very wide range

> indeed. However, the test here, as in so many areas, must be that of reasonableness, i.e., whether under the facts and circumstances of "the particular case there were any factors which reasonable should have raised the presumption of error in the mind of the contracting officer", ... without making it necessary for the agency's experts in every case to assume "the burden" of examining every *** bid for possible error by the bidder" (*See also, Saligman v. United States, 56 F. Supp. 505, 507, E.D. Pa. 1944*)

After stating that some factors which would raise the presumption of error would be an obvious wide range of bids and a gross disparity between the price bid and the value of the article which is the subject of the bid, the Court in *Michael Chernick and Belle Chernick v. United States, 178 Ct. Cl. 498; 373 F. 2d 492 (1967*) discussed the Defendant's assertions that the contracting should only have to review the total prices bid, as follows:

> "Defendant suggests that the *Wender Presses, Inc. supra*, test Should be applied to the contractor's bid with respect to all items of the bid in the aggregate, and if, over-all, the bid is not so widely different from the other bids, then there is nothing reasonably to raise the presumption of error in the mind of the contracting officer. This we do not agree to. The purpose of breaking up a bid into contingency items, absent other stated purpose, would appear to be to enable the contracting officer to evaluate and more accurately separate the bidder's proposals with respect to the contingencies provided for. This would include facilitating detection of errors whether reflected in bids that were too great for particular items, or too small. The contracting officer here, as the record shows, did advert to the fact that, as he supposed, the bid figures for certain options were too large. He can hardly urge, therefore, that he was not required to notice the more obvious fact that bid figures for other items were too small, or that errors in particular clauses were details too petty for his notice." *Chernick, supra, at 496.*

However, the Courts have not always limited the government's duty to examine to merely reviewing the bid pricing or comparisons with other bids or the government estimate. In *Hamilton, 711 F. 2d at 1044-1045*, the Court of Appeals for the Federal Circuit allowed a

reformation because the contracting officer had constructive knowledge or an error in the contractor's man-hour calculations through review of the contractor's bid of the number of manhours the contractor intended to expend compared to the government estimate of manhours needed to perform the services. Event though the contractor had only bid 30% of the government estimated manhours, the contracting officer did not request verification. The Court held that the contracting officer had not fulfilled his duty to confirm the adequacy of the contractor's bid. And in *Connelly Containers, Inc. v. United States, 7 Ct. Cl. 423*, the Court ruled that the contracting officer had not fulfilled his duty to verify the contractor's bid when a line by line review of the freight charges would have revealed that there were obvious discrepancies between plaintiff's bid prices for shipping the same item to several different locations within the United States. The Court held that the contracting officer owed a duty to review the bid items line by line.

It has also been stated that: "...the reasonableness of the mistake is not relevant to the creation or discharge of the verification duty, and "the contractor need not be free from blame. In all of the cases cited above the bidders were, in fact, guilty of egregious blunders." *BCM, supra, at 610, citing Ruggiero, supra and Aydin Corporation v. United States*, 229 Ct. Cl. 309; 669 F. *2d 681 (1982*)

**II. <u>The Defendant Is Not Entitled To Judgment As A Matter Of Law As There Are Disputes As To Material Facts</u>:**

A review of the documents and arguments in this matter reveals that is a dispute of a material fact, i.e., was the contracting officer aware of the pricing difference in the Malmstrom AFB initial and Best and Final bids, or, should she have been aware. As this is the central issue in this litigation, it would prevent this from being adjudged under the summary judgment rules.

The Plaintiff contends that the Court must now weigh the evidence as the trier of facts and determine the result.

**III. <u>The Plaintiff Is Entitled To Judgment On The Record As It Has Established The Existence Of A Mistake In Bid And That The Defendant Had Constructive Notice Of The Mistake:</u>**

**A. <u>The Plaintiff has established the existence of a Mistake In Bid</u>:**

From the facts presented it is obvious that an error was made in the Plaintiff's Best and Final Offer.(*PPFF ##27, 28 & 29)* It is also obvious that this was a clerical error and not an error of judgment. (*Hall, supra, at 440; Geisler, supra, at 869)* For some reason, known only to Mr. Jim Covey, who because of his illness was unable to be deposed, the payroll amounts for the "Library Assistant/ Computer Oper III" at Malmstrom were not included in the computer spreadsheets. (*PPFF #29; Plaintiff's Exhibit #5)* As the bid amounts included in the Bid Schedule came from the totals from the spreadsheets, the error was passed on to the Bid Schedule and into Plaintiff's Best and Final Bid.(*PPFF #30, Plaintiff's Exhibit #4, pp. 6,7)* It is also obvious that this error in Plaintiff's Bid occurred prior to the award of the subject contract. Plaintiff therefore contends that it has complied with the first two qualifications for establishing liability for a mistake in bid, i.e.: the error was clerical and occurred prior to the award of the contract.

