# AFFIDAVIT

I, Charles W. Samuels, am the Senior Contracts Manager at Information International Associates, Inc. (IIa). I certify that I have read the document entitled "DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDMENT ON THE RECORD OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT," and marked at the top of the pages "Case 1:04-cv-01489-SGB Document 25 Filed 03/22/2006 Page [number] of 23" and offer the following based on my personal knowledge:

1. I was employed by IIa in March 2005. Part of my assignment is to support IIa's the resolution of the litigation of Information International Associates, Inc. v. The United States.

2. I prepared the position that if the Government's Contracting Officer had fulfilled her obligation for a thorough review of the price, there would have been cause to question IIa's offer.

3. I dispute the first and second paragraphs of page 4 of the Defendant's cross-motion which try to explain the Contracting Officer's failure to perform an adequate review of IIa's proposal. While I have no personal knowledge of why IIa made the error or why it was not discovered prior to submission of the Best and Final Offer, I offer that information in the record establishes that the Government Contracting should have evaluated Best and Final Offers in a manner that should have indicated (1) that IIa's offer contained an error, and (2) a need to question the offer.

4. Solicitation No. F05603-98-R0002, Provision No. M-3 EVALUATION FACTORS, Item 8,"Price Proposal," Subitem b, "Realism" (quoted below), contains a clear statement of how the Contracting Officer's review should have reviewed IIa's Best and Final Offer.

> b. Realism. Proposed costs will be evaluated to determine if any are unrealistically high or low in relation to the Government independent estimate and the offeror's technical proposal. The price proposal's direct labor categories,



**Attachment B**

> number of personnel, and other direct cost elements should be consistent with the offeror's technical and management approaches as indicators of the offeror's understanding of the PWS. An unrealistically low number of personnel may indicate a failure to understand the requirements of the PWS.

5. The fact that the Contracting Officer did not request or receive detailed pricing information to support the Best and Final Offers will not be disputed; however the quoted paragraph in 4 above clearly obligates the Contracting Officer to check offered prices beyond a gross bottom line total to assure that prices offered <u>for each base</u> were consistent with the technical approach for each base. The record supports that IIa changed the technical approach for each base in its Best and Final Offer from that of its original offer as the result of information, questions and comments from the Government's Technical Panel.

6. Given the information that the Contracting Officer requested in the Best and Final Offers (annual prices by base) the only measure available to the Contracting Officer to test price realism and to assure that price changes were consistent with the final technical approach would have been to compare the original (baseline) prices by base with the Best and Final Offers. If the Contracting Officer had done this, she should have seen that the prices changes for Malmstrom Air Force Base were inconsistent with the magnitude of the changes for other four bases. Such an inconsistency should have been cause to question IIa's Best and Final Offer for Malmstrom Air Force Base.

7. In the last paragraph of Page 4 and in Section III of the Defendant's cross-motion asserts that IIa cannot establish by clear and convincing evidence what it would have bid but for the mistake. I dispute that statement. In fact, IIa's Certified Claim, which is an exhibit to the Government's document, establishes that IIa would have offered $174,882 more if the mistake had not been made.

8. The actual damages to IIa for uncompensated services to the Government as a result of the error in the offer are a different matter than the $174,882 error itself.

9. I prepared the text that the Government quoted in of Section III at the bottom of page 17 of the Government's cross-motion. The amount of $91,008 represents the actual, or "incurred," costs to IIa for providing almost continuous staffing of the position of Library Assistant/Computer Operator III at Malmstrom Air Force Base. Because of the error in IIa's offer, the Government did not compensate IIa for the services that the Government received from this position. With a reasonable profit of 5%, as stated in the quoted text, the amount of uncompensated service is $95,558. A spreadsheet showing accompanied the quoted text. The spreadsheet details of the computation amount of actual damages to IIa. The $95,558 amount was based on each employee's compensation history, the application of the appropriate indirect cost factors for fringe benefits, overhead, and general and administrative expense for each year, and the addition of a reasonable profit of 5%.

10. My understanding is that IIa seeks to be made whole for uncompensated services that it provided to the United States. That being the case, the amount $95,558 for actual cost plus reasonable profit should be appropriate even though the amount of IIa's error is established at $174,882.

11. The document relates in the first paragraph of page 18 that Bruce Bowland, who as IIa's Chief Operating Officer prepared IIa's Certified Claim in May 2004, testified that he was surprised that IIa had revised its claim. Mr. Bowland was not an employee of IIa at the time that I prepared the statement of actual damages. I did not consult with him in the preparation of the actual damages to IIa. His surprise over the revised amount is not disputed, but the reason for it must be understood.

Further Affiant saith not 4 April 2006.

Charles W. Samuels
Senior Contracts Manager
Information International Associates, Inc.

Heather E. Casting

[illegible] 10/23/06