**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INFORMATION INTERNATIONAL ASSOCIATES, INC.,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | **NO. 04-1489C** |
| **V.** | ) | **(Judge Braden)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF FACT**

COMES NOW, the Plaintiff and replies to Defendant's Responses to Plaintiff's Proposed Findings of Fact. In particular, Defendant disputed certain of Plaintiff's Proposed Findings of Fact , to which the Plaintiff has the following comments:

1.

Reference Plaintiff's Proposed Findings of Fact #26 & 27:

These Proposed Findings of Fact reference Mrs. Pat Powell's review of Plaintiff's Best and Final Offer. Defendant's response to PPFF #27 and Dispute of PPFF #27 leaves the impression that Mrs. Powell make drastic changes to Plaintiff's Initial Proposal before submitting Plaintiff's Best and Final. Mrs. Powell's actual testimony makes it clear that she only made minor changes and only changed a "few" hours "a little bit" in some of the prices for a couple of the bases involved. There is no indication that any of these changes were made in the Malmstrom bid, in fact, a review of the spreadsheets of the Initial Proposal for Malmstrom Air Force Base and the spreadsheets of the Best and Final indicate that there were no changes in the subject position between the two bids. Mrs. Powell's exact testimony at to this matter is as

follows:

> "A. The original final and the best and final, we had a director of finance who had taken over, I believe it was Jim Covey who here, but he had – he was fairly new in the original of this. By this time, he had become responsible for the accounting and so forth, and he pretty much finalized this.
>
> My input was to review the original staffing that I had done and to make some initial decisions about whether we could reduce the prices that we had bid in any way.
>
> Q. And did you determine whether you could reduce the prices?
>
> A. I did.
>
> Q. What was your determination?
>
> A. I believe, and I'm going to have to be very honest with you, this is just trying to remember —
>
> Q. Sure.
>
> A. – what I did from here.
>
> There were a couple of the bases that I felt like we could reduce a **little bit** just to lower our cost. This, this best and final was the result of our having been selected as the winner of the contractors who bid on this effort. So this price proposal was to be compared with the government's price. And so in government contracting, you usually do try to reduce your cost if you can at this price in an effort to win the procurement.
>
> Q. You mentioned that you determined that you could reduce the pricing a **little bit** on some of the bases.
>
> A. Yes.
>
> Q. How?
>
> A. Just by readjusting some of the assignments to make a statement of work.
>
> Q. When you say readjusting the assignments, what do you mean?
>
> A. I don't remember exactly what I did on this one, but, for example, giving the director a few more of the responsibilities, taking away a **few hours** from a couple of positions so that we reduced some hours and saved some money.
>
> Q. Would that include combining two positions to be one position?
>
> A. No
>
> Q. Why not?
>
> A. It's giving – it's changing responsibilities just **slightly**, but that's not combining positions.
>
> Q. So there would be the same number of employees –
>
> A. Yes.
>
> Q. – but their hours may be reduced?

A. Right.
Q. Is it correct to say that you had somehow made a determination that the same job could get – could be completed with certain individuals working on few less hours?
A. Yes.
Q. Or could it have also been the case that – let me backtrack and ask this question: Were some of the employees hourly and then others salary?
A. Correct.
Q. So could a reduction also have been made by reducing hours from hourly workers and putting those responsibilities on salary workers?
A. That could be done.
Q. Do you know if that's what was done in this case?
A. I think it was more a matter of thinking that perhaps it would take fewer hours to do a few of the tasks than I had originally thought. You're right, it could be done that way.
Q. But in this case it was –
A. I don't recall that I did it that way in this case.
Q. After you made this determination that you could reduce the salaries on some of the bases a **little bit** –
A. The hours.
Q. The hours, I'm sorry, once you determined that you could reduce some of the hours **a little bit** on some of the bases, what did you do with that information?
A. I gave it to the accounting people tp put into the spreadsheets."

(JE #2, p. 31, L. 3 to p. 34, L. 14) (emphasis added)

2.

Reference Plaintiff's Proposed Finding of Fact #39:

This Proposed Finding of Fact concerns how the mistake in the Plaintiff's bid was discovered by Mary Woods. Plaintiff's counsel quotes one response of Mrs. Woods but fails to quote another of her responses, which reads:

"Q. Okay. You stated that after the contract was awarded you looked at the contract and were preparing to set up the payroll for the proposal.
Was it at that point you noticed there was some kind of a mistake –
A. Yes

Q. – in the bid?
A. Yes
Q. Can you tell me about that?
A. In the yearly totals, I can't recall if it was the first or the second year, the totals that I would be billing, setting up in my sheets for billing didn't seem to represent what I thought they should.

And I called Pat Powell in and asked her, you know, why in the first year is there, you know, one figure, I think it was the first year, and then there's a decrease or something in the next two and then it picked up. I can't recall exactly, but there was something that was not feeling right when I was setting it up.

And she came in, I asked her that question, and she said well, that doesn't look right either. So I started looking through each individual page on the spreadsheet and discovered that at the bottom, I don't know what year it was, but it was within the first two cells in the columns that should have calculated forward, there was blank, a blank cell and no values after that, all zero. And I just knew immediately that something's wrong with this spreadsheet."

(JE #4, P. 14, L. 1 to P. 15, L. 5)

Submitted, this the 10th day of April, 2006

Respectfully Submitted;
J. HATCHER GRAHAM, P.C.

_______________________

J. Hatcher Graham
Georgia Bar No. 304577

P.O. Box 7626
Warner Robins
Georgia 31095
(478) 953-5606