IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION INTERNATIONAL ASSOCIATES, INC., | ) | |
| Plaintiff, | ) | No. 04-1489C |
| v. | ) | Judge Braden |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, respectfully submits the following reply to the opposition to our cross-motion for summary judgment filed by plaintiff, Information International Associates, Inc. ("IIA").

In its opposition, IIA argues that (1) there exists a genuine dispute as to a material fact that precludes summary judgment in this matter; and (2) the contracting officer knew or should have known of the mistake in IIA's bid because of the difference in price for Malmstrom Air Force Base, one of five Air Force bases included in the solicitation.[1] Pl. Opp. 9-10.[2]

[1] IIA also reiterates many of its arguments in its motion for judgment on the administrative record, or in the alternative, for summary judgment in its opposition to our cross-motion. Because we responded to those arguments in our response to IIA's motion, we will not revisit those same arguments in this reply brief.

[2] IIA's Brief In Reply To Defendant's Cross-Motion For Summary Judgment And Opposition To Plaintiff's Motion Tor Summary Judgment Or, In The Alternative, For Summary Judgment, filed on April 10, 2006, will be cited as "Pl. Opp." followed by the specific page reference.

I. Contrary To IIA's Assertions, This Matter Is Appropriate For Summary Judgment Because There Is No Genuine Issue Of Material Fact

IIA contends that the Government's cross-motion for summary judgment should be denied because there is a dispute as to whether the contracting officer was aware or should have been aware of the pricing difference for Malmstrom between IIA's initial and final proposals. Pl. Opp. at 9. According to IIA, this is a "central issue" that "prevents this from being adjudged under the summary judgment rules." Id. Specifically, IIA argues that the contracting officer was aware of the price differential for Malmstrom because she transposed the line items for each of the five Air Force bases from IIA's final proposal to a summary chart and, also, to a letter informing Margon that the contract was awarded to IIA. Id. at 16. Contrary to IIA's assertions, the contracting officer should not be imputed with constructive notice of the price differential for Malmstrom. Moreover, even if the contracting officer knew or should have known of the price differential for Malmstrom, the Government would still be entitled to judgment as a matter of law.

First, the contracting officer testified that she did not compare each line item of IIA's initial proposal with each line item of IIA's final proposal, and IIA now concedes that the contracting officer had no duty to compare the two proposals line-by-line. Id. at 12, 19. That the contracting officer was aware of the bottom line item for Malmstrom in IIA's final proposal does not establish that she was aware of the price difference between IIA's initial and final proposals for Malmstrom, as IIA alleges. Id. at 13. The price difference would only be evident by comparing the line item for Malmstrom in IIA's initial proposal with the same line item in IIA's final proposal, a task that the parties now agree the contracting officer had no duty to perform.

Id. at 12, 19. IIA claims it is "inconceivable" that the contracting officer would not have recalled from memory IIA's initial pricing for Malmstrom when reviewing IIA's final proposal. Id. at 13. The Government disagrees. The final proposals were submitted one month after the contracting officer determined the competitive range based upon the initial proposals, and the initial proposals contained line item pricing for five different Air Force bases, not just Malmstrom. Pl. Mot. Ex. 2, 3.[3]

Second, the issue of whether the contracting officer should be imputed with constructive knowledge of the pricing difference for Malmstrom is a legal question, not a factual question. Thus, to the extent that the issue is the central issue in this case, as alleged by IIA, the issue is appropriate for summary judgment. Id. at 9.

Third, even if the contracting officer were aware of the pricing difference between IIA's initial and final proposals for Malmstrom, this is not sufficient to impute knowledge of IIA's mistake upon the contracting officer. "Price disparity alone does not constitute constructive notice where there are other factors that would negate the inference of error when it would otherwise be reasonable to infer one." Aydin Corp. v. United States, 669 F.2d 681, 687 (Ct. Cl. 1982).

Here, the contracting officer testified that she would have attributed the price difference regarding Malmstrom to changes in the contractor's decision as to how they would man the

[3] Exhibits to IIA's Motion For Summary Judgment Or, In The Alternative, For Summary Judgment, filed on March 1, 2006, will be cited as "Pl. Mot. Ex." followed by the specific exhibit number.

services they were obligated to provide under the contract. Def. Resp. Mot. 9-10.[4] Although, IIA was instructed not to change the manning levels (i.e., the number of employees) in its final proposal, it could change how it would man the services under the contract. Def. Mot. 9-10. Therefore, IIA could have changed the number of hours estimated to perform the contract or transferred responsibilities from hourly employees to salary employees. Id. Indeed, IIA admits that it reduced its estimated hours and price in its final bid. Pl. Opp. 13.

