## CHRONOLOGY

**July 31, 1998**

Air Force Space Command (AFSPC) releases RFP FO5603-98-R-0002 for the management and operation of base libraries at F.E. Warren, Malmstrom, Patrick, Peterson and Vandenberg Air Force Bases under OMB A-76 procedures.

**September 18, 1998**

IIa submits original proposal.

Price proposal (Schedule B) is supported by current, accurate and complete detail showing all hours and costs including the category of Library Assistant/Computer Operator III for all bases except Peterson, which was priced with a Library Assistant/Computer Operator I.

**October 9, 1998**

IIa receives written notification that they are in the competitive range and is provided information for clarification.

IIa is notified of time and date for discussions.

**October 20, 1998**

AFSPC conducts discussions with IIa.

Discussions address several technical issues, but neither the level-of-effort nor any other pricing issues are addressed.

**November 2, 1998**

IIa receives the request for a Best and Final Offer (BAFO).

The request does not address any responses to interrogatories, clarifications, or other issues related to the price proposal.

**November 6, 1998**

IIa submits its Best and Final Offer (BAFO).

Only Schedule B is submitted showing Contract Line Item (CLIN) Prices.

IIa's BAFO consisted primarily of updating labor category wage rates based on updated DOL Wage Determination data and minor changes in indirect rates for the purpose of providing *current*, *accurate*, and *complete* pricing data.

**November 30, 1998**

AFSPC notifies IIa in writing that they are the conditional awardee.

**January 15, 1999**

IIa is awarded contract no. FO5603-99-C0001

**April 1, 1999**

IIa commences performance on the contract.

**SPRING, 1999**

IIa is first made aware of the mistake when information is taken from the BAFO spreadsheets for budget input into the accounting system.

**Spring of 1999 to Fall of 2000**

IIa makes several (no less than 3) verbal appeals to the Contracting Specialist/Officer for contract price relief and is verbally denied.

**November 28, 2000**

IIa's Sr. Vice President, Ms. Pat Powell sends an e-mail to AFSPC Contracting Specialist, Margaret Wages, discussing the mistake made in pricing and requesting assistance in finding a solution.

**In December 2000**

AFSPC Contracting Specialist verbally responds to the November 28, 2000 e-mail and denies request for assistance on the basis that the Government cannot be responsible for contractor mistakes.

ANALYSIS

IIa can demonstrate, using the proposal spreadsheets for the original proposal and BAFO (Exhibits 2 and 4, respectively) that the cost for the Library Assistant/Computer Operator III at Malmstrom AFB was always intended to be included in Schedule B. It is clearly evident from the spreadsheets submitted as part of the original offer that IIa included the costs for the *Library Assistant/Computer Operator III* at Malmstrom AFB in the price proposal. Subsequent discussions and clarifications in support of the preparation of the BAFO *did not address the reduced use or elimination of the Library Assistant/Computer Operator III in terms of either the level of expertise or the level-of-effort proposed.* IIa's BAFO technical proposal also did not propose any change or absorption in either the level-of-effort or the level of expertise for the support and maintenance of ADP at Malmstrom AFB. IIa's detailed spreadsheets from which the BAFO price was derived showed no costs associated with providing the *Library Assistant/Computer Operator III* at Malmstrom AFB after the initial two month transition period. IIa's mistake was inadvertent and unilateral.

In particular, the mistake was the inadvertent omission of a wage value for the labor category position of *Library Assistant/Computer Operator III* for all but the first two months (i.e. 10 months un-priced) of the basic contract and all of the option periods (i.e. 48 months un-priced) for a total of 58 months. This inadvertent data omission prevented the pre-designed spreadsheet algorithm that was first created for the original proposal and later used for the BAFO, from auto-computing final extended prices for this one labor category for all but the first two months. This event most likely occurred when wage data was being entered in order to update costs based on the latest wage determination revision, for the purpose of making the proposed costs current, accurate, and complete.

Although the Air Force did not have the detailed spreadsheets to support the BAFO price proposal, a cursory review of the proposed prices for each library should have alerted the Air Force to the likelihood that the price proposed for the Malmstrom AFB library was inconsistent with the prices proposed for the remaining four base libraries and that there was no technical justification for the difference in cost.

**SUMMARY COMPARISON OF ORIGINAL PROPOSAL AND BAFO**
Total Contract

| BASE | ORIGINAL PROPOSAL | BAFO | DIFFERENCE | % CHANGE |
|---|---|---|---|---|
| Warren AFB | $ 840,947 | $ 833,892 | $ (7,055) | -0.84% |
| **Malmstrom AFB** | **$ 890,032** | **$ 668,280** | **$ (221,752)** | **-24.92%** |
| Patrick AFB | $ 994,556 | $ 973,483 | $ (21,073) | -2.12% |
| Petersen AFB | $ 1,022,050 | $ 1,014,131 | $ (7,919) | -0.77% |
| Vandenberg AFB | $ 1,397,981 | $ 1,423,573 | $ 25,592 | 1.83% |

In addition to the inconsistency in the pricing among the libraries, the magnitude of the price reduction for the Malmstrom AFB library alone should have caused the Air Force to question the BAFO price on the basis of a *Cardinal* change. Barring any significant change in the level-of-effort proposed and the fact that no explanation or offer to absorb any costs was purported, any BAFO

price reduction of over 10%, let alone **25%**, should have been highly suspect and considered *Cardinal* in magnitude.

