**TAB 2**

# DEPARTMENT OF THE AIR FORCE

21ST SPACE WING (AFSPACECOM)
21st CONTRACTING SQUADRON

September 4, 2003

MEMORANDUM FOR Information International Associates, Inc.
1009 Commerce Park Dr., Suite 150
PO Box 4219
Oak Ridge, Tennessee 378361-4219

FROM: Mr Robin Cramer
21 CONS/LGCB
700 Suffolk Street/Bldg 982
Peterson AFB, CO 80914-4420

SUBJECT: Contract F05603-99-C-0001
General Library Management Services-Library Multi-Wing Effort
Issue in Controversy

1. Thank you for your letter of April 30, 2003, subject as above. I appreciate your commitment to resolution of this issue by mutual agreement at the contracting officer's level. My commitment to you is to work with you to resolve this issue prior to submission of a claim.

2. The standard for review for claimed mistakes in bid are defined in FAR 15.508, FAR 14.407-4 and in Boards of Contract Appeals decisions. A contractor seeking post-award reformation of its contract on grounds of unilateral mistake has the burden of proving by clear and convincing evidence the following five elements; (1) a mistake in fact occurred prior to contract award; (2) the mistake was clear-cut, clerical or mathematical error, or a misreading of the specifications and not a judgmental error; (3) prior to award the Government knew, or should have known, that a mistake had been made and, therefore, should have requested bid verification; (4) the Government did not request bid verification or its request for bid verification was inadequate; and (5) proof of the intended bid is established.

3. The facts, as available to me at time of award, are the following. Information International Associates, Inc. reduced its bid in the final proposal revision by 4.5%. Other offeror(s) reduced their bid(s) by a comparable percentage. Other offeror(s) total prices were comparable to the Information International Associates, Inc. price. Therefore, the Government did not know and had no reason to suspect that a mistaken bid have been made. In fact, had Information International Associates, Inc. not reduced its bid at final proposal revision, it is possible the initial award decision would have been different.

4. Thank you again for your commitment to resolve this issue at the contracting officer level. If you wish to discuss this matter further, please feel free to contact me at (719) 556-7395 or email robin.cramer@peterson.af.mil.

ROBIN E. CRAMER
Contracting Officer
Multi-wing Library Contract

ITEM 5 COPY

**INFORMATION INTERNATIONAL ASSOCIATES, INC.**
1009 COMMERCE PARK DR., SUITE 150 ♦ P.O. BOX 4219 ♦ OAK RIDGE, TENNESSEE ♦ 37831-4219
TELEPHONE: (865) 481-0388 ♦ FACSIMILE: (865) 481-0390 ♦ E-MAIL: INQUIRY@INFOINTL.COM

*Bonnie C. Carroll, President*

November 3, 2003 via Certified Mail, Return Receipt Requested

Mr. Robin Cramer
Contracting Officer
21 CONS/LGCB
700 Suffolk Street/Bldg 982
Petersen AFB, CO 80914-4420

Subject: Contract No. F05603-99-C0001
General Library Management Services – Library Multi-Wing Effort
Mistake in Bid – Elements of Proof

Reference: 1) IIa letter dated April 30, 2003
2) AFSPC memorandum dated September 4, 2003

Dear Mr. Cramer:

Thank you for your reply of September 4th. We appreciate your acceptance and commitment of our previous offer to work together to resolve this matter at the Contracting Officer level. Your reply clearly demonstrates your willingness to continue negotiations based on the intent of Federal procurement policy (FAR 33.204, *Policy)*. Because federal procurement policy under the Contract Disputes Act of 1978 (CDA) at U.S.C. § 601 et seq. indicates that time is of the essence, we are anxious to move forward in this matter although we remain committed to exhausting all venues prior to considering the filing of a certified claim.

We acknowledge the regulatory guidance cited in your memorandum and appreciate your concurrence with the standard of review and statutory authority we presented on April 30th. We find your itemization of the five (5) ***elements of proof,*** established in case law, support the detailed information provided in our initial presentation of the facts and circumstances as stated in reference 1.

This letter of acknowledgement and reply presents a unique opportunity to: 1) reaffirm the facts and circumstances in the context and format of each of the five (5) ***elements of proof*** delineated in your memorandum presented below, and 2) demonstrate IIa's continued commitment to this process.

