# In the United States Court of Federal Claims

No. 04-1489C
Filed October 31, 2006
**TO BE PUBLISHED**[1]

| | | |
|---|---|---|
| INFORMATION INTERNATIONAL ASSOCIATES, INC., Plaintiff, | * | Clerical Error; Contract Disputes Act, 41 U.S.C. §§ 601, *et seq.*; Deemed Denial of Certified Claim; Equitable Adjustment; Motion for Summary Judgment, RCFC 56; Reformation; RESTATEMENT (SECOND) OF CONTRACTS § 153; Unilateral Mistake; 41 U.S.C. § 611; 48 C.F.R. §§ 2.101, 14.407, 14.407-4(b), (c), 15.508, 52.233-1(c). |
| v. | * | |
| THE UNITED STATES, Defendant. | * | |

**James Hatcher Graham**, McManus & Graham, LLP, Warner Robins, Georgia, counsel for Plaintiff.

**Marla T. Conneely**, United States Department of Justice, Washington, D.C., counsel for Defendant.

**Jeffrey Branstetter**, Air Force Legal Services Agency, Commercial Litigation Division, Arlington, Virginia, Of Counsel.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN, *Judge***

The common law doctrine of "unilateral mistake" recognizes the equitable authority of a court to afford relief where there was a mistake, "as to a basic assumption" on which a contract was made, that has a "material effect on the agreed exchange of performances" adverse to the mistaken party and "enforcement of the contract would be unconscionable" or "the other party had reason to know of the mistake." RESTATEMENT (SECOND) OF CONTRACTS § 153 (1981); *see also Johnson Mgmt. Group CFC, Inc.* v. *Martinez*, 308 F.3d 1245, 1260 (Fed. Cir. 2002) (holding that " the result

[1]On October 24, 2006, a pre-publication draft of the Memorandum Opinion and Final Order was provided under seal to the parties. The parties were instructed to propose any redactions. On October 31, 2006, this Memorandum Opinion and Final Order was published with redactions, indicated by the designation "[deleted]." The non-redacted version was also filed on October 31, 2006 under seal with the Clerk of the United States Court of Federal Claims.

of a unilateral mistake as to a basic assumption becomes voidable if the mistaken party does not bear the risk of the mistake; and . . . the mistake makes enforcement of the contract unconscionable;" or the other party caused or had reason to know of the mistake) (citations omitted).

In the context of government contracts, the United States Court of Appeals for the Federal Circuit has held that a contract may be reformed where the relevant contracting officer had actual or constructive knowledge that the bid was based on a clear, clerical or mathematical error or a misreading of the specifications. *See United States* v. *Hamilton Enterprises*, 711 F.2d 1038, 1046 (Fed. Cir. 1983) (quoting *Aydin Corp.* v. *United States*, 669 F.2d 681, 685 (Ct. Cl. 1982)) (holding that trial court may reform a contract where plaintiff establishes a unilateral mistake if, "the contractor establishes that the error resulted from a 'clear cut clerical or arithmetical error, or a misreading of the specifications.'"); *see also Giesler* v. *United States*, 232 F.3d 864, 869 (Fed. Cir. 2000) ("Generally, a contractor may obtain reformation or rescission of the contract only if the contractor establishes that its bid error resulted from a 'clear cut clerical or arithmetical error, or a misreading of the specifications.'") (citations omitted).

In this case, Plaintiff has established the elements of unilateral mistake and therefore, the court enters judgment in favor of Plaintiff and orders reformation of the Contract to reflect the correct amount of Plaintiff's bid.

To facilitate review of this Memorandum Opinion and Final Order, the following outline is provided:

**I. RELEVANT FACTS.**

**A. Request For Proposal No. F05603-98-R0002 And Contract Award To Plaintiff.**

**B. Plaintiff Identified An Error In The Final Price Proposal.**

**C. Plaintiff Filed A Request For An Equitable Adjustment On April 30, 2003.**

**D. Plaintiff Filed A Certified Claim On June 1, 2004.**

**II. PROCEDURAL BACKGROUND.**

**III. DISCUSSION.**

**A. Jurisdiction.**

**1. The Requirements Of The Contract Disputes Act.**

**2. The Court Does Not Have Jurisdiction To Adjudicate The Contracting Officer's Denial Of Plaintiff's April 30, 2003 Request For Equitable Adjustment.**

3. The Court Does Not Have Jurisdiction To Adjudicate The Government's Affirmative Defenses Of Contributory Negligence and Assumption Of Risk.

4. The Court Has Jurisdiction To Adjudicate Plaintiff's Appeal Of The Contracting Officer's Deemed Denial Of Plaintiff's June 1, 2004 Certified Claim.

B. Standing.

C. Standard For Decision On Summary Judgment - - RCFC 56.

D. Applicable Law Regarding A Unilateral Mistake Discovered After The Award Of A Contract.

E. The Court's Resolution Of The Parties' Cross-Motions For Summary Judgment.

1. The Parties Cross-Motions For Summary Judgment.

2. Plaintiff Established The Elements Of A Unilateral Mistake As A Matter of Law.

a. Plaintiff's Mistake Occurred Prior To Award Of The Contract.

b. Plaintiff's Mistake Was Clerical In Nature.

c. The Government Should Have Known Of The Mistake.

d. The Government Did Not Request Verification.

e. Plaintiff Has Established By Clear And Convincing Evidence The Correct Amount Of The Bid.

3. Plaintiff Is Entitled To Reformation Of The Contract.

4. Plaintiff Is Entitled To Interest On The Amount Due.

IV. CONCLUSION.

* * *

## I. RELEVANT FACTS.[2]

### A. Request For Proposal No. F05603-98-R0002 And Contract Award To Plaintiff.

On July 31, 1998, the United States Air Force ("the Government") issued Request for Proposal No. F05603-98-R0002 ("the Solicitation") for "labor and supplies to man and manage" libraries, located on five Air Force Bases ("AFB"): Warren AFB; Malmstrom AFB; Vandenburg AFB; Patrick AFB; and Peterson AFB. *See* DX 10. Although the Solicitation specified that only one contract would be awarded for all five AFBs, offerors also were requested to provide a price for each AFB separately for each of the five contract years, *i.e.*, the base year and four subsequent option years. *See* JX 1 at 17-19; *see also* PX 1 at 8-19. Seven offerors, including Information International Associates ("Plaintiff"), responded to the Solicitation with an Initial Price Proposal. *See* PX 2 at1-3. Approximately 80% of each price proposal was for labor costs. *See* PX 1 at 8-19.

On October 8, 1998, the relevant Contracting Officer ("CO") determined that Margon, Inc. ("Margon") and Plaintiff submitted technically acceptable offers. *See* PX 2 at 3; *see also* JX 1 at 21. Margon's offer for [deleted] and Plaintiff's offer for $5,145,566.00 were selected as being in the competitive range. *Id*. On November 2, 1998, the CO requested that both firms submit Final Price Proposals:

> [O]fferors are advised not to modify what was presented in their oral proposals in their final price proposal either directly, by inference, or effect. Example: manning levels and employee classifications should not be modified in order to reduce price at time of final proposal.

