**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INFORMATION INTERNATIONAL ASSOCIATES, INC.,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO. 04-1489C (Judge Braden)** |
| **V.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

COMES NOW the Plaintiff and responds to Defendant's Opposition To Plaintiff's Application For Fees and Expenses Pursuant to the Equal Access Act, and states the following:

**A. The Government's Position Was Not Substantially Justified:**

The Government argues that the fact that the Government lost the case does not, in and of itself, indicate that the Government was substantially justified in defending Plaintiff's Complaint. While this may be true in the abstract, it should be taken into consideration that the Government lost in a Motion For Summary Judgment action, on the record, without any testimony being taken, except for the introduction of depositions.

**1. The Facts And Testimony Clearly Show That The Contracting Officer Had Actual Knowledge of The Error In Bid:**

The Government argues that the Plaintiff never raised the argument before the Court that the contracting officer had actual knowledge of the error in Plaintiff's bid and that the Court concluded this on its own. Government counsel has obviously overlooked: Plaintiff's Proposed Finding of Fact Numbers 36 and 37; the first paragraph of page 14 of Plaintiff's initial brief and the first paragraph of page 16 of Plaintiff's reply brief. In all of these, the Plaintiff pointed out to

the Court that the contracting officer had testified that she, alone, had reviewed the proposals and had drafted the Abstract of Bids which clearly showed Plaintiff's mistake in bid. It was obvious that the contracting officer had actual knowledge. She not only had the information in front of her, but she used that information to draft the Abstract of Bids and the letters to the winning and losing offerors. She merely chose to ignore that information, even when it was pointed out to her by the Plaintiff's President.

**2. The Contracting Officer's Actual Knowledge of the Mistake In Bid Negates Any Contention of Justification For The Government's Defense:**

The Court correctly pointed out that the difference in prices for the Malmstrom Air Force Base final price proposal and the bid of the next lower proposer should have alerted the contracting officer to an error in Plaintiff's proposal. This was especially true when the contracting officer testified that any large disparity in pricing would have "jumped out" at her. As the Court pointed out, this difference in pricing would have warranted further inquiry by the contracting officer and a request for the Plaintiff to verify its price.

The contracting officer was also aware of the great difference between the Plaintiff's pricing for Malmstrom in its initial price proposal and the Best and Final pricing for Malmstrom as she had reviewed the initial prices and had instructed the offerors not to change their manning structure. This should have alerted the contracting officer of a problem with the manning of the Malmstrom library.

Because of this obvious knowledge of the error in Plaintiff's pricing, the Government had no justifiable reason to: refuse the Plaintiff's initial request to correct the error; continue for more than three years to deny Plaintiff's reformation request; and, require the Plaintiff to litigate its contentions.

**3. There Was No Other Reasonable Explanation For the Reduction In Pricing For Malmstrom Air Force Base:**

The Government attempts to justify its failure to recognize the mistake in Plaintiff's pricing by inferring that the disparity in pricing may have been due to a rearranging in the job responsibilities of the personnel assigned to the Malmstrom library. This argument was refuted by the testimony of Mrs. Powell, quoted in Respondents Reply Brief, to the effect that they could have shifted a "few" or "some" hours or changed "responsibilities just slightly", but would not have combined positions. This slight reduction would not have accounted for the reduction of one position as reflected in Plaintiff's pricing. The Court called this reasoning a "hypothetical argument" and was not persuaded by it.

**4. Conclusion:**

It is obvious that the mistake in Plaintiff's pricing was apparent and was known to the contracting officer when she prepared the Abstract of Offers and the letters to the bidders. Nothing the Government has provided justified its blatant refusal to even discuss or negotiate Plaintiff's request for reformation and its forcing the Plaintiff to expend the time, effort and expense to litigate this matter. As the Government was not justified in its actions, the Plaintiff should be awarded its costs and expenses pursuant to the Equal Access To Justice Act.

**B. The Plaintiff Is Entitled To Reimbursement For Legal Fees At More Than The Statutory Rate:**

The Government argues that the case at bar was a simple case involving only one issue. However, a review of past cases involving mistakes in bid reveals that an overwhelming number of them have been decided in favor of the Government. Therefore, the issue of a mistake in bid is not that simple. It is also well recognized that the field of Government Contracts Law is a

specialized field, having its own Section in the American Bar Association and being one of only a few specialities of the law where schools offer an LL.M. Degree.

The Government provided extracts from web sites on the numbers of law firms in the Tennessee and Georgia area and even listed some firms that contend that they are specialists in Government Contracts Law. Even though some of the firms from Atlanta are instantly recognized as specialists in this field, some of the others from Georgia and Tennessee are neither recognized nor are their credentials offered.

The important factor is that the Government did not provide any information as to the hourly rates charged by any of the firms listed as providing expertise in Government Contract Law. It is common knowledge that Wall Street Firms are starting associates at $160,000 per year and the firms in major cities are having to match them. Attorneys with the experience of the undersigned are partners in these firms and are charging hourly rates well in excess of $300.00 per hour.

The undersigned's qualifications for this type of a case are not in question. The attached Resume reflects a LL.M. from George Washington University in Federal Procurement Law and approximately thirty-five (35) years experience in the field. This includes eleven years as a contracts attorney with the United States Air Force and extensive litigation experience in the field.

While Congress set a statutory limit for reimbursement of attorney's fees, it allowed for deviation for cost of living or limited availability of qualified attorneys for the proceedings involved. It should be noted that the setting of the fee amount set by Congress occurred several years ago and just normal inflation would have cause the cost of living to adjust the fee amount upwards. It is doubtful that you could retain even a general attorney for the statutory rate and

especially not one with any specialized training or knowledge.

For the above reasons, The Plaintiff respectfully requests this Court to grant its request for the award of attorney's fees and costs pursuant to the Equal Access To Justice Act at the rate charged.

Submitted, this the 15 day of February, 2007

Respectfully Submitted;
J. HATCHER GRAHAM, P.C.

____/s/________________
J. Hatcher Graham
Georgia Bar No. 304577

303 Pheasant Ridge Drive
Warner Robins
Georgia 31088
(478) 953-5606