**B. <u>The Contracting Officer Ether Knew About the Mistake In Plaintiff's Bid or She Should Have Known Of the Mistake.</u>**

**1. <u>The Contracting Officer Should Have Been Aware Of the Mistake In Plaintiff's Bid:</u>**

The difficulty with this case, as is in all of the cases concerning mistake in bid, is establishing that the government either knew or should have known that a mistake had been made in the bid and awarded the contract in spite of this fact. As there was no bid verification, proving whether or not the verification was adequate is unnecessary. If it can be established that the contracting officer either knew or should have known that there was a mistake in Plaintiff's bid, the fact that there was no verification requested makes it inadequate per se.

The question now becomes whether or not the contracting officer fulfilled her duty to review the Plaintiff's bid for mistakes. This determination is hampered by the fact that the contracting officer testified at her deposition that she could not specifically remember how she reviewed the Plaintiff's BAFO. (*PPFF 22, 24)* She testified that she was only interested in the total price and was not interested in the prices for the individual Bases. (*PPFF 31, 32, 34)* She did not recall ever reviewing the Schedule for the individual Bases. She testified that she was not alerted by the approximately Two Hundred Thousand Dollar ($200,000) difference between the Plaintiff's Initial Proposal and Plaintiff's BAFO as it was only approximately a Two Percent (2%) difference. (*PPFF 33*) It was her opinion that the bidders were to be creative in their final pricing and that this was merely the result of Plaintiff's creativity. It is also evident that there was no government estimate for comparison as the winning bidder was then to be compared with the government's MEO to determine if the project would be performed by the government or the winning bidder.

While the contracting officer testified that this was an "all or none" award and that she was only interested in the total price, this assertion is not totally true. While the award was to be for all Air Force Bases as a total, each Base Library had to operate on its own. Therefore, the

pricing structure for each Base had to stand on its own and be realistic. It is the contention of the Plaintiff that it was the contracting officer's duty to review the pricing for each base to determine that each Base could operate as planned, especially as the technical panel had scored the offerors on their manning levels and it was imperative for the offerors within the competitive range to maintain these manning levels..

Had the contracting officer done her duty and reviewed each Base's pricing, she would have realized that there was a considerable pricing difference in the Malmstrom bid schedule between the initial price proposal and the final price proposal. On a total basis, the final price for Malmstrom Air Force Base was Two Hundred and Twenty One Thousand, Seven Hundred and Fifty-two Dollars and Forty-three cents ($221,752.43) or Twenty-four and Ninety-two one hundreds percent (24.92%) lower than the initial price. The contracting officer testified that she was only interested in the total price for all Bases together. The total price difference between the Plaintiff's initial total price and its final total was a reduction of Two Hundred and Thirty-two Thousand, Two Hundred and Seven Dollars and three cents ($232,207.03). Of this price reduction, Ninety-five and one-half percent (actually 95.497%) came from the Malmstrom mistake in bid.

The Defendant's counsel asserts that Plaintiff is requiring that the contracting officer conduct a line-by-line analysis of the proposals and a line-by-line comparison between the proposers initial proposal and their best and final. This is not the case. All the contracting officer had to do was to review the total bids for each Air Force Base to reveal the mistake in bid. Once she had reviewed the Plaintiff's Best and Final Bid for Malmstrom AFB, she should have been immediately alerted to a drastic change in Plaintiff's proposal. As she was the only person to

review the cost proposals, it is inconceivable that she would not have recalled Plaintiff's initial pricing for Malmstrom and that the severe reduction in its price indicated either an error or a change in the manning level. It is the Plaintiff's contention that this is what would have been reasonable under the circumstances of this particular case. (*Wender, supra, at 486; Saligman, supra.; Geisler, supra, at 872)*

The contracting officer testified that she thought that the price reduction came from the bidders' creativity. The Defendant's counsel also argues that creativity and the reduction of hours through shifting responsibilities would explain the difference. Had she done a proper analysis, she would have realized that almost all of the price reduction came from one Air Force Base and that this was not a reasonable pricing structure. This would have alerted any reasonable contracting officer to question why so much of the price reduction had come from just one pricing element and caused her to request a verification of the Plaintiff's bid which would have alerted the Plaintiff to its error. This, alone, should provide substantial basis for the Plaintiff's requested reformation for a mistake-in-bid. The Plaintiff's Vice President, Patricia Powell, testified that she only reduced the bid by a "few hours" and reduced the price "a little bit" which would not account for the drastic reduction in this one price element.