IIA argues that it only reduced its bid by a "few hours" and its price "a little bit," and that this would not explain the approximately 25 percent reduction in the total line item for Malmstrom. However, on its face, IIA's final proposal looked as if it was only reduced by a "few hours" and "a little bit." IIA's total bid in its final proposal was only 2.1 percent lower than its total bid in its initial proposal. Def. Mot. 2. Moreover, notwithstanding the fact that the 25 percent reduction in Malmstrom is only noticeable by comparing IIA's initial proposal with its final proposal line by line, an analysis which IIA now admits the contracting officer had no duty to perform, the reduction in Malmstrom does not indicate either a major change in staffing levels or a mistake in bid, as IIA alleges. Indeed, in this case, the reduction did not indicate a major change in staffing levels, as IIA's mistake reflected the omission of only one employee's salary. It also does not necessarily indicate a mistake in bid; rather, it could indicate the result of a reduction in estimated hours plus the transfer of responsibilities from hourly to salary employees. See Def. Mot. 9-10. If there is another reasonable explanation for the price difference, as there is here, constructive notice of the mistake should not be imputed upon the contracting officer.

[4] Defendant's Cross-Motion For Summary Judgment And Opposition To Plaintiff's Motion For Judgment On The Record Or, In The Alternative, For Summary Judgment, filed on March 22, 2006, will be cited as "Def. Mot." followed by the specific page reference.

Wender Presses, Inc. v. United States, 343 F.2d 961, 963 (Ct. Cl. 1965) ("[T]he test here, as in so many areas, must be that of reasonableness . . . ."); see also Ruggiero v. United States, 420 F.2d 709, 713 (Ct. Cl. 1970) (noting that the purpose behind reforming a Government contract for a mistake in bid is to prevent overreaching by the Government). Accordingly, the Government's motion for summary judgment should be granted and plaintiff's motion denied.

II. The Sworn Testimony Of IIA's Senior Contracts Manager, Charles Samuels, Directly Conflicts With Plaintiff's Arguments

IIA acknowledges that the contracting officer had no duty to compare IIA's initial and final proposals line by line. Pl. Opp. 12, 19. IIA then, however, directly contradicts itself by submitting an affidavit by IIA's senior contracts manager, Charles Samuels, stating that the contracting officer should have compared the two proposals line by line, and if she had done so, she would have noticed IIA's mistake. Pl. Opp. Att. B.

Specifically, Mr. Samuels asserts that provision M-3, Item 8, Subpart b of the solicitation, titled "Realism" determines how the contracting officer should have reviewed IIA's final proposal. Pl. Opp. Att. B at 1. That provision of the solicitation states:

> Realism. Proposed costs will be evaluated to determine if any are unrealistically high or low in relation to the Government independent estimate and the offeror's technical proposal. The price proposal's direct labor categories, number of personnel, and other direct cost elements should be consistent with the offeror's technical and management approaches as indicators of the offeror's understanding of the PWS. An unrealistically low number of personnel may indicate a failure to understand the requirements of the PWS.

Id. at 1-2.

According to Mr. Samuels, if the contracting officer had followed this provision of the solicitation, she would have compared the line items of IIA's initial proposal with its final proposal and noticed IIA's mistake in bid. Id. at 2. Mr. Samuels acknowledges that the contracting officer did not request or receive detailed pricing information to support IIA's final proposal, and states,

> Given the information that the Contracting Officer requested in the Best and Final Offers (annual prices by base) the only measure available to the Contracting Officer to test price realism and to assure that price changes were consistent with the final technical approach would have been to compare the original (baseline) prices by base with the Best and Final Offers. If the Contracting Officer had done this, she should have seen that the prices [sic] changes for Malmstrom Air Force Base were inconsistent with the magnitude of the changes for [the] other four bases.

Id.

First, Mr. Samuels' contention that provision M-3, Item 8, Subpart b of the solicitation determines how the contracting officer should have reviewed IIA's final proposal has not been argued by IIA in any of its briefing submitted in this case. Indeed, IIA does not argue, or even cite to, that provision of the solicitation in its opposition brief, the pleading to which Mr. Samuels' affidavit was attached.

Second, the best and final proposals of IIA and Margon, the other bidder in the competitive range, were simply that: the best and final prices that IIA and Margon could offer without modifying what was presented in their oral proposals. Pl. Mot. Ex. 3. The contracting officer specifically informed IIA that its initial proposal was already evaluated to be technically acceptable, and, therefore, manning levels and employee classification should not be modified to

reduce its price in its best and final proposal. Id. Mr. Samuels suggestion that provision M-3, Item 8, Subpart b somehow obligated the agency to conduct the same, full technical review of the best and final proposals as that which was conducted of the initial proposals is incredible and completely unsupported. There are simply no factors which reasonably should have raised a presumption of error in the mind of the contracting officer, and judgment should be entered for the Government as a matter of law.

CONCLUSION

For these reasons, we respectfully request that our motion for summary judgment be granted, and that plaintiffs' motion for judgment on the record, or in the alternative, for summary judgment be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Marla T. Conneely
MARLA T. CONNEELY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
tel: (202) 307-1011
fax: (202) 307-0972

Attorneys for Defendant

OF COUNSEL:

JEFFREY BRANSTETTER, Major, USAF
Commercial Litigation Division
Air Force Legal Services Agency
1501 Wilson Blvd, Suite 604
Arlington, VA 22209

April 20, 2006