Additionally, the combination of the extraordinary price reduction for just one library when compared to the other four, and the fact that the same four libraries all showed modest *increases* in the first year basic contract prices, together presents additional clear and convincing evidence of *notice* to the Contracting Officer of the probability of a mistake.

| Basic Contract Period of Performance ( Year 1) | | | | | | | |
|---|---|---|---|---|---|---|---|
| BASE | | ORIGINAL PROPOSAL | | BAFO | | DIFFERENCE | % CHANGE |
| Warren AFB | $ | 163,124 | $ | 166,224 | $ | 3,100 | 1.90% |
| ***Malmstrom AFB*** | ***$*** | ***172,774*** | ***$*** | ***136,932*** | ***$*** | ***(35,842)*** | ***-20.75%*** |
| Patrick AFB | $ | 194,481 | $ | 194,675 | $ | 194 | 0.10% |
| Petersen AFB | $ | 199,199 | $ | 202,219 | $ | 3,020 | 1.52% |
| Vandenberg AFB | $ | 272,618 | $ | 284,969 | $ | 12,351 | 4.53% |

This evidence then begs the questions:

*With this overwhelming evidence of notice and being Cardinal in magnitude, was proper due diligence exercised by the procuring agency during the procurement price evaluation process?*

*Had proper due diligence been exercised, would such clear and convincing evidence of a probable mistake have initiated a request for clarification by the Air Force prior to award?*

## RESOLUTION OF ISSUE IN CONTROVERSY

IIa requests that the Contacting Officer consider entering into meaningful discussions for the purpose of reforming the contract to eliminate and correct the Government's *undue enrichment* and consider the following information as a basis for these discussions.

**Contract F05603-99-C0001 Reformation Schedule**

| CLIN Number | Description | Qty | Unit | Contract Unit Price (as awarded) | Current Contract Total | "Corrected" BAFO Unit Price | "Corrected" BAFO Total | Total Difference |
|---|---|---|---|---|---|---|---|---|
| 0004 | **Nonpersonal Library Services at Malmstrom AFB, FFP** | | | | | | | |
| 0004AA | Basic Contract Period of Perf 1 April 1999 - 31 March 2000 ACRN: AB | 12 | MO | $ 8,361 | $ 100,332 | $ 10,665 | $ 127,980 | $ 27,648 |
| 0004AB | Option Year 1 1 April 2000 - 31 Mar 2001 ACRN: BB | 12 | MO | $ 7,894 | $ 94,728 | $ 10,643 | $ 127,716 | $ 32,988 |
| 0004AC | Option Year 2 1 April 2001 - 31 March 2002 ACRN: CB | 12 | MO | $ 7,854 | $ 94,248 | $ 10,551 | $ 126,612 | $ 32,364 |
| 0004AD | Option Year 3 1 April 2002 - 31 March 2003 ACRN:DB | 12 | MO | $ 8,078 | $ 96,936 | $ 10,814 | $ 129,768 | $ 32,832 |
| 0004AE | Option Year 4 1 April 2003 - 31 March 2004 ACRN: AB | 12 | MO | $ 8,253 | $ 99,036 | $ 10,978 | $ 131,736 | $ 32,700 |
| | **Contract Reformation Adjustment** | | | | | | | **$ 158,532** |
| | Current Contract Price (through Mod. P00041) | | | | $ 546,223 | | | |
| | **Total Reformation** | | | | **$ 704,755** | | | |
| | **Total Current Contract Value (All 5 Libraries )** | | | | | **$ 5,378,306** | | |
| | **Contract Reformation Adj (As % of Total Contract Value)** | | | | | **2.95%** | | |

According to the Air Force's own A-76 Cost Comparison Form (CCF) (Exhibit 5), the margin between IIa's BAFO and the Air Force's estimate (next lowest offer) was $317,848. Even with the requested upward adjustment of $ 158,532 (shown above), IIa would still be the low bid, meeting the requirement found at FAR 14.407-4 (b) (2) (ii) and only constituting a 2.95% adjustment to the total current contract value.

Information International Associates, Inc. is fully prepared to enter into meaningful discussions at the Air Force's earliest convenience, but within a reasonable time frame (i.e. 30 days from date of receipt) to resolve this *Issue in Controversy,* to our mutual benefit.