1. ***A mistake in fact occurred prior to contract award*** – IIa demonstrated by clear and convincing evidence in our April 30th transmittal (ref 1) that ***a mistake in fact occurred prior to award***. The mistake occurred in the preparation of the BAFO and was discussed in the 1st paragraph of the *Analysis* section of the April 30th transmittal, supported by Exhibits 2 and 4.

2. ***The mistake was clear-cut, clerical or mathematical error or a misreading of the specifications and not a judgmental error*** – IIa contends it demonstrated by clear and convincing evidence in our April 30th transmittal that an ***inadvertent clerical mistake*** caused a ***mathematical error***. There was neither a misreading of the specifications or a judgmental error. An inadvertent data entry omission in one input cell of a spreadsheet, which was first created and used for the original proposal and later used for the BAFO, prevented the pre-designed spreadsheet formula from auto-computing final extended prices for a single labor category for all but the first two months of the period of performance. For the purpose of making the proposed costs current, accurate, and complete, this event occurred when data was being changed in order to update wage rates based on the latest Wage Determination Revision. The mistake was discussed in the 2nd paragraph of the *Analysis* section of the April 30th transmittal, supported by *Exhibits 2* and *4*, which were provided at that time.

3. ***Prior to award the Government knew, or should have known, that a mistake had been made and, therefore, should have requested bid verification*** – Cost information in the BAFO was provided as revised ***Schedule Bs***. Provided were ***separate Schedule Bs*** for ***each*** base, and for each base there were ***separately itemized CLINs for each year***. IIa contends that this form of data submission was sufficient in detail to make it ***known to the Government*** that there was an apparent ***mistake***. It was clearly evident that the price proposed on ***Schedule B*** for the Malmstrom AFB library was ***materially inconsistent*** with the prices proposed on the ***Schedule B's*** for the remaining four base libraries as well as being ***materially different*** for just Malmstrom between the original and BAFO proposals. ***Sufficient information and granularity of detail was present throughout the procurement process that the Government should have known a mistake had been made.*** The fact that there was no technical justification for the difference in cost (see response to ***element of proof*** item no. 5 below) was further indication that a mistake was apparent. This was previously discussed in the *Analysis* section of our April 30th transmittal which included a table of comparison of ***Schedule Bs*** by base for the total contract, supported by *Exhibits* 1 and 3, which were also provided at that time.

4. ***The Government did not request bid verification or its request for bid verification was inadequate*** – IIa has no evidence that the AFSPC requested bid verification. We would appreciate being provided a copy of anything the AFSPC has on file in this regard.

5. ***Proof of the intended bid is established*** – ***Proof of intended bid was established*** clearly from the spreadsheets and technical proposal submitted as part of the original offer. IIa included the position and cost for the *Library Assistant/Computer Operator III* at Malmstrom AFB. Subsequent discussions and clarifications with the AFSPC in support of the preparation of the price BAFO ***did not address a reduced use or elimination of the Library Assistant/Computer Operator III position in terms of either the level of expertise or the level-of-effort originally proposed. IIa's technical BAFO also did not propose any change in, or absorption of, either the level-of-effort or the level of expertise for the labor category position at Malmstrom AFB.*** Therefore, ***the intended bid remained unchanged between the original proposal and BAFO***. This was discussed in the *Analysis* section of IIa's April 30th correspondence.

Paragraph 3 in your memorandum contends that the AFSPC did not know and had no reason to suspect that a mistake in bid had been made. In this A-76 procurement action, the AFSPC was purchasing similar services at five (5) different bases where each of the five (5) bases had unique

and specific staffing and performance metrics. While IIa did not revise its technical, management, or staffing approach in its BAFO, we have no knowledge of what changes other offerors made at BAFO to support their price changes and, therefore, do not consider this decisional approach supportive of the AFSPC's contention. The contention that the AFSPC did not know a mistake had been made appears to be based solely on a gross level comparison of the offerors' comparable percentage reduction comparing only total price without due consideration to all aspects of the *acquisition plan* and process.

FAR 7.102 requires that the Government perform *acquisition planning* for all acquisitions. FAR 7.105(b) provides guidance on the elements of the *acquisition plan* that includes defining how the Government will *evaluate all of the technical, business, management, price and other cost, and other significant considerations that will control the acquisition process*. Therefore, it is incumbent upon the Government to *examine all of the details, including cost/pricing data* submitted by offerors *at the same level of detail, during all phases of the procurement process, and not just upon initial offers, as the agency prescribes in the RFP/RFQ*. To compare only price at the total contract level in the later stages of the procurement action without due consideration of all of the unique and varied requirements of each of the five (5) different bases, does not appear to demonstrate or support the *acquisition planning* requirements. In particular, cost/price analysis and testing for any *imbalance* between cost types and/or between the various Air Force bases among the various offerors cannot be evaluated by only comparing the percentage change in total price. As was provided in our letter of April 30th and in response to the *elements of proof* items 2 and 3 above, we believe clear and sufficient information was provided and available for the AFSC *to have known*, and therefore conclude, that a mistake in bid occurred.