PX 3.

---

[2] The facts recited herein were derived from: the September 24, 2004 Complaint ("Compl."); December 23, 2004 Answer ("Ans."); Plaintiff's March 1, 2006 Motion for Judgment on the Record or, in the Alternative, Plaintiff's Motion for Summary Judgment and Brief in Support ("Pl. S.J.") together with Plaintiff's Proposed Findings of Fact ("Pl. PFF") attached thereto; the Government's March 22, 2006 Cross-Motion for Summary Judgment and Opposition or, In The Alternative, For Summary Judgment ("Gov't Cross-Mot.") and exhibits thereto ("DX 1-63"); the Government's March 22, 2006 Proposed Findings of Fact ("Gov't PFF"); the Government's March 22, 2006 Response to Plaintiff's Proposed Findings of Fact ("Gov't Resp. to Pl. PFF"); Plaintiff's April 10, 2006 Responses to the Government's Proposed Findings ("Pl. Resp. to Gov't PFF"); Plaintiff's April 10, 2006 Reply to the Government's Cross-Motion ("Pl. Reply"); the Government's April 21, 2006 Reply to Plaintiff's Opposition to the Government's Reply to Plaintiff's Response to the Government's Proposed Findings of Fact ("Gov't Reply to Pl. Resp. to Gov't PFF").

In addition, on March 14, 2006, Plaintiff filed seven exhibits, by leave of the court. *See* PX 1-7. On June 13, 2006, the parties also filed four Joint Exhibits. *See* JX 1-4. In addition, on July 25, 2006, the parties filed a Joint Response ("Joint Resp.") to the court's June 26, 2006 request for additional information.

Although the number of staff was to remain unchanged, offerors were allowed to decrease their final bid price by transferring responsibilities from hourly to salaried staff to reduce the hours needed to provide the required services. *See* JX 1 at 29; JX 2 at 23, 32. The CO also required that each offeror's Final Price Proposal include both a Standard Form 1447 and Schedule B. *See* PX 3.[3]

On November 6, 1998, Plaintiff submitted a Final Price Proposal, including Standard Form 1447 and Schedule B. *See* PX 4. Plaintiff's Final Price Proposal contained the same manning levels as the Initial Price Proposal, but some responsibilities were shifted from hourly to salaried workers, decreasing the overall price. *Id.*; JX 2, 32-33. The CO checked Plaintiff's Schedule B calculations and then compared Plaintiff's and Margon's proposed total prices. *Compare* PX 1 at 19 (Section B - Bid Schedule) *with* (Grand Total for Section B). The CO, however, did not compare the initial proposed prices to the final proposed prices. *See* JX 1 at 25-26. And, the CO apparently did not recognize that Plaintiff's total price reflected a 4.5% overall decrease and a 24.92 % decrease for the Malmstrom AFB. *Id.* at 26-28*; see also* PX 1 at 30-34; PX 5 at 1-5.

Next, the CO created abstracts to compare Plaintiff's and Margon's Final Price Proposals. *See* PX 6.

The abstract of Warren AFB is summarized as follows:

| | Offeror | | Margon, Inc. | | | Plaintiff | |
|---|---|---|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extended Amount | | Unit Price | Extended Amount |
| Base Year | 12 | MO | [deleted] | [deleted] | | $10877.00 | $130524.00 |
| Opt. Yr. 1 | 12 | MO | [deleted] | [deleted] | | $10862.00 | $130344.00 |
| Opt. Yr. 2 | 12 | MO | [deleted] | [deleted] | | $10780.00 | $129360.00 |
| Opt. Yr. 3 | 12 | MO | [deleted] | [deleted] | | $11061.00 | $132732.00 |
| Opt. Yr. 4 | 12 | MO | [deleted] | [deleted] | | $11036.00 | $132432.00 |

PX 6 at 2.

---

[3] Standard Form 1447, "Solicitation/Contract," required that offerors specify unit prices, total bid price, and how long the prices would remain firm. *See* PX 4 at 3. Schedule B was a price list for the supplies and services that the offeror would provide. *Id.* at 4-14. For this Solicitation, offerors were required to include on the Schedule B for each AFB, monthly and yearly prices for each of the five years. *See* JX 1 at 17-20. In addition, Schedule B included a summary of the yearly costs for all five AFBs and a total bid price. *Id.* Schedule B, however, did not request backup documentation or spreadsheets for the prices reported on Standard Form 1447 or Schedule B by offerors in the competitive range. *See* PX 3.

The abstract of Malmstrom AFB is summarized as follows:

| | Offeror | | Margon, Inc. | | | Plaintiff | |
|---|---|---|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extended Amount | | Unit Price | Extended Amount |
| Base Year | 12 | MO | [deleted] | [deleted] | | $8361.00 | $100332.00 |
| Opt. Yr. 1 | 12 | MO | [deleted] | [deleted] | | $7894.00 | $94728.00 |
| Opt. Yr. 2 | 12 | MO | [deleted] | [deleted] | | $7854.00 | $94248.00 |
| Opt. Yr. 3 | 12 | MO | [deleted] | [deleted] | | $8078.00 | $96936.00 |
| Opt. Yr. 4 | 12 | MO | [deleted] | [deleted] | | $8253.00 | $99036.00 |

*Id.* at 5.

The abstract of Patrick AFB is summarized as follows:

| | Offeror | | Margon, Inc. | | | Plaintiff | |
|---|---|---|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extended Amount | | Unit Price | Extended Amount |
| Base Year | 12 | MO | [deleted] | [deleted] | | $12129.00 | $145548.00 |
| Opt. Yr. 1 | 12 | MO | [deleted] | [deleted] | | $12093.00 | $145116.00 |
| Opt. Yr. 2 | 12 | MO | [deleted] | [deleted] | | $11975.00 | $143700.00 |
| Opt. Yr. 3 | 12 | MO | [deleted] | [deleted] | | $12258.00 | $147096.00 |
| Opt. Yr. 4 | 12 | MO | [deleted] | [deleted] | | $12199.00 | $146388.00 |

*Id.* at 8.

The abstract of Peterson AFB is summarized as follows:

| | Offeror | | Margon, Inc. | | | Plaintiff | |
|---|---|---|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extended Amount | | Unit Price | Extended Amount |
| Base Year | 12 | MO | [deleted] | [deleted] | | $13547.00 | $162564.00 |
| Opt. Yr. 1 | 12 | MO | [deleted] | [deleted] | | $13548.00 | $162576.00 |
| Opt. Yr. 2 | 12 | MO | [deleted] | [deleted] | | $13428.00 | $161136.00 |
| Opt. Yr. 3 | 12 | MO | [deleted] | [deleted] | | $13759.00 | $165108.00 |
| Opt. Yr. 4 | 12 | MO | [deleted] | [deleted] | | $13706.00 | $164472.00 |

*Id.* at 11.