However, there is another analysis, other than mere pricing, that further supports Plaintiff's claim. The sole purpose of this procurement was to furnish manning and support services for five separate Air Force Bases. The pricing structure was set by the bid schedule sent to the various bidders. On these forms the Defendant had provided pricing for travel, training and library materials on a not-to-exceed basis. This was a set amount and was to be included in each bidders' pricing schedule. The entire remainder of the pricing was composed of salary and

fringe benefits for the staffing at each base. A quick calculation indicates that approximately Eighty Percent (80%) of the total pricing structure for the entire bid for each Air Force Base was composed of salary and benefits for the employees. Therefore, the manning proposed for each Air Force Base and the pricing therefor was the driving factor behind each offerors' bid.

According to the testimony of the contracting office, and the file documentation, each offeror was to submit a technical proposal and a pricing proposal. The technical proposal was reviewed by a technical panel composed of librarians from around the Air Force. The price proposal was reviewed only by the contracting officer. The offerors also had to present an oral presentation to the technical team on how they chose to provide manning and services to the various libraries. Once the technical panel made their decisions, the field of competitors was narrowed to two offerors, including the Plaintiff. At that time, the staffing levels had been approved by the technical team and had been locked in place. Any alteration in the staffing after this could result in elimination based on a nonresponsive proposal.

The fact that the staffing levels had been set was emphasized by the contracting officer in her letter to the two selected competitors. She specifically warned the two finalists not to alter their manning levels to achieve a lower price. As the staffing levels, or manning levels, of an individual base was the major pricing factor of any bid, the other being the amount set by the Defendant and not subject to change, any drastic change in the pricing structure for any individual base would indicate a change in the staffing level and a violation of the technical panels' approval and the contracting officer's direction.

Although the contracting officer in her deposition stated that the letter was only advisory, the language of the letter and its impact on the Plaintiff is much different. While the word

"advised" is used in the letter, the import of the direction is that the proposers are directed not to alter their "manning levels and employee classifications" "either directly, by inference, or effect." (*Plaintiff' Exhibit #6)* Mrs. Powell, the individual who prepared Plaintiff's proposal, took this to mean that any change in the manning or staffing would result in a nonresponsive proposal. (*Attachment "A" to this Brief*)

As the contracting officer was the only individual to review both the initial proposal and the final pricing, she had a duty to compare the two to insure that the technical panel's determination and her directions were adhered to. Had she reviewed the final pricing for the individual Bases, she could not have helped but detect the very large price differential between the initial price for Malmstrom and the final pricing for that Base's staffing. There would be only two reasons for the drastic change in pricing: (1) a major change in staffing level, which would violate the terms of the technical panel's determinations and could serve to eliminate the offeror; or (2) a mistake in bid. Either of these should have aroused the contracting officer's attention and required a bid verification request. However, nothing was done. In fact, Mrs. Powell states in her Affidavit (*Attachment 'A" to this Brief*) that had she actually eliminated the staffing position, as reflected in the price reduction, the Plaintiff's Best and Final Proposal would have been nonresponsive, as it deviated from the technical panel's determination and the contracting officer's direction in her request for Best and Final Offers.

**2. <u>The Contracting Officer Had Actual Knowledge Of the Drastic</u>**

**<u>Reduction In The Plaintiff's Proposal For Malmstrom Air Force Base</u>:**

It is evident, however, that the contracting officer had actual knowledge of the difference between the Plaintiff's initial pricing for Malmstrom Air Force Base and the incorrect BAFO pricing for the same installation. After receiving the BAFOs from both offerors, the contracting officer prepared an Abstract of Bids. (*Plaintiff's Exhibit #6*) This was a detailed analysis of each offerors bid on a line item basis. It clearly shows that the contracting officer entered the amounts from the Plaintiff's BAFO in the Abstract. In addition, the contracting officer also drafted and sent a letter to the losing bidder informing it of the fact that the bid had been awarded to Plaintiff. (*Plaintiff's Exhibit #7*) This letter also contained a detailed listing of all of the line item prices from Plaintiff's Best and Final Pricing Proposal.

It is now established that the contracting officer was aware prior to the award of the contract of Plaintiff's pricing for the Malmstrom library. The question now becomes whether or not the contracting officer, with knowledge of the pricing, should have realized that there was an error in the pricing and what should have alerted her to the error. As stated above, the contracting officer had a responsibility to ensure that the proposers Best and Final proposal complied with the technical panel's determinations and her direction not to change manning or staffing levels. As she alone was privy to the cost information, she should have realized that there was a problem in the Malmstrom pricing. It did not take a line-by-line review, but only a comparison between the initial and the Best and Final Pricing to reveal either a mistake in bid or a failure to adhere to the staffing levels which would result in a nonresponsive proposal.