We have stated previously (ref. *elements of proof* item no. 4) that IIa has no evidence to support that a bid verification was requested. Assuming that no bid verification was requested, then this mistake in bid was left undiscovered until after award. Is it, therefore, reasonable to assume that, had the due diligence guidelines provided at FAR 7.105(b) been followed, should a request for bid verification have been made?

To suggest (par. 3 of AFSC memorandum) that, "*In fact, had Information International Associates, Inc. not reduced its bid at final proposal revision, it is possible the initial award decision would have been different*", is speculative and bears no relevance to a discovery of a bid mistake after award. Irrespective of the bid mistake, IIa did, in fact, reduce its price at BAFO. Furthermore, as presented in our April 30th correspondence, even with the requested adjustment in contract price, IIa's bid would remain below the AFSPC's A-76 Cost Comparison Form (CCF) (i.e. next lowest offer) and satisfies the criteria at FAR 14.407-4(b)(2(ii) for contract reformation. For comparison purposes, the total requested equitable adjustment equates to approximately 0.59% per year of the total contract price.

IIa has been, and continues to be, an award winning, quality, dedicated, contractor to AFSPC and are very appreciative of the opportunity to be of service. We have not reduced either the service or staffing to the AFSPC even though we have absorbed a significant loss on the Malmstrom Base support. As a small, woman-owned business, this matter is of paramount importance and we believe that an equitable adjustment is correct and fair and supported in case law.

Therefore, we respectfully request a written response within thirty (30) days from the date of receipt of this letter to prevent our having to make a decision to elevate this matter to a *dispute*

due to the time constraints imposed by an unreasonable delay or non response (*Falcon Research & Dev. Co., ASBCA 27002, 82-2 BCA ¶ 16,049).*

Information International Associates, Inc., in our continued emphasis towards good faith and fair dealing, is prepared to meet with you at the earliest possible date, place, and time of your choosing, to reach a mutually acceptable resolution if that is the AFSPC's preference.

Sincerely,

Bruce P. Bowland
Chief Operating Officer

Cc: Ms. Pat Powell
Ms. Yasmin Brown

ITEM 6

March 16, 2004

Via Overnight Express Mail

Ms. Yasmin Brown
Contracting Officer
HQ AFSC/CONF
1520 East Willamette Ave.
Colorado Springs, CO 80909-4554

Subject: Contract No. F05603-99-C0001
General Library Management Services – Library Multi-Wing Effort
***Mistake in Bid – Unreasonable Delay***

Reference: IIa letter dated November 3, 2004

Dear Ms. Brown:

In our continuing good faith effort to resolve this matter of a *mistake in bid* at the Contracting Officer level, we provided a response to your Mr. Cramer's (PCO) memorandum of September 4, 2003 by means of the above referenced letter. Following the November 3rd letter, I made two (2) subsequent attempts to communicate with Mr. Cramer via telephone on December 31, 2003 and January 5, 2004. These calls preceded several telephone requests to you by our Sr. Vice President, Pat Powell. As of this writing, no reply has been provided by the AFSPC regarding our November 3rd submission.

It has now been ten (10) months from the date (i.e. April 30, 2003) our request for equitable relief was initially submitted. It has been four (4) months since our submission of the above referenced letter, with no reply by the AFSPC. Therefore, it is IIa's contention that, at this juncture, we have substantively met the criterion established in the following legal doctrines and in case law, to consider this matter *in dispute* and to its conversion into a formal *claim*:

- *CONTINUING NEGOTIATIONS AND DISAGREEMENT – A Contracting Officer's* ***unreasonable delay*** *[emphasis added] in responding to a contractor's settlement proposal may also evidence sufficient disagreement. (Olympic Indus., Inc., NASABCA 66-0292, 92-2 BCA ¶ 24,901)*

- *NOTICE AND EVIDENCE OF DISAGREEMENT – A submission will not be a claim unless the Contracting Officer was previously on notice of the matter and either indicated disagreement or was* ***unreasonably delayed*** *[emphasis*