The abstract of Vandenburg AFB is summarized as follows:

| | Offeror | | Margon, Inc. | | | Plaintiff | |
|---|---|---|---|---|---|---|---|
| | Qty | Unit | Unit Price | Extended Amount | | Unit Price | Extended Amount |
| Base Year | 12 | MO | [deleted] | [deleted] | | $18063.00 | $216756.00 |
| Opt. Yr. 1 | 12 | MO | [deleted] | [deleted] | | $18020.00 | $216240.00 |
| Opt. Yr. 2 | 12 | MO | [deleted] | [deleted] | | $17818.00 | $213816.00 |
| Opt. Yr. 3 | 12 | MO | [deleted] | [deleted] | | $18212.00 | $218544.00 |
| Opt. Yr. 4 | 12 | MO | [deleted] | [deleted] | | $18096.00 | $217152.00 |

*Id.* at 13.

Plaintiff's Final Price Proposal for all five AFBs was $4,913,359.00, or approximately 3.6%, lower than Margon's final price. *See* PX 6 at 1. As a result, the CO afforded Plaintiff the right to compete against the Government's Most Efficient Organization ("MEO") for the Contract. *See* JX 1 at 37, 39. On January 15, 1999, Plaintiff was awarded the Contract. *See* JX 2 at 40, 48, 62. On April 1, 1999, Plaintiff commenced performance. *See* DX 11.

### B. Plaintiff Identified An Error In The Final Price Proposal.

In the Spring of 1999, one of Plaintiff's employees reviewed the Contract to set up a payroll system. *See* JX 4 at 12. That employee identified a problem in the Malmstrom AFB price proposal, because the payroll decreased from the base year to the first and second option years, but increased in the third option year. *See* JX 4 at 19-20. After reviewing the backup spreadsheet, this employee discovered that the salary for a Library Assistant/Computer Operator III at Malmstrom AFB erroneously was omitted from all five contract years, except for the first two months of the base year. *Id.* at 23-25. Plaintiff's Director of Finance and Administration immediately was informed of the error. *See* JX 4 at 17. Thereafter, the CO was notified of the error in Plaintiff's Final Pricing Proposal for Malmstrom AFB. *See* JX 1 at 42; JX 2 at 41; *see also* Joint Resp., Tab 1 at 1 (April 30, 2003 letter referencing February 3, 2003 meeting between Plaintiff and the Government).

### C. Plaintiff Filed A Request For An Equitable Adjustment On April 30, 2003.

On April 30, 2003, Plaintiff sent a letter to the CO, together with backup documentation, requesting a cooperative effort to find a "reasonable solution" to the "*issue in controversy*." Joint Resp., Tab 1 at 1 (emphasis in original). The "*issue in controversy*" was Plaintiff's alleged unilateral mistake in preparing the Final Price Proposal. *Id.* at 2 (emphasis in original). Plaintiff requested reformation of the Contract, *i.e.*, an increase of $158,532.00 in the contract price, to reflect the wages for the Library Assistant/Computer Operator III at Malmstrom AFB that was not included in Plaintiff's Final Price Proposal. *Id.* at 7-9.

On September 4, 2003, the CO sent Plaintiff a letter advising that: "My commitment to [the Plaintiff] is to work . . . to resolve this issue *prior to submission of a claim*." Joint Resp., Tab 2 at 1 (emphasis added). By way of explanation, the CO summarized the "standard for review" set forth in Federal Acquisition Regulation ("FAR") 15.508, FAR 14.407-4, and Boards of Contract Appeals decisions:

> A contractor seeking post-award reformation of its contract on grounds of unilateral mistake has the burden of proving by clear and convincing evidence the following five elements: (1) a mistake in fact occurred prior to contract award; (2) the mistake was clear-cut, clerical or mathematical, or a misreading of the specifications and not a judgmental error; (3) prior to award the Government knew, or should have known, that a mistake had been made and, therefore, should have requested bid verification; (4) the Government did not request bid verification or its request for bid verification was inadequate; and (5) proof of the intended bid is established.

Joint Resp., Tab 2 at 1; *see also* 48 CFR §§ 14.407, 15.508.

In the September 4, 2003 letter, the CO surmised that Plaintiff:

> reduced its bid in the final proposal recision by 4.5%. Other offeror(s) reduced their bid(s) by a comparable percentage. Other offeror(s) total prices were comparable to

> the Information International Associates, Inc. price. Therefore, the Government did not know and had no reason to suspect that a mistaken bid have [sic] been made. In fact, had Information International Associates, Inc. not reduced its bid at final proposal revision, it is possible the initial award decision would have been different.

*Id.*

On November 3, 2003, Plaintiff responded, characterizing the CO's September 4, 2003 letter as "demonstrat[ing] willingness to continue negotiations based on the text of Federal procurement policy (FAR 33.204, Policy)." Joint Resp., Tab 2, at 3. Therein, Plaintiff also affirmed that it was "anxious to move forward in this matter although [it] remain[ed] committed to exhausting all venues prior to considering the filing of a certified claim." *Id.* Toward that end, Plaintiff's letter recited the five elements required to establish a unilateral mistake and provided an explanation of how each was satisfied or could be satisfied, if the CO provided additional information. *Id.* at 3-4. Therefore, Plaintiff formally "request[ed] a written response [from the Government] within thirty (30) days from the date of receipt of this letter to prevent [Plaintiff from] having to make a decision to elevate this matter to a *dispute*." *Id.* at 5 (emphasis in original).

On March 16, 2004, Plaintiff sent another letter to advise the CO that:

> Within five (5) business days of confirmed receipt of this letter, [Plaintiff] must receive a written:
>
> - Acceptance of [Plaintiff's] request for relief submitted on April 3 [sic], 2003, or
> - Acceptance of [Plaintiff's] offer to meet face-to-face on a date certain to resolve this matter through mutual good faith negotiation, or
> - Response to [Plaintiff's] November 3rd letter, or
>
> [Plaintiff] will consider the matter *in dispute*.

*Id.* at 8 (emphasis in original).

On March 18, 2004, the CO responded that the Government's position was unchanged. *Id.* at 9.

On April 22, 2004, Plaintiff advised a new CO that, although Plaintiff did not consider the September 4, 2003 letter a rejection of the Request for Equitable Adjustment, Plaintiff was compelled to "evaluate all its options afforded at law and in equity, including, but not limited to, filing a certified claim." *Id.* at 11.

On May 7, 2004, the new CO clarified that the September 4, 2003 letter was, in fact, a denial of Plaintiff's claim, because prior to awarding the bid to Plaintiff, the Government did not know and should not have known of the mistake, and therefore the doctrine of unilateral mistake was not applicable. *Id.* at 12-13. Plaintiff was also advised that, although the prior CO "limited his response of September 4, 2003 to a consideration of the third criteria, [the CO did] not consider *any of the criteria satisfied*." *Id.*(emphasis added). Accordingly, Plaintiff was advised to "follow contract procedures for filing any claim or dispute [Plaintiff] believe[s] is justified." *Id.*

**D. Plaintiff Filed A Certified Claim On June 1, 2004.**

On May 28, 2004, Plaintiff filed a Certified Claim, seeking $178,882.00 for the wages of the Malmstrom AFB Library Assistant/Computer Operator III for the five year Contract and a six month extension, not included in Plaintiff's Final Price Proposal. *See* Joint Resp., Tab 3 at 1. On June 26, 2004, the CO acknowledged receipt of Plaintiff's June 1, 2004 Certified Claim and stated that a final decision would be rendered within 180 days, *i.e.*, by November 28, 2004. *Id.* On July 20, 2004, Plaintiff responded that 180 days was an unreasonable amount of time to render a final decision, because Plaintiff's Request for Equitable Adjustment was filed over 11 months before. *See* Joint Resp., Tab 4 at 1. Plaintiff requested a final decision by July 30, 2004, *i.e.,* 60 days after the CO's receipt of the Certified Claim. *Id.* Plaintiff also advised the CO that if a final decision was not issued by July 30, 2004, Plaintiff would "either apply to the Armed Services Board of Contract Appeals [("ASBCA")] for an Order directing [the CO] to issue a Final Decision or file [an appeal] either with the ASBCA or the United States Court of Federal Claims based on a 'deemed denial.'" *Id.*

On July 27, 2004, the CO responded that 180 days was a reasonable time frame in which to render a final decision in this case, because the Certified Claim "includes 40 pages of claim information and is based on an alleged mistake in [Plaintiff's] bid, which occurred 68 months ago." *Id.* at 3. The CO repeated that a final decision would be rendered by November 28, 2004, *i.e.*, 180 days after receipt of the Certified Claim. *Id.*

On August 6, 2004, Plaintiff countered that 180 days was an unreasonable amount of time to render a final decision, because "[t]he [C]ertfied [C]laim . . . is the same in all respects as the Request for Equitable Adjustment that had previously been forwarded to him [CO], with the exception of including the additional damages caused by not resolving this matter before unilaterally executing the six (6) month contract extension." *Id* at 4. Plaintiff also observed that the liability portion [of the Certified Claim] was not complex, because the CO only had to determine "whether or not the [G]overnment either had or should have had notice of the contractor's mistake in bid." *Id.* Plaintiff further advised the CO that, if a decision was not issued by September 1, 2004, Plaintiff would consider the lack of response a "deemed denial." *Id.* at 5. The CO did not issue a Final Decision by September 24, 2004. *See* Ans. ¶ 4.

## II. PROCEDURAL BACKGROUND.

On September 24, 2004, Plaintiff filed a Complaint in the United States Court of Federal Claims alleging that the Government was, or should have been, aware of a clerical error in Plaintiff's Final Pricing Proposal. *See* Compl. ¶ 10. The Complaint further alleges that the Government should have alerted Plaintiff to the error and allowed Plaintiff the opportunity to verify the pricing. *Id.* The Complaint seeks $174,882.00 for wages that were not included in the Final Price Proposal, interest on those wages, and any other relief the court deems appropriate. *Id.* On December 23, 2004, the Government filed an Answer, denying that Plaintiff was entitled to any relief and asserting the affirmative defenses of contributory negligence and assumption of risk. *See* Ans. ¶¶ 12, 14, 15. On March 30, 2005, the court issued a Protective Order, pursuant to the parties' March 28, 2005 Joint Motion

On March 1, 2006, Plaintiff filed a Motion for Judgment on the Record or in the Alternative Summary Judgment, and Memorandum in Support, Plaintiff's Proposed Findings of Fact, and Plaintiff's Exhibits. On March 22, 2006, the Government filed a Cross-Motion for Summary Judgment and Opposition, together with Proposed Findings of Uncontroverted Fact and Response to Plaintiff's Proposed Findings of Fact. On April 10, 2006, Plaintiff filed a Reply to the Government's Cross-Motion for Summary Judgment and Opposition, together with a Response to the Government's Proposed Findings of Uncontroverted Fact. On April, 21, 2006, the Government filed a Reply, together with a Reply to Plaintiff's Responses to the Government's Proposed Findings of Uncontroverted Fact.

On June 13, 2006, at the request of the court, the parties submitted Joint Exhibits 1-4.[4] On June 26, 2006, the court requested that the parties also provide information concerning the Request for Equitable Adjustment, correspondence between the parties concerning that Request, and correspondence between the parties concerning the Certified Claim and the role of the Contract Administrator. On July 25, 2006, the parties filed a Joint Response.

## III. DISCUSSION.

### A. Jurisdiction.

#### 1. The Requirements Of The Contract Disputes Act.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of

---

[4] *See* JX 1 (Nov. 29, 2005 Deposition of Rosalind Baker, Contracting Officer); JX 2 (Dec. 21, 2005 Deposition of Patricia L. Powell, Senior Vice President of Business Development and Marketing for Information International Associates); JX 3 (Dec. 21, 2005 Deposition of Bruce Bowland, former Chief Operating Officer of Information International Associates); and JX 4 (Dec. 22, 2005 Deposition of Mary Woods, former Bookkepper and Assistant Controller for Information International Associates).

1978." 28 U.S.C. § 1491(a)(2). The Contract Disputes Act, 41 U.S.C. §§ 601, *et seq.*, provides, as a prerequisite to this court's jurisdiction, that the plaintiff exhaust available administrative remedies by first submitting a "claim" to the responsible contracting officer and obtaining a "final decision" from that contracting officer. *See* 41 U.S.C. § 605(a).

Although the Contract Disputes Act does not define "claim," that term is defined in the Federal Acquisition Regulations ("FAR") as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101; *see also* 48 C.F.R. § 52.233-1(c) (containing the same language). The United States Court of Appeals for the Federal Circuit has held that no particular formula or terminology is required:

> We know of no requirement in the [Contract] Disputes Act that a "claim" must be submitted in any particular form or use any particular wording. *All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.*

*Contract Cleaning Maint. Inc.* v. *United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) (citations omitted; emphasis added); *see also Transamerica Ins. Corp.* v. *United States*, 973 F.2d 1572, 1578 (Fed. Cir. 1992) (explaining that the United States Court of Appeals for the Federal Circuit "has definitively stated that certain 'magic words' need not be used and that the intent of the 'claim' governs") (citations omitted).

To submit a claim, the United States Court of Appeals for the Federal Circuit requires that a contractor: make a written, non-routine demand to the contracting officer; request a final decision; and seek the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract. *See England* v. *The Swanson Group, Inc.*, 353 F.3d 1375, 1380 (Fed. Cir. 2004) (holding that the Armed Services Board of Contract Appeals did not have jurisdiction, because the contractor failed to present to the contracting officer a "claim" within the meaning of the Contract Disputes Act); *James M. Ellett Constr. Co.* v. *United States*, 93 F.3d 1537, 1542-43 (Fed. Cir. 1996) ("[T]here are three requirements a nonroutine submission must meet to be a 'claim.' It must be: (1) a written demand or assertion, (2) seeking as a matter of right, (3) the payment of money in a sum certain."); *see also* 48 C.F.R. §§ 2.101, 52.233-1(c).

In addition, if the claim is in excess of $100,000.00, the contractor must certify that: the claim is made in good faith; the supporting data is accurate and complete; the amount requested accurately reflects the amount for which the contractor believes the Government is liable; and the certifier is duly authorized to certify the claim on behalf of the contractor. *See* 41 U.S.C. § 605(c)(1).

The contracting officer is required to render a final decision or inform the contractor when a final decision will be made within sixty days of receipt of the certified claim. *See* 41 U.S.C. § 605(c)(2) ("A contracting officer shall, within sixty days of receipt of a submitted certified

claim over $100,000 - - (A) issue a decision; or (B) notify the contractor of the time within which a decision will be issued."). If the contracting officer does not render a decision within sixty days or does not inform the contractor when a decision will be rendered, the claim is "deemed denied" and the contractor is authorized to file an appeal. *See* 41 U.S.C. § 605(c)(5) ("Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim . . . ."). If the contracting officer instead informs the contractor that a decision will be made after the sixty day time period, that time must be "reasonable." *See* 41 U.S.C. § 605(c)(3) ("The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.").

The United States Court of Appeals for the Federal Circuit has "enforced the strict limits of the [Contract Disputes Act] as jurisdictional prerequisites to any appeal." *Swanson Group*, 353 F.3d at 1379 (internal quotation & citations omitted). Accordingly, "jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." *Id.*; *see also James M. Ellett Constr.*, 93 F.3d at 1541-42 ("Thus for the [United States Court of Federal Claims] to have jurisdiction under the [Contract Disputes Act], there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.").

A contracting officer's decision on the claim "shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." 41 U.S.C. § 605(b). Thereafter, a contractor may bring an action to the United States Court of Federal Claims within twelve months of the contracting officer's final decision. *See* 41 U.S.C. §§ 609(a)(1), (3).

**2. The Court Does Not Have Jurisdiction To Adjudicate The Contracting Officer's Denial Of Plaintiff's April 30, 2003 Request For Equitable Adjustment.**

In the April 30, 2003 Request for Equitable Adjustment, Plaintiff stated that the Malmstrom AFB Library Assistant/Computer Operator III wages were in dispute and were an "*issue in controversy*, as defined by the [Federal Acquisition Regulation ("FAR") §] 33.201." Joint Resp., Tab 1 at 1. FAR § 33.201 defines an "issue in controversy" as: "a material disagreement between the Government and the contractor that (1) *may result in a claim or* (2) is all or part of an existing claim." 48 C.F.R. § 33.201 (emphasis added). Although an "issue in controversy" can be all or part of an existing claim, in this case, Plaintiff specifically expressed a desire to continue negotiating with the Government before Plaintiff filed a claim. *See* Joint Resp., Tab 1 at 9 ("[Plaintiff] requests that the Contracting Officer consider entering into meaningful discussions for the purpose of reforming the contract to eliminate and correct the Government's undue enrichment and consider the following information as a basis for these discussions."); *see also* Joint Resp., Tab 2 at 3 (Plaintiff's Nov. 3, 2003 letter: "[W]e are anxious to move forward in this matter although we remain committed to

exhausting all venues prior to considering the filing of a certified claim."). Because Plaintiff was clear that the Request for Equitable Adjustment was merely a precursor to filing a claim *ipso facto*, the April 30, 2003 Request for Equitable Adjustment was not a "claim" within the meaning of the Contract Disputes Act. *See* 48 C.F.R. § 2.101.

On March 16, 2004, Plaintiff advised the CO that it considered the April 30, 2003 Request for Equitable Adjustment "converted" into a claim, based on the holding in *Falcon Research & Dev. Co.*, ASBCA 27002, 82-2 BCA ¶ 16,049. Joint Resp., Tab 2 at 8; *see also Falcon Research & Dev. Co.*, ASBCA 27002, 82-2 BCA ¶ 16,049 ("According to [the applicable regulations], the requirement for conversion of an undisputed voucher upon which payment is unreasonably delayed is that it be initiated by submitting the claim in writing to a contracting officer as part of a formal demand for a decision, thus conforming to the provisions of Section 6(a)."). Plaintiff's expectations, however, are irrelevant as a matter of law, because, under the Contract Disputes Act, a claim in excess of $100,000.00 must be accompanied by certification in order for the CO to issue a Final Decision. *See* 41 U.S.C. § 605(c)(1); *see also W.M. Schollser Co., Inc.* v. *United States*, 705 F.2d 1336, 1338 (Fed. Cir. 1983) ("An uncertified claim has not been properly submitted, so the contracting officer does not have the authority to issue a decision."). Because Plaintiff's April 30, 2003 Request for Equitable Adjustment was never certified, the Government's denial did not comply with a jurisdictional requirement of the Contract Disputes Act. *See Swanson Group*, 353 F.3d at 1379 ("[J]urisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim.")

Accordingly, Plaintiff's April 30, 2003 Request for Equitable Adjustment was not a "certified claim," and therefore, the court does not have jurisdiction to adjudicate the CO's denial of the April 30, 2003 Request for Equitable Adjustment. *See* 41 U.S.C. § 605(a).

### 3. The Court Does Not Have Jurisdiction To Adjudicate The Government's Affirmative Defenses Of Contributory Negligence and Assumption Of Risk.

The United States Court of Appeals for the Federal Circuit has held that "a court may and should raise the question of its jurisdiction sua sponte at any time it appears in doubt." *Arctic Corner, Inc.* v. *United States*, 845 F.2d 999, 1000 (Fed. Cir. 1988) (dismissing claims because they were not cases or controversies within the meaning of Article III). In this case, the Government has raised the affirmative defenses of contributory negligence and assumption of risk. *See* Ans. ¶¶ 12, 14, 15. The court, however, does not have jurisdiction to adjudicate these defenses, because they arise under tort law. *See* 28 U.S.C. § 1491(a) (granting the United States Court of Federal Claims jurisdiction to adjudicate claims against the United States "in cases not sounding in tort"); *see also Keene Corp.* v. *United States*, 508 U.S. 200, 214 (2005) (stating "tort cases are outside of the jurisdiction of the Court of Federal Claims[.]"); *Brown* v. *United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) (holding that the United States Court of Federal Claim "lacks jurisdiction over tort actions against the United States"). Accordingly, this court sua sponte dismisses the Government's

affirmative defenses of contributory negligence and assumption of risk for lack of subject matter jurisdiction.

**4. The Court Has Jurisdiction To Adjudicate Plaintiff's Appeal Of The Contracting Officer's Deemed Denial Of Plaintiff's June 1, 2004 Certified Claim.**

On June 1, 2004, Plaintiff filed a Certified Claim with the CO. *See* Joint Resp., Tab 2 at 1. On receipt, the CO complied with the requirements of 41 U.S.C. § 605(c)(2) by informing the Plaintiff of the time within which a decision would be rendered. *See* Joint Resp., Tab 3 at 1; *see also* 41 U.S.C. § 605(c)(2). On June 26, 2004, the CO explained that it was not possible to issue a final decision within sixty days of receipt, but a final decision would be issued within 180 days of receipt. *See* Joint Resp., Tab 3 at 1.

The underlying facts of the alleged unilateral mistake at issue in Plaintiff's Request for Equitable Adjustment and Plaintiff's Certified Claim are the same. *See* Joint Resp., Tab 1 at 1-10; DX 2-17. The only difference is that the Certified Claim includes a request for adjustment of the five year contract and payment of the six month extension, the pricing of which is based on the exercise of option year five. *Compare* Joint Resp., Tab 1 at 1-10, *with* DX 2-17. Accordingly, the only difference is the amount requested, due to the Government extending the contract by six months.

The initial CO reviewed the Request for Equitable Adjustment on several occasions. *See* DX 1-42; Joint Resp., Tab 2 at 1, 9, 12. Since the initial CO had considered and denied the first Request for Equitable Adjustment, it was unreasonable for the new CO to request a 120 day extension to render a final decision on Plaintiff's Certified Claim. *See* 41 U.S.C. § 605(c)(3) (providing that a final decision must be rendered within a "reasonable time"); *see also Fru-Con Constr. Corp.*, ASBCA 53544, 02-1 BCA ¶ 31,729 (2002) (determining a claim deemed denied because four months or 120 days was an unreasonable time for a contracting officer to render a final decision on a certified claim containing a "28-page narrative, a 54-page cost impact analysis, and a one-volume appendix," considering the Government had reviewed the claim previously as an equitable adjustment).

Accordingly, based on the facts in this case, the court has determined that the June 1, 2004 Certified Claim was "deemed denied" as of June 26, 2004. Since Plaintiff's September 24, 2006 Complaint was filed within the twelve month statute of limitations, the court has jurisdiction to adjudicate the claims set forth therein.

**B. Standing.**

The Plaintiff is a party to a Contract with the Government and, therefore, has standing to bring an action in the United States Court of Federal Claims, pursuant to the Contract Disputes Act. *See* 41 U.S.C. § 609(a).

**C. Standard For Decision On Summary Judgment - - RCFC 56.**

Summary judgment is appropriate "only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Am. Pelagic Fishing Co.* v. *United States*, 379 F.3d 1363, 1370-71 (Fed. Cir. 2004) (citing RCFC 56(c); *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)). In the United States Court of Federal Claims, summary judgment, albeit "interlocutory in nature, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." RCFC 56(c); *see also United States* v. *Winstar Corp.*, 518 U.S. 839, 910 (1996) (affirming grant of partial summary judgment on contract liability and remanding the determination of the appropriate measure or amount of damages, if any). Only genuine disputes of material facts that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson*, 477 U.S. at 247-48 ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted . . . . That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id*. Therefore, there is no issue for the court to adjudicate unless the nonmoving party puts forth evidence sufficient for a jury to return a verdict for that party, but "if the evidence is merely colorable or is not significantly probative*,* summary judgment may be granted." *Id*. at 249-50 (citations omitted).

The burden of demonstrating the absence of any genuine issue of material fact is on the party moving for summary judgment. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986) (holding that the moving party may meet its burden "by 'showing'–that is, pointing out to the [trial court]–that there is an absence of evidence to support the nonmoving party's case."). A motion for summary judgment may be made without supporting affidavits and rely "solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id*. at 324. Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the non-movant to show the existence of a genuine issue for trial. *See Novartis Corp.* v. *Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (explaining that, once the movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial."). A dispute over a material fact is "genuine" where a reasonable fact-finder could find for the non-movant. *See Anderson*, 477 U.S. at 248.

A trial court is required to resolve all doubt over factual issues in favor of the non-moving party. *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In doing so, all reasonable inferences and presumptions must be resolved in favor of the non-moving party. *See Anderson*, 477 U.S. at 255; *Caterpillar Inc.* v. *Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir. 2000) ("When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor."); *Gasser Chair Co., Inc.* v. *Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995) (requiring the trial court to view the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party).

**D. Applicable Law Regarding A Unilateral Mistake Discovered After The Award Of A Contract.**

In *McClure Elec. Constructors, Inc*. v. *Dalton*, 132 F.3d 709 (Fed. Cir. 1997), the United States Court of Appeals for the Federal Circuit set forth the elements of proof necessary to establish a unilateral mistake in the context of a government contract:

> The contractor must show by clear and convincing evidence that:
>
> (1) a mistake in fact occurred prior to contract award;
>
> (2) the mistake was a clear-cut, clerical or mathematical error or a misreading of the specifications and not a judgmental error;
>
> (3) prior to award the Government knew, or should have known, that a mistake had been made and, therefore, should have requested bid verification;
>
> (4) the Government did not request bid verification or its request for bid verification was inadequate; and
>
> (5) proof of the intended bid is established.

*Id.* at 711; *see also* 48 C.F.R. § 15.508 ("Mistakes in a contractor's proposal that are disclosed after award shall be processed substantially in accordance with the procedure for mistakes in bids at FAR § 14.407-4.").

FAR § 14.407-4(b) and (c) set forth the conditions under which a contractor's unilateral mistake may be corrected, if the mistake is not favorable to the government:

If a contractor's discovery and request for correction of a mistake in bid is not made until after the award, it shall be processed under the procedures of Subpart 33.2 and the following:

> (b) . . . [A]gencies are authorized to make a determination - -
>
> > (1) To rescind a contract;
> >
> > (2) *To reform a contract (i) to delete the items involved in the mistake or (ii) to increase the price if the contract price, as corrected, does not exceed that of the next lowest acceptable bid under the original invitation for bids*; or
> >
> > (3) That no change shall be made in the contract as awarded, if the evidence does not warrant a determination under subparagraphs (1) or (2) above.

> (c) *Determinations under subparagraphs (b)(1) and (2) above may be made only on the basis of clear and convincing evidence that a mistake in bid was made.* In addition, it must be clear that the mistake was (1) mutual, or (2) *if unilaterally made by the contractor, so apparent as to have charged the contracting officer with notice of the probability of the mistake.*

48 C.F.R. § 14.407-4(b), (c) (emphasis added).

### E. The Court's Resolution Of The Parties' Cross-Motions For Summary Judgment.

#### 1. The Parties Cross-Motions For Summary Judgment.

Plaintiff moves for summary judgment that the doctrine of unilateral mistake applies to Plaintiff's bid error, thereby allowing the court to reform the contract by awarding the corrected amount due, together with interest. *See* Pl. S.J. at 19. The Government also moves for summary judgment," because there is no genuine issue of material fact and [Plaintiff] cannot establish that the Government had constructive notice of [Plaintiff's] mistake." Gov't. Cross-Mot. at 6. The Government further argues that, even if the CO should have known of the mistake, Plaintiff cannot establish, by clear and convincing evidence, the amount of the correct bid, thus precluding recovery. *Id.* at 17.

#### 2. Plaintiff Established The Elements Of A Unilateral Mistake As A Matter of Law.

##### a. Plaintiff's Mistake Occurred Prior To Award Of The Contract.

The parties agree that the omission of wages for a Library Assistant/Computer Operator III at Malmstrom AFB occurred prior to award of the Contract. *See* Gov't Resp. to Pl. PFF ¶¶ 29-30 ("Except for the initial (2) months, the salary for the 'Library Assistant/Computer Oper III' for Malmstrom Air Force Base was entered into the [backup] spread sheets as a '0.' This resulted in a small value for the total for the first year for this position and a '0' for the totals for the remaining option years. These incorrect figures were mistakenly entered onto the Bid Sheets for the Best and Final Offer. This resulted in a difference between the initial offer and the Best and Final Offer for Malmstrom Air Force Base[.]"). Therefore, the first element is satisfied.

##### b. Plaintiff's Mistake Was Clerical In Nature.

The parties also agree that the omission of the wages for a Library Assistant/Computer Operator III at Malmstrom AFB was clerical in nature. *Id.* ¶ 29 ("Except for the initial (2) months, the salary for the 'Library Assistant/Computer Oper III' for Malmstrom Air Force Base was entered in to the [backup] spread sheets as a '0.'"). The omission on the backup spreadsheets was then carried forward in the final offer, submitted to the CO. *Id.* ¶ 30. This mistake was a "clear-cut clerical error." *Id.* Therefore, the second element is satisfied.

**c. The Government Should Have Known Of The Mistake.**

Plaintiff argues that, prior to the award of the Contract, the CO should have known that Plaintiff made a mistake, because a comparison of Plaintiff's Initial and Final Price Proposal would have revealed the mistake. *See* Pl. S.J. at 15-19. Plaintiff also asserts that the CO had a duty to make this comparison. *Id*. First, the CO was the only Government official aware of the pricing in both the Initial and Final Price Proposals and, therefore, had a duty to ensure that each AFB could operate under the proposed pricing. *Id.* at 15-16. Second, the CO had a duty to compare the Initial and Final Price Proposals to ensure that the November 2, 1998 directive for both offerors to submit their Final Price Proposals did not result in a change to the manning levels set forth in the Initial Price Proposals. *Id.* at 17-18. Therefore, Plaintiff concludes that such a comparison would have revealed a 24.92% difference between the Initial and Final Price Proposals, placing the CO on constructive notice of the error. *Id.* at 16.

The Government responds that Plaintiff failed to establish that the CO either had constructive or actual notice of the mistake. *See* Gov't Cross-Mot. at 6. Requiring the CO to compare a contractors's Initial and Final Price Proposals line-by-line would place an undue burden on the CO and is too broad a reading of FAR 14.407-1 and the applicable precedent. *Id.* at 7; *see also* 48 C.F.R. § 14.407-1 ("After the opening of bids, contracting officers shall examine all bids for mistakes. In cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer shall request from the bidder a verification of the bid, calling attention to the suspected mistake. If the bidder alleges a mistake, the matter shall be processed in accordance with this section 14.407. Such actions shall be taken before award."). In addition, the Government argues that, even if the CO had a duty to compare the Initial and Final Price Proposals, there was an alternative explanation for the change (*i.e.*, shifting responsibilities from salaried to hourly workers to reduce the price) so that the CO would not have been alerted to the mistake. Accordingly, price disparity alone does not impute constructive notice. *Id.* at 10. Finally, the Government argues that the increase and then decrease in pricing for Malmstrom AFB, that alerted Plaintiff's employee to the error, would not have alerted the CO of the mistake, because the same increase and decrease occurred in the four other AFB's pricing. *Id.* at 13-14.

The court does not agree with Plaintiff's argument that, as a matter of law, the CO was required to compare the Initial and Final Price Proposals. FAR § 14.407-1 provides only that "[a]fter the opening of bids, contracting officers shall examine all bids for mistakes." 48 C.F.R. § 14.407-1. A comparison is not required. On the other hand, the court has determined that the CO should have been alerted to a possible error in Plaintiff's Malmstrom AFB pricing, as a result of the CO's preparation of "Abstract of Proposal/Quotations," to compare Plaintiff's and Margon's final monthly and yearly proposed prices for the five AFBs. *See* PX 6; *see also* Gov't Resp. to Pl. PFF ¶ 36. The abstracts show that the final offer prices proposed by Plaintiff were 1% to 10% higher than those proposed by Margon for four of the AFBs: Vandenburg, Warren, Peterson, and Patrick. *See* PX 6 at 2, 8, 11,13. In comparison, however, the prices proposed by Plaintiff's final offer for Malmstrom AFB were 33% to 39% lower than the prices proposed by Margon. *Id.* at 5.

Precedent in our circuit has held that price disparity alone is not enough to impute the CO with constructive notice of a possible error in Plaintiff's bid, if there are other factors that reasonably could explain the difference. *See Aydin Corp.*, 669 F.2d at 687 ("[I]t is clear from our decisions that price disparity alone does not constitute constructive notice where there are other factors that would negate the inference of error when it would otherwise be reasonable to infer one."); *Bromley Contracting Company, Inc.*, v. *United States*, 794 F.2d 669, 672 (Fed. Cir. 1986) (holding substantial evidence that disparity between bids did not constitute constructive notice to the CO of bid error because the CO believed the competing bid was a courtesy and reasonably relied on the expertise of a consultant that estimated the cost of the project to be 10% lower than the plaintiff's bid); *see also Wender Presses Inc.* v. *United States*, 170 Ct. Cl. 483, 488 (1965) (holding no constructive notice where plaintiff's bid was 125% higher than second highest bid because "there was a wide range on a percentage basis between the various bids," *i.e.,* the second highest was 42% higher than the third, 128% higher than the fourth, and 1,095% higher than the fifth). In this case, however, the size of the disparity between Plaintiff's bid and the next lowest bid, as evidenced in the Malmstrom AFB abstract, and the absence of "other factors negating an inference of error" should have alerted the CO to the mistake. *See Aydin Corp.*, 669 F.2d at 687. In fact, at the CO's deposition, she admitted that, in reviewing competing contractors' Final Price Proposals, "any drastic . . . variations I think would jump out at me." JX 1 at 33. In this case, a 33% to 39% lower price, as compared to a 1% to 10% higher price, is a sufficient variation in price to warrant further inquiry by the CO.

For these reasons, the court has determined that, under the circumstances of this case, Plaintiff established by clear and convincing evidence that the CO should have known of a possible error in Plaintiff's Final Price Proposal. Moreover, the court is not persuaded by the Government's hypothetical argument that the price difference in Plaintiff's bid could be due to a shifting of responsibilities from hourly to salaried workers.

**d. The Government Did Not Request Verification.**

The record evidences that the CO did not request that Plaintiff verify the Final Price Proposal for Malmstrom AFB. Therefore, Plaintiff has established the fourth element of unilateral mistake. *See McClure Elec. Constructors, Inc.*, 132 F.3d at 711; *see also* 48 C.F.R. § 14.407-1 ("In cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting office shall request from the bidder a verification of the bid, calling attention to the suspected mistake.").

**e. Plaintiff Has Established By Clear And Convincing Evidence The Correct Amount Of The Bid.**

Plaintiff contends that the wages for the Library/Computer Operator III at Malmstrom AFB in the Final Price Proposal were to be the same as the Initial Price Proposal. *See* Pl. S.J. at 13-14. Plaintiff reasons that the pricing for the first two months of the Library/Computer Operator III in the Initial Price Proposal Backup Spreadsheets is the same as the wages set forth in the Final Price Proposal Backup Spreadsheets and, therefore, the wages should be the same for the remaining fifty-eight months of the Contract. *Id.*; *see also* PX 1 at 30-34; PX 5 at 1-5. The Government responds

that Plaintiff has not established, by clear and convincing evidence, what Plaintiff would have bid, but for the mistake, because after filing this action Plaintiff has changed the amount. *See* Gov't Cross-Mot. at 17.[5]

The wages for the Library Assistant/Computer Operator III in the Backup Spreadsheets for the Initial and Final Price Proposals were the same for the first two months of the Contract. *Compare* PX 1 at 30-34, *with* PX 5 at 1-5. In addition, the Plaintiff's Backup Spreadsheets for the Initial and Final Price Proposal are in agreement with the number of hours that the Library Assistant/Computer Operator III worked. *Id.* Therefore, the Backup Spreadsheets, evidence that, for the fifty-eight months of the Contract and the six-month extension, Plaintiff should have recorded a bid of $5,088,241.00, *i.e.,* an additional $174,882.00. *Id.* For these reasons, the court has determined that Plaintiff has demonstrated by clear and convincing evidence that Plaintiff would have bid an additional $174,882.00, but for the mistake.

* * *

Accordingly, the court has determined that there is no genuine issue of material fact between the parties and the five requisite elements of a unilateral mistake have been established by clear and convincing evidence. *See McClure Elec. Constructors,* 132 F.3d at 711. Therefore, Plaintiff is entitled to judgment as a matter of law.

**3. Plaintiff Is Entitled To Reformation Of The Contract.**

The United States Court of Appeals for the Federal Circuit has authorized the trial court to reform a contract if, "the contractor establishes that the error resulted from a 'clear cut clerical or arithmetical error, or a misreading of the specifications.'" *United States* v. *Hamilton Enterprises*, 711 F.2d at 1046 (quoting *Aydin Corp.*, 669 F.2d at 685); *Giesler* v. *United States*, 232 F.3d at 869; *see also* 48 C.F.R. § 14.407-4. Moreover, "[t]he contractor must establish by clear and convincing evidence what his bid price would have been but for the error." *Id.*

Since Plaintiff has established by clear and convincing evidence that, but for the clerical error, Plaintiff would have bid an additional an $174,882.00, Plaintiff is entitled to reformation of the Contract to reflect the correct bid.

---

[5] The Complaint and Certified Claim seek $174,882.00, representing the wages not included in the bid for the five years and six month extension. *See* Compl. ¶ 10; DX at 2. Plaintiff, however, responded to the Government's Request for Production Number 4, stating that Plaintiff has "incurred a total cost of $91,008 which, with a profit of 5%, supports a claim of $95,558." DX 51 (Request for Prod. # 4 at 1). Plaintiff explained this discrepancy, stating that the actual wages paid to the Library Assistant/Computer Operator III by Plaintiff were lower than the wages pled in the Complaint due to Plaintiff's effort to mitigate damages. *See* Pl. Reply at 17-18.

### 4. Plaintiff Is Entitled To Interest On The Amount Due.

It is well established that "'interest cannot be recovered in a suit against the [G]overnment in the absence of an express waiver of sovereign immunity from an award of interest.'" *Richlin Security Serv. Co.* v. *Chertoff*, 437 F.3d 1296, 1299 (Fed. Cir. 2006) (quoting *Library of Congress* v. *Shaw*, 478 U.S. 310, 311 (1986)) (citation omitted). Congress, however, has authorized an explicit waiver of sovereign immunity for the interest on an amount that is found due on a government contractor's claim.

> Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41 (85 Stat. 97) for the Renegotiation Board.

41 U.S.C. § 611.

Accordingly, the United States Court of Appeals for the Federal Circuit has held that the section 611 "sets a single, red-letter date for interest on all amounts found due by a court without regard to when the contractor incurred the costs." *Servidone Constr. Corp.* v. *United States*, 931 F.2d 860, 862 (Fed. Cir. 1991) (citations omitted); *see also Richlin Sec.*, 437 F.3d at 1300 ("Put simply, we held that interest was available for costs 'found due' the contractor, even though payment had not been made by the contractor on the claim date, because the contractor would ultimately be out of pocket for some period of time.") (citation omitted). As our appellate court has explained, in enacting this waiver of sovereign immunity, "'Congress was concerned with fully compensating contractors for additional costs incurred in a continuing performance under a contract.'" *Richlin Sec.*, 437 F.3d at 1301 (quoting *Fidelity Constr. Co.* v. *United States*, 700 F.2d 1379, 1384 (Fed. Cir. 1983)).

Therefore, Plaintiff is entitled to interest from June 1, 2004 to date on $174,882.00 at the rate set forth in 41 U.S.C. § 611. *See Servidone Constr. Corp.* v. *United States*, 19 Cl. Ct. 346, 386-90 (1990) (awarding contractor interest on actual costs incurred, a reasonable profit on those costs, and other indirect costs), *aff'd*, 931 F.2d 860 (Fed Cir. 1991); *see also Richlin Sec. Serv. Co.* v. *Chertoff*, 437 F.3d 1296 (applying the principles for the recovery of interest, pursuant to 41 U.S.C. § 611).

## IV. CONCLUSION.

For the above stated reasons, the court hereby grants Plaintiff's March 1, 2006 Motion for Judgment and denies the Government's March 22, 2006 Cross-Motion for Summary Judgment. The Government's affirmative defenses of contributory negligence and assumption of risk are dismissed for lack of subject matter jurisdiction.

The Clerk of the United States Court of Federal Claims is directed to enter judgment in favor of Plaintiff in the amount of $174,882.00 plus interest. Interest will run from June 1, 2004 to date, at the rate set forth in 41 U.S.C. § 611.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**