In any event, it is the position of the Plaintiff that she did not comply with her

requirement pursuant to FAR §14.407.1, and existing case law, to examine the bids for mistakes and to request a verification of an offerors bid if alerted to a possible mistake in bid. In this instance, the contracting officer should have known that there was a mistake in the bid as she had a duty to examine the bids and the defect would have been easy to spot. As the contracting officer did not comply with her duty, the Plaintiff contends it is entitled to a reformation of the contract and recovery of the amounts spent in staffing the Library Technician position at Malmstrom Air Force Base, together with legal fees and costs.

## IV. <u>The Amount Of Plaintiff's Intended Bid Is Clear From A Reading Of The Bid Documents</u>:

It is also contended that it has complied with the fifth requirement; that the correct bid be evident from a review of the bid or supporting documentation. In the instant case, the proper pricing for the "Library Assistant/Computer Oper III" was the price included in the initial price proposal. (*Plaintiff's Exhibit #1, pp. 30-36)* When the spreadsheet for the initial proposal is compared with the spreadsheet for the Best and Final proposal it is evident that the pricing for the first two months, the only months included in the Best and Final pricing for this position, are the same. (*Compare pages 0030 through 0034 from Plaintiff's Exhibit #1 to pages 001 through 005 of Plaintiff's Exhibit #5*) Therefore, it is evident that the monthly pricing for the remaining time periods would also be the same. While this may not be precise, and was changed due to efficiencies in performance, the law does not require precise computation. (*Bromley, supra; Hall, supra, at 442; Price, supra, at 1191)*

Defendant's counsel makes much of the difference between the Plaintiff's requested recovery in its certified claim and the amount it is requesting before this Court. The response is

simple: The initial requested amount reflected what the Plaintiff would have included in its proposal for that staff position had the mistake not occurred. In the five (5) years since the award of the contract, the Plaintiff staffed that position, however, it tried to mitigate its damages, resulting in the actual amount spent on that position as reflected in Plaintiff's response to Defendant's discovery request. That not only saved the Plaintiff funds, it also reduced the amount of liability on the part of the Defendant, should this Court rule in the Plaintiff's favor. The individual who prepared the certified claim may have been surprised in the change in the amount requested, however, he had not been working with the Plaintiff during the discovery phase of this litigation and was not privy to the accounting data. (*Samuel's Affidavit, Attachment "B" to this Brief*)

**CONCLUSION**

It is the contention of the Plaintiff that a mistake in bid, as that term is defined in the case law, occurred when the Plaintiff's personnel failed to properly enter certain salary data onto a computer spreadsheet which caused the data to be dropped from the Plaintiff's Best and Final Proposal. Considering the context of the error and the circumstances of this particular case, i.e., the error was in one specific, major pricing item and obviously reflected either a mistake in bid or a nonresponsive proposal, the contracting officer should have been alerted to the error. This is especially true as the contracting officer had actual knowledge of the lower pricing for Malmstrom Air Force Base through her creation of the Abstract of Bids and her letter of notification to the losing proposer. The contracting officer's failure to be alerted to the error and her failure to request verification, violated her duty under FAR §14.407.1 to properly examine all bids for errors.

The Plaintiff is not alleging that either this contracting officer, or any other contracting officer, is required to preform a line-by-line, microscopic review of each bid in order to protect bidders from themselves. The Plaintiff is only alleging that in this particular case, with these particular set of fact and circumstances, in was incumbent on the contracting officer to review the gross Best and Final proposals for each Air Force Base involved in the procurement to determine if the proposers had properly maintained the directed staffing levels. Had she performed this relatively simple task, she would have been altered to Plaintiff's error and requested a verification.

Plaintiff, therefore, respectfully that this Court find in favor of the Plaintiff and rule that a mistake in bid occurred and that the contracting officer either knew, or should have known, of the error and requested a verification of the Plaintiff's proposal. Failing this, the contracting officer did not fulfill her duty thereby subjecting the Defendant to liability for the costs expended by the Plaintiff in staffing the position mistakenly left out of Plaintiff's Best and Final proposal.

Submitted, this the 10th day of April, 2006

Respectfully Submitted;
J. HATCHER GRAHAM, P.C.

_____/S/____________
J. Hatcher Graham
Georgia Bar No. 304577

P.O. Box 7626
Warner Robins
Georgia 31095
(478